STEFANI E. SHANBERG (State Bar No. 206717)
JENNIFER J. SCHMIDT (State Bar No. 295597)
ROBIN L. BREWER (State Bar No. 253686)
MICHAEL J. GUO (State Bar No. 284917)
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
One Market Plaza
Spear Tower, Suite 3300
San Francisco, California 94105
Telephone: (415) 947-2000
Facsimile: (415) 947-2099
E-Mail: sshanberg@wsgr.com
rbrewer@wsgr.com
jschmidt@wsgr.com
mguo@wsgr.com

Attorneys for Defendants
GOOGLE INC.; YOUTUBE, LLC; and
ON2 TECHNOLOGIES, INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| MAX SOUND CORPORATION and VEDANTI SYSTEMS LIMITED,<br><br>Plaintiffs,<br><br>v.<br><br>GOOGLE INC., YOUTUBE, LLC, and ON2 TECHNOLOGIES, INC.,<br><br>Defendants. | Case No. 5:14-cv-04412-EJD<br><br>**DEFENDANTS GOOGLE INC., YOUTUBE, LLC, AND ON2 TECHNOLOGIES, INC.'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**<br><br>Date: April 30, 2015<br>Time: 9:00 am<br>Place: Courtroom 4, 5th Floor<br>Judge: Honorable Edward J. Davila |

# TABLE OF CONTENTS

|  |  |  | Page |
|---|---|---|---|
| NOTICE OF MOTION AND MOTION | | | 1 |
| MEMORANDUM OF POINTS AND AUTHORITIES | | | 1 |
| I. | INTRODUCTION | | 1 |
| II. | BACKGROUND | | 2 |
| | A. | History of the '339 Patent. | 2 |
| | B. | Litigation History. | 4 |
| III. | APPLICABLE LEGAL STANDARD | | 5 |
| | A. | Motion to Dismiss. | 5 |
| | B. | Indefiniteness Pursuant to 35 U.S.C. § 112(2). | 6 |
| IV. | ARGUMENT | | 7 |
| | A. | Claims 1-13 Are Invalid for Failing to Set Forth What the Applicants Regarded as Their Invention. | 7 |
| | | 1. Throughout Prosecution, Applicants Regarded Their Invention as the Transmission of Data Optimized Without Compression. | 7 |
| | | 2. The Specification Further Demonstrates that Applicants Regarded Their Invention as the Transmission of Data Optimized Without Compression. | 9 |
| | | 3. The Issued Claims Are Broader than What the Applicants Described as Their Invention. | 10 |
| | B. | The Court Cannot Correct the Errors in Claims 1-13. | 11 |
| | C. | Plaintiff Cannot Redeem the Amended Complaint in This Case by Filing a Certificate of Correction. | 11 |
| V. | CONCLUSION | | 12 |

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Allen Eng'g Corp. v. Bartell Indus.*, 299 F.3d 1336 (Fed. Cir. 2002)..........................................6, 10

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...........................................................................................5

*Bell Atl. Corp. v. Twombly*, 550 U.S. 554 (2007) ...........................................................................5

*Brandywine Commc'ns Techs., LLC v. AT&T Corp.*, C.A. No. C 12-2494 CW,
    2014 U.S. Dist. LEXIS 54370 (N.D. Cal. Apr. 18, 2014).......................................................11

*Coinstar, Inc. v. CoinBank Automated Sys.*, 998 F. Supp. 1109 (N.D. Cal. 1998).........................6

*Competitive Techs. v. Fujitsu Ltd.*, 286 F. Supp. 2d 1161 (N.D. Cal. 2003) ..............................6, 10

*Grp. One Ltd. v. Hallmark Cards, Inc.*, 407 F.3d 1297 (Fed. Cir. 2005) .......................1, 2, 6, 7, 11

*Linear Tech. Corp. v. Micrel, Inc.*, 524 F. Supp. 2d 1147 (N.D. Cal. Nov. 11, 2005) ................7, 11

*Lucent Techs., Inc. v. Gateway, Inc.*, C.A. No. 02-cv-02060, slip op. (S. D. Cal.
    Aug. 11, 2005)...............................................................................................................6, 10, 11

*Mack v. S. Bay Beer Distribs.*, 798 F.2d 1279 (9th Cir. 1986)........................................................5

*Nat'l Recovery Techs., Inc. v. Magnetic Separation Sys., Inc.*, 166 F.3d 1190 (Fed.
    Cir. 1999) .................................................................................................................................6, 10

*Novo Indus., L.P. v. Micro Molds Corp.*, 350 F.3d 1348 (Fed. Cir. 2003) .....................................7

*Solomon v. Kimberly-Clark Corp.*, 216 F.3d 1372 (Fed. Cir. 2000)................................................6

*Sw. Software, Inc. v. Harlequin Inc.*, 226 F.3d 1280 (Fed. Cir. 2000)..................................7, 11, 12

### STATUTES

35 U.S.C. § 112(2) ................................................................................................1, 2, 6, 7, 10

35 U.S.C. § 112(1) ...................................................................................................................6

35 U.S.C. § 254 .............................................................................................................1, 7, 11

### RULES

37 C.F.R. § 1.322 ....................................................................................................................12

Federal Rule of Civil Procedure 12(b)(6) ............................................................................1, 5

### MISCELLANEOUS

MPEP 1480 .............................................................................................................................12

# TABLE OF ABBREVIATIONS

| | |
|---|---|
| Plaintiff Max Sound Corporation | Max Sound or Plaintiff |
| Patent Owner Vedanti Systems Limited | VSL |
| Defendant Google Inc. | Google |
| Defendant YouTube, LLC | YouTube |
| Defendant On2 Technologies, Inc. | On2 |
| Defendants Google, YouTube, and On2, collectively | Defendants |
| U.S. Patent No. 7,974,339 | '339 patent or asserted patent |
| United States Patent and Trademark Office | PTO |
| Declaration of Jennifer J. Schmidt in Support of Defendants' Motion to Dismiss | Schmidt Decl. |
| First Amended Complaint, (Dkt. No. 23) | Amended Complaint |

# NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on April 30, 2015, at 9:00 a.m., or as soon thereafter as the matter may be heard in courtroom of the Honorable Edward J. Davila, located at Courtroom 4, Fifth Floor, of the United States District Court for the Northern District of California, San Jose Division, Defendants will and hereby do move the Court for entry of an order dismissing this action pursuant to Federal Rule of Civil Procedure 12(b)(6).

This motion is based on this notice of motion and motion, the supporting memorandum of points and authorities, the accompanying Schmidt Decl., including exhibits,[1] and such additional evidence and arguments as may hereinafter be presented.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Amendments impacting all claims of the '339 patent were made during prosecution, but are not reflected in the issued claims that form the basis for this litigation. The claims of the '339 patent are, therefore, invalid as indefinite under 35 U.S.C. § 112(2) for failure to claim what the inventors regard as their invention, and the Amended Complaint should be dismissed.

35 U.S.C. § 112(2) requires that each claim of a patent must set forth what the patent applicants regarded as their invention. The Federal Circuit has held that, when a transcription error renders an issued claim different than an allowed claim, the claim is invalid as indefinite for failure to specifically claim what the inventor regards as his invention. *Grp. One Ltd. v. Hallmark Cards, Inc.*, 407 F.3d 1297, 1303 (Fed. Cir. 2005). Patentees have a duty to correct errors with a certificate of correction under 35 U.S.C. § 254, but a certificate of correction has no effect in litigation initiated before the certificate is issued. *Id*.

Here, the issued claims of the '339 patent are meaningfully different from the claims requested by the applicants and allowed during prosecution. When the PTO prepared the '339 patent for issuance, it made a transcription error that failed to address amendments entered by the examiner during prosecution and, therefore, omitted key language from the independent claims.

---

[1] All Exhibits referenced herein refer to Exhibits to the Schmidt Decl. filed concurrently herewith.

Specifically, the PTO overlooked an amendment entered by the examiner reciting that the alleged invention is directed to data optimization instead of data compression, a distinction repeatedly emphasized by the applicants in the specification and prosecution history. The PTO also did not enter amendments to add the term "frame" to modify "analysis system" and "display," to remove the term "selection" to modify "pixel data," and to add the limitation of "transmitting region data" only "for each region." These omissions render the issued claims broader than those allowed and invalid pursuant to 35 U.S.C. § 112(2).

Further, the language missing from the issued claims cannot be discerned from the face of the patent, rendering the error one that can only be corrected by the PTO and not by the Court. *Id*. Patent Owner VSL has neglected its duty to correct this error by filing a certificate of correction with the PTO, having done nothing about the error since the July 5, 2011, issuance of the '339 patent. Even if a certificate of correction were filed now, it would have no effect in litigation initiated before its issuance. *Grp. One*, 407 F.3d at 1303. Accordingly, Defendants respectfully request that Plaintiff's claims for infringement of the '339 patent be dismissed.

## II.  BACKGROUND

### A.  History of the '339 Patent.

The application leading to the '339 patent was filed on July 16, 2004. (Amended Complaint, Ex. 1.) The specification explains that the '339 patent is directed to "a system and method for data transmission . . . that use data optimization instead of compression." (*Id*., '339 patent at 1:36-39.) In an effort to distinguish the prior art during prosecution, applicants also confirmed that the alleged invention transmits data without compression. (*See, e.g.*, Ex. A ('339 Prosecution History, Amendment dated January 24, 2011) at 17 ("**the generated set of pixel data . . . will be transmitted *without any further processing, due to the fact that the applicants['] invention does not compress nor decompress data*.**") (emphasis in original).)

From January to July 2011, the *pro se* applicants engaged in extensive back and forth with the examiner in an attempt to put their claims in allowable form, much of which focused on the "optimization instead of compression" distinction. (*See* Ex. A ('339 Prosecution History, Amendment dated January 24, 2011); Ex. B ('339 Prosecution History, Interview Summary dated

February 7, 2011; Ex. C ('339 Prosecution History, Supplemental Amendment dated January 24, 2011; Ex. D ('339 Prosecution History, Notice of Allowance with Interview Summary and Examiner Amendment dated February 24, 2011).) On April 1, 2011, the applicants submitted amended claims 1, 11, and 16, requiring that the claimed system and methods are "for transmitting data <u>optimization instead of compression</u>," a requirement not included in the examiner's February 22, 2011 amendment. (Ex. E ('339 Prosecution History, Amendment dated April 1, 2011) (emphasis in original).) The applicants' submission also includes other amendments missing from the issued claims, such as adding the term "frame" to modify "analysis system" and "display" in claim 1, removing the term "selection" to modify "pixel data" in claims 11 and 16, and adding the limitation of "transmitting region data" only "for each region" in claim 16. (*Id.*) In an interview on April 1, 2011, the examiner agreed to file the amendment to add the words "data optimization instead of compression" and to correct the other errors in claims 1, 11, and 16, as indicated by applicants on April 1, 2011. (Ex. F ('339 Prosecution History, Interview Summary dated April 11, 2011).) On June 1, 2011, the examiner entered an amendment matching the applicants' April 1, 2011 amendment, but it is not reflected in the issued claims. (Ex. G ('339 Prosecution History, Examiner Amendment dated June 1, 2011).)

The issued claims differ from those intended by the applicants and the examiner as indicated below. Redlines indicate language omitted from the issued claims.

> 1. A system for transmitting data ~~optimization instead of data compression~~ [transmission] comprising:
>     a ~~frame~~ analysis system receiving frame data and generating region data comprised of high detail and or low detail;
>     a pixel selection system receiving the region data and generating one set of pixel data for each region forming a new set of data for transmission;
>     ~~wherein transmitting the data to~~ a data receiving system receiving the region data and the pixel data for each region and generating a ~~frame~~ display;
>     wherein the data receiving system comprises a pixel data system receiving matrix definition data and ~~the~~ pixel data and generating pixel location data;
>     wherein the data receiving system comprises a display generation system receiving pixel location data and generating display data that includes the pixel data placed according to the location data.
>
> 7. A method for transmitting data ~~optimization instead data compression~~ comprising:

|   |   |
|---|---|
| 1 | receiving frame data; |
| 2 | generating optimized matrix data from the frame data; selecting one of two or more sets of pixel data based on the optimized matrix data; |
| 3 | wherein receiving frame data comprises receiving an array of pixel data; |
| 4 | wherein generating the optimized matrix data from the frame data comprises setting a matrix size based on pixel <u>selection</u> data; and |
| 5 | transmitting the selection pixel data and the optimized matrix data by assembling the optimized matrix data and the selection pixel data into a generated display frame. |
| 6 |  |
| 7 |  |
| 8 | 10. A method for transmitting data <s>optimization instead of data compression</s> comprising: |
| 9 | dividing an array of pixel data into two or more regions; selecting a set of pixel data from <s>reach</s> each region; |
| 10 | wherein dividing the array of pixel data comprises dividing the array of pixel data <u>into</u> two or more matrices having a uniform size; |
| 11 | wherein dividing the array of pixel data comprises dividing the array of pixel data into two or more matrices having two or more different sizes; |
| 12 |  |
| 13 | and transmitting the region data and the selection pixel data <s>and the</s> for each region <s>data</s> by assembling the region data and the <u>selection</u> pixel data into a generated display frame. |
| 14 |  |

In sum, the issued claims do not reflect any amendments entered after the February 24, 2011 examiner amendment (*See* Ex. D ('339 Prosecution History, Notice of Allowance with Examiner Amendment dated February 24, 2011); Ex. E ('339 Prosecution History, Amendment dated April 1, 2011); Ex. G ('339 Prosecution History, Examiner Amendment dated June 1, 2011).) Plaintiff Max Sound and Patent Owner VSL have ignored the errors in claims 1, 7, and 10, and these requirements remain missing from the claims. (Ex. H, Patent Application Information Retrieval for the '339 patent).

**B.     Litigation History.**

On October 1, 2014, Plaintiff Max Sound filed a Complaint against Defendants alleging infringement of the '339 patent. (Dkt. No. 1.) On December 11, 2014, Defendants filed a Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(7) based on Plaintiff Max Sound's improper joinder of Patent Owner VSL as an involuntary co-plaintiff under Rule 19, requiring VSL's dismissal from the case. (*See* Dkt. No. 15 at 4-5.) Without VSL, Max Sound lacks standing to sue as a licensee without proper joinder of the patent owner. (*See id.* at 6.)

On January 23, 2015, Plaintiff Max Sound filed an Amended Complaint. (Dkt. No. 23.) In the Amended Complaint, Max Sound refers to VSL both as a plaintiff (Amended Complaint at 1) and as a defendant (*id.* at 2, ¶ 2, ¶ 16). Max Sound further alleges that "VSL is the owner by assignment of all rights, title, and interests in the '339 Patent and is entitled to sue for past and future infringement thereof." (*Id.* at ¶ 14.) The Parties filed a Stipulation Withdrawing Defendants' Motion to Dismiss the Original Complaint without prejudice on January 26, 2015. (Dkt. No. 24.) Plaintiff Max Sound cannot proceed without Patent Owner VSL. (*See generally* Dkt. No. 15.) On February 5, 2015, Plaintiff Max Sound filed a Certificate of Service of Summons and First Amended Complaint. (Dkt. No. 27). For the purposes of the instant motion, it is relevant that Plaintiff Max Sound, a claims aggregator that has instituted multiple lawsuits against Google worldwide,[2] is not the owner of the patent and appears to lack Patent Owner VSL's cooperation to obtain a certificate of correction. (*See* Amended Complaint at ¶¶ 5, 14-15.)

## III.  APPLICABLE LEGAL STANDARD

### A.  Motion to Dismiss.

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter, if accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). "Only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556).

On a motion to dismiss under Rule 12(b)(6), the court may consider those facts alleged in the pleadings, the documents attached thereto as exhibits, and matters of judicial notice. *Mack v. S. Bay Beer Distribs.*, 798 F.2d 1279, 1282 (9th Cir. 1986). "On a motion to dismiss, . . . a court may take judicial notice of facts outside the pleadings." *Id.* "Moreover, a court may take judicial notice of 'records and reports of administrative bodies.'" *Id.* "Therefore, on a motion to dismiss a court may properly look beyond the complaint to matters of public record and doing so does not convert a Rule 12(b)(6) motion to one for summary judgment." *Id*. The prosecution

---

[2] *See* Press Release, Max Sound Corp. (Dec. 9, 2014), http://maxsound.com/news/max-sound-help-entrepeneurs/ (last visited Feb. 3, 2015).

history of the asserted patent is a public record appropriate for judicial notice upon which Plaintiff's claims are based. *Coinstar, Inc. v. CoinBank Automated Sys.*, 998 F. Supp. 1109, 1114 (N.D. Cal. 1998) (taking judicial notice of patents and file history documents). Accordingly, the Court may consider the prosecution history.[3] *Id*.

### B. Indefiniteness Pursuant to 35 U.S.C. § 112(2).

The requirements of 35 U.S.C. § 112(2) include that: (1) the claim must set forth what "the applicant regards as his invention," and (2) "it must do so with sufficient particularity and distinctness, i.e., the claim must be sufficiently 'definite.'" *Allen Eng'g Corp. v. Bartell Indus.*, 299 F.3d 1336, 1348 (Fed. Cir. 2002) (quoting *Solomon v. Kimberly-Clark Corp.*, 216 F.3d 1372, 1377 (Fed. Cir. 2000)). Where a transcription error renders the issued claim different than the allowed claim, the claim is invalid as indefinite for failure to specifically claim what the inventor regards as his invention. *See Grp. One*, 407 F.3d at 1303 (finding uncorrected patent was indefinite because transcription error by PTO omitted phrase from claim); *Lucent Techs., Inc. v. Gateway, Inc.*, C.A. No. 02-cv-02060, slip op. at 7 (S. D. Cal. Aug. 11, 2005) (finding claim indefinite because transcription error rendered allowed claims different than claims applicant presented to PTO that were allowed) (attached as Ex. N). When independent claims are found indefinite, so must all claims dependent therefrom. *See, e.g.*, *Allen*, 299 F.3d at 1349 (holding dependent claims invalid along with independent claim); *Competitive Techs. v. Fujitsu Ltd.*, 286 F. Supp. 2d 1161, 1175 (N.D. Cal. 2003) (holding "[c]laims 6-11 . . . are also invalid because they are dependent on claim 5," where independent claim 5 had been held invalid under § 112(2)); *Lucent*, slip op. at 7 (finding dependent claims indefinite for failure to particularly point out what applicants regarded as their invention because independent claims were indefinite as a result of PTO transcription error); *Nat'l Recovery Techs., Inc. v. Magnetic Separation Sys., Inc.*, 166 F.3d 1190, 1198 (Fed. Cir. 1999) ("Because dependent claims 2-8 and 10 stand or fall with independent claim 1, we affirm the district court's judgment that these claims are also invalid under 35 U.S.C. § 112, paragraph 1.").

---

[3] Defendants request that the Court take judicial notice of the prosecution history of the '339 patent.

DEFENDANTS' MOT. TO DISMISS FOR
FAILURE TO STATE CLAIM
Case No. 5:14-cv-04412-EJD
- 6 -

Under 35 U.S.C. § 254, patentees have a duty to correct errors with a certificate of correction filed with the PTO. *Grp. One*, 407 F.3d at 1303 (citing *Sw. Software, Inc. v. Harlequin Inc.*, 226 F.3d 1280, 1295 (Fed. Cir. 2000)); *Linear Tech. Corp. v. Micrel, Inc.*, 524 F. Supp. 2d 1147, 1153-56 (N.D. Cal. Nov. 11, 2005) (holding that defendant "should have checked the published version" of reexamination certificate upon issuance "to ensure that it included a complete listing of the claims, and requested a certificate of correction to properly incorporate[] the new claims"). A certificate of correction has no effect in litigation initiated before the certificate is issued. *See, e.g.*, *Sw. Software*, 226 F.3d at 1295. Courts may correct an error in a patent "only if the error is evident from the face of the patent." *Id*. (citing *Novo Indus., L.P. v. Micro Molds Corp.*, 350 F.3d 1348, 1357-58 (Fed. Cir. 2003)).

## IV.  ARGUMENT

The specification and prosecution history both discuss systems and methods for "transmitting data" that use "data optimization instead of compression," but the claims recite only "transmitting data" with no mention that compressed data is excluded. The issued claims also contain other differences from the applicants' intended claims, such as lacking the term "frame" to modify "analysis system" and "display" in claim 1, including the term "selection" to modify "pixel data" in claims 7 and 10, and adding the limitation of "transmitting region data" only "for each region." Because the applicants did not regard their invention as the terms in the issued claims reflect and failed to obtain a certificate of correction, claims 1-13 are invalid as indefinite.

### A.  Claims 1-13 Are Invalid for Failing to Set Forth What the Applicants Regarded as Their Invention.

Because of key missing language, independent claims 1, 7, and 10 are broader than what the applicants described as their invention in both the prosecution history and the specification. Accordingly, no claims of the '339 patent comply with the 35 U.S.C. § 112(2) requirement that the claims set forth what the "applicant regards as his invention" and are invalid.

#### 1.  Throughout Prosecution, Applicants Regarded Their Invention as the Transmission of Data Optimized Without Compression.

During prosecution of the '339 patent, the applicants repeatedly and consistently stated that

they regarded their invention as pertaining to the transmission of data that has been optimized without using compression. (*See e.g.*, Ex. I ('339 Prosecution History, Petition and Statement under 37 CFR §1.102(D) and MPEP 708.02 (XI) for Advancement of Examination dated July 21, 2006) at 1) (applicant stated "the inventions described in the above identified patent application provide for the optimization of the transmission of video data that, unlike prior art compression techniques, do not require the data to be compressed at the sending end and decompressed at the receiving end . . . ."); Ex. J ('339 Prosecution History, Declaration of Constance Nash dated July 20, 2006) at ¶ 4) (named inventor declared same); Ex. K ('339 Prosecution History, Amendment dated July 10, 2010) at 7; Ex. L ('339 Prosecution History, Amendment dated September 3, 2010) at 8; Ex. M ('339 Prosecution History, Amendment dated December 27, 2010) at 18); Ex. A ('339 Prosecution History, Amendment dated January 24, 2011) at 17 (to overcome a prior art rejection, applicants emphasized "**the generated set of pixel data . . . will be transmitted *without any further processing, due to the fact that the applicants['] inventions does not compress nor decompress data*"**) (emphasis in original).)

In early 2011, the applicants—representing themselves *pro se* in the prosecution of their patent application—engaged in multiple discussions with the examiner in an attempt to put their claims in allowable form. Following an interview with the examiner on January 12, 2011, the applicant submitted the above-mentioned January 24, 2011 amendment, which the examiner found failed to put the claims in allowable form. (Ex. B ('339 Prosecution History, Interview Summary dated February 7, 2011); (Ex. A ('339 Prosecution History, Amendment dated January 24, 2011). As a result, another interview was held on February 22, 2011, during which the applicants authorized an examiner amendment that would put the claims in allowable form. (Ex. D ('339 Prosecution History, Interview Summary dated February 24, 2011).)

But when the applicants saw the examiner's February 24, 2011 amendment to the claims—which did not specify that the data was transmitted without compression or other further processing—they sought to amend the claims to make explicit what they believed to be the key advancement over the prior art, i.e., that the claimed system and methods are for "data optimization instead of compression" and urged the examiner in yet another interview to enter

DEFENDANTS' MOT. TO DISMISS FOR
FAILURE TO STATE CLAIM - 8 -
Case No. 5:14-cv-04412-EJD

such amendment. (Ex. D ('339 Prosecution History, Notice of Allowance with Examiner Amendment dated February 24, 2011); Ex. E ('339 Prosecution History, Amendment dated April 1, 2011); Ex. F ('339 Prosecution History, Interview Summary dated April 11, 2011).) The examiner agreed and, on June 1, 2011, entered an amendment to add the language "data optimization instead of compression" to the independent claims and to correct other errors. (Ex. F ('339 Prosecution History, Interview Summary dated April 11, 2011); Ex. G ('339 Prosecution History, Examiner Amendment dated June 1, 2011).)

It was this essential amendment, which added the applicants' key "data optimization instead of compression" language and which fixed other errors, that the PTO failed to include in the issued claims. Rather, the claims issued in the form of the examiner's February 24, 2011 amendment, which lacked language excluding compression and contained other errors. As a result, the issued claims are broader than the claims entered by the examiner because they lack the limiting language excluding compression and other terms, and are invalid because they do not reflect what the applicants regarded as their invention.

**2. The Specification Further Demonstrates that Applicants Regarded Their Invention as the Transmission of Data Optimized Without Compression.**

The specification also describes that the data to be transmitted is optimized and not compressed. (*See* Amended Complaint, Ex. 1, '339 patent at 1:13-39) ("The goal of the alleged invention is therefore to provide 'a system and method for data transmission . . . that use data optimization instead of compression.'").) Similarly, the specification states that "[o]ne important technical advantage of the present invention is a system and method for transmitting data that do not require the data to be compressed at the sending end and decompressed at the receiving end." (*Id*., '339 patent at 1:54-63.) By way of further example, the specification states that "[s]ystem 100 allows data such as video data to be transmitted in a manner that does not require the data to be compressed, and which results in significant decreases in bandwidth requirements for data transmission." (*Id*., '339 patent at 2:43-46.)

The specification consistently describes the system of the alleged invention as allowing transmission of data that does not require compression. Because of the omission of the term "data

optimization instead of compression" and other amendments by the PTO, the issued claims do not reflect this fundamental aspect of the alleged invention and are invalid.

### 3. The Issued Claims Are Broader than What the Applicants Described as Their Invention.

In the absence of the "optimization instead of compression" language and other amendments, the issued claims are broader than what was described by the applicants and allowed by the PTO. As a result, Plaintiff may not enforce the uncorrected claims. *See Lucent*, slip op. at 7.

The Federal Circuit has held that "[w]here it would be apparent to one of skill in the art, based on the specification, that the invention set forth in a claim is not what the patentee regarded as his invention, we must hold that claim invalid under § 112, paragraph 2." *Allen*, 299 F.3d at 1349; *see also Lucent*, slip op. at 7 (holding that claim that issued in broader form than allowed by PTO "is invalid for indefiniteness because it fails to particularly point out and distinctly claim the subject matter which the applicants regarded as their invention"). As with the claims of the '339 patent, a transcription error by the PTO rendered the issued claims in *Lucent* broader than the alleged invention described by the applicant. *Id.* at 3 (allowed claims required decoding both frames and fields of a digital video bit stream while issued claims required decoding only frames). In light of this inconsistency, the court held that the broader issued claims were invalid under Section 112(2) because they lacked a requirement that was part of the invention as conceived by the inventors and allowed by the PTO. *Id.* at 2, 7 (finding that "Claim 13 and its dependent claims, as issued, are indefinite because these claims are broader than the claims that were allowed by the PTO").

Here, independent claims 1, 7, and 10 of the '339 patent should also be found indefinite because they too fail to particularly point out and distinctly claim the subject matter which the applicants regarded as their invention. Because claims 2-6, 8-9, and 11-13 depend from an invalid claim, they too are invalid. *See, e.g.*, *Allen*, 299 F.3d at 1349; *Competitive Techs.*, 286 F. Supp. 2d at 1175 (holding "[c]laims 6-11 . . . are also invalid because they are dependent on claim 5," where independent claim 5 had been held invalid under § 112(2)); *Lucent*, slip op. at 7; *Nat'l Recovery*,

166 F.3d at 1198.

### B. The Court Cannot Correct the Errors in Claims 1-13.

A district court may retroactively correct a PTO error "only if the error is evident on the face of the patent." *Grp. One*, 407 F.3d at 1303. Put another way, where the reader of a patent cannot ascertain an error from the face of the patent, the Court may not correct the error. *See Brandywine Commc'ns Techs., LLC v. AT&T Corp.*, C.A. No. C 12-2494 CW, 2014 U.S. Dist. LEXIS 54370, at *38-39 (N.D. Cal. Apr. 18, 2014) (finding claim indefinite and refusing to correct claim because missing words from preamble were not evident from face of patent-in-suit); *Linear Tech. Corp.*, 524 F. Supp. 2d at 1153-56 (holding that court could not retroactively correct patent where error could not be discerned simply by reading patent); *Lucent*, slip op. at 7 (citing *Grp. One*, 407 F.3d at 1303).

Here, the PTO erroneously omitted an entire phrase and other terms from claims 1, 7, and 10. Despite the absence of these key phrases and terms, claims 1, 7, and 10, as issued, are grammatically correct and would provide no notice to one of skill in the art that several words are missing. *See Lucent*, slip op. at 5 (finding that "Claims 13, as issued, is grammatically correct and would provide no notice to one of skill in the art that several words were missing"). Because the errors in the issued claims are not apparent from reading the patent, the Court may not correct the PTO's transcription error. *Id*. Rather, Patent Owner VSL has a duty to correct errors with the PTO by filing a certificate of correction under 35 U.S.C. § 254.

### C. Plaintiff Cannot Redeem the Amended Complaint in This Case by Filing a Certificate of Correction.

As the Federal Circuit has held, a certificate of correction has no effect in an action filed before the certificate of correction issues. *Sw. Software*, 226 F.3d at 1295 ("[F]or causes arising after the PTO issues a certificate of correction, the certificate of correction is to be treated as part of the original patent—i.e., as if the certificate had been issued along with the original patent. By necessary implication, ***for causes arising before its issuance, the certificate of correction is not effective***.") (emphasis in original).

Despite its duty to request correction, Patent Owner VSL has not done so nor has the PTO issued a certificate of correction. (Ex. H, Patent Application Information Retrieval for the '339

patent). Moreover, the PTO has no obligation to act on or to respond to a request to issue a certificate of correction by a third party such as Plaintiff Max Sound, which is a mere licensee who appears to lack Patent Owner VSL's cooperation in this lawsuit. *See* 37 C.F.R. § 1.322; MPEP 1480; (Amended Complaint at ¶¶ 5, 14-15). Any certificate of correction requested or issued during the pendency of this action will be ineffective to overcome the invalidity claims herein. *See Sw. Software*, 226 F.3d at 1294-97. As a result, Plaintiff's Amended Complaint should be dismissed.

## V. CONCLUSION

For the foregoing reasons, the claims of the '339 patent are indefinite and cannot be corrected by the Court. Any certificate of correction is not effective for the purposes of this action. Accordingly, Defendants' motion to dismiss Plaintiff's Amended Complaint for a failure to state a claim should be granted.

Dated: February 9, 2015

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By: _____/s/ *Stefani E. Shanberg*_____
Stefani E. Shanberg

Attorneys for Defendants Google Inc.; YouTube, LLC; and On2 Technologies, Inc.