United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

MAX SOUND CORPORATION and VEDANTI SYSTEMS LIMITED,

Plaintiffs,

v.

GOOGLE, INC.; YOUTUBE, LLC; and ON2 TECHNOLOGIES, INC.,

Defendants.

Case No. 5:14-cv-04412-EJD

**ORDER DENYING MOTION TO DISMISS**

Re: Dkt. No. 28

Plaintiff Max Sound Corp. ("Plaintiff") filed the instant patent infringement action against Defendants Google, Inc. ("Google"), YouTube, LLC ("YouTube"), and On2 Technologies, Inc. ("On2") (collectively, "Defendants"). Most recently, Plaintiff added patent owner Vedanti Systems Limited ("VSL") as a defendant. Presently before the Court is Defendants' Motion to Dismiss Plaintiff's First Amended Complaint. See Dkt. No. 28 ("Mot."). After fully reviewing the parties' papers and holding oral argument, the Court DENIES Defendants' Motion to Dismiss.

## I. BACKGROUND

VSL, a British company, is the patent owner for United States Patent No. 7,974,339 entitled "Optimized Data Transmission System and Method" (the "'339 Patent"). Dkt. No. 23, First Am. Compl. ("FAC") at ¶ 1, 5, 14; Exh. 1. The '339 Patent was issued by the United States Patent and Trademark Office (the "PTO") on July 5, 2011. Id. at ¶ 13. Plaintiff allegedly entered into a contract with VSL whereby Plaintiff would have a worldwide license to VSL's Optimized Data Transmission System and Method technology, including the technology claimed in the '339 Patent, for all fields of use. Id. at ¶ 15. Moreover, pursuant to the agreement, Plaintiff was also

United States District Court
Northern District of California

allegedly provided with the exclusive right to enforce VSL's patent rights on VSL's behalf, including an indefeasible right to exclude Defendants from practicing the patent. Id.

Plaintiff alleges that in 2001, the available technology for delivering digitized video relied solely on compression, i.e., the encoding of digital information by reducing the number of bits in the representation, by identifying and deleting unnecessary bits. Id. at ¶¶ 25, 28. This type of technology resulted in jittery, low-quality video and sound for large-sized video files. Id. at ¶ 27. To improve on this technology, two inventors conceived of and reduced to practice the technological concepts that ultimately became a video codec,[1] and the inventions disclosed in the '339 Patent. Id. at ¶¶ 25, 29. The VSL codec was created by VSL employees and personnel working under the direction of one of the inventors. Id. at ¶ 29. The VSL codec implemented a proprietary and unique system of optimizing data transmission using methods for key frame partitioning, slicing and analyzing pixel variation of video content to significantly reduce the volume of digital video files, while minimizing any resulting loss of video quality. Id. at ¶ 30. The U.S. patent application that resulted in the issuance of the '339 patent was filed on January 16, 2002. Id. at ¶ 32.

Plaintiff alleges that during the mid-to-late 2000s, video compression and streaming technology had become integral to Google products, including the YouTube.com website, the Chrome web browser, and the Android mobile device operating system. Id. at ¶ 33. In March 2010, VSL's CEO Alpesh Patel communicated with Google's Nikesh Arora to discuss licensing VSL's video technology and/or the possible acquisition of VSL and the '339 Patent. Id. at ¶ 51. In April 2010, Mr. Patel and Google's Vice President of New Business Development Megan Smith executed a non-disclosure agreement for the purpose of engaging in negotiations regarding VSL's technology. Id. at ¶ 52. During the course of the negotiations and pursuant to the non-disclosure agreement, VSL allegedly provided a working VSL codec to Google for testing and analysis, and provided copies of VSL's patents, patent application (including the patent

[1] A "codec" is a device or computer program capable of encoding or decoding a digital data stream or signal. FAC at ¶ 17.

application that led to the '339 Patent), and claim charts comparing the inventions claimed in the '339 Patent to the H.264 video codec used by Google. Id. at ¶ 54. By December 2010, negotiations between the parties had stalled, and the parties terminated discussions. Id. at ¶ 56. On December 16, 2010, Google's employees allegedly shipped back to VSL materials that VSL had provided pursuant to the non-disclosure agreement. Id. at ¶ 57.

Plaintiff alleges that Defendants incorporated the '339 Patent technology into products they made, used, sold, offered for sale, and/or imported, including VP8, VP9, WebM, H.264, YouTube, Google Adsense, Google Play, Android, Google TV, Chromebook, Google Drive, Google Chromecast, Google Play-per-view, Google Glasses, Google+, Google's Simplify, Google Maps and Google Earth. Id. at ¶¶ 1, 62-63. Plaintiff further alleges that Google and On2 incorporated various claims of the '339 Patent into patent applications without disclosing to the PTO the '339 Patent or its underlying application as prior art, or its previous inventors. Id. at ¶ 59.

Plaintiff commenced the instant action on October 1, 2014 alleging a single claim of patent infringement against Defendants. See Dkt. No. 1. In December 2014, Defendants filed a motion to dismiss based on Plaintiff's improper joinder of VSL as an involuntary co-plaintiff. See Dkt. No. 15. In January 2015, Plaintiff filed its First Amended Complaint and named VSL as a defendant. See Dkt. No. 23. Defendants filed the instant Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). See Dkt. No. 28. The matter has been fully briefed, and oral argument was held on April 30, 2015. See Dkt Nos. 37, 49, 73.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim with sufficient specificity to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotations omitted). A complaint which falls short of the Rule 8(a) standard may be dismissed if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th

Cir. 2008). Moreover, the factual allegations "must be enough to raise a right to relief above the speculative level" such that the claim "is plausible on its face." Twombly, 550 U.S. at 556-57.

When deciding whether to grant a motion to dismiss, the court generally "may not consider any material beyond the pleadings." Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). However, the court may consider material submitted as part of the complaint or relied upon in the complaint, and may also consider material subject to judicial notice. See Lee v. City of Los Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001).

In addition, the court must generally accept as true all "well-pleaded factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 664 (2009). The court must also construe the alleged facts in the light most favorable to the plaintiff. Love v. United States, 915 F.2d 1242, 1245 (9th Cir. 1988). However, "courts are not bound to accept as true a legal conclusion couched as a factual allegation." Id.

## III. DISCUSSION

During the prosecution of the '339 Patent, the PTO omitted the language "optimization instead of data compression" from the issued claims:

> Claim 1. A system for transmitting data ~~optimization instead of data compression~~ transmission comprising:
> . . .
> Claim 7. A method for transmitting data ~~optimization instead data compression~~ comprising:
> . . .
> Claim 10. A method for transmitting data ~~optimization instead of data compression~~ comprising:
> . . .

Mot. at 3. Since this language is missing from the issued claims, Defendants contend that this action should be dismissed because the issued claims are invalid as indefinite under 35 U.S.C. § 112 for failure to claim what the inventors regard as their invention. Id. at 1.

The second paragraph of 35 U.S.C. § 112 provides:

> The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the inventor or a joint inventor regards as the invention.

("§ 112, ¶ 2"). In patent law, this is known as the requirement of definiteness. See Nautilus, Inc.

United States District Court
Northern District of California

v. Biosig Instruments, Inc., 134 S. Ct. 2120, 2125 (2014). If there is a lack of definiteness, then the patent or any claim is invalid. See id.

In the recent decision Nautilus, Inc. v. Biosig Instruments, Inc., the Supreme Court set forth the standard for the definiteness requirement: "A patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." Id. at 2124. The Supreme Court also highlighted three aspects of the § 112, ¶ 2 inquiry: (1) "definiteness is to be evaluated from the perspective of someone skilled in the relevant art;" (2) "in assessing definiteness, claims are to be read in light of the patent's specification and prosecution history;" and (3) "definiteness is measured from the viewpoint of a person skilled in the art at the time the patent was filed." Id. at 2128. The Supreme Court has further stated that the definiteness requirement entails a delicate balance where on the one hand, the requirement must take into account the inherent limitations of language, and on the other hand, a patent must be precise enough to afford clear notice of what is claimed. Id. at 2128-29.

In its motion, Defendants argue that during prosecution of the '339 Patent, the applicants consistently stated that they regarded their invention as pertaining to the transmission of data that has been optimized without using compression. Mot. at 7-8. Defendants contend that while the examiner entered an amendment to add the "data optimization instead of compression" language to the independent claims, the PTO ultimately failed to include this language to the issued claims. Id. at 8-9. Consequently, Defendants argue that the issued claims of the '339 Patent are broader than the claims entered by the examiner, and are invalid because they do not reflect what the applicants regarded as their invention—that the transmission of data was optimized without using compression. Id. at 9 (emphasis added). They contend that the "instead of compression" language is the fundamental aspect of the '339 Patent invention. Id. at 9-10.

In opposition, Plaintiff argues that the issued claims are valid because they were determined to be patentable without the "data optimization instead of compression" language, and Defendants have failed to point to anything in the record suggesting that the omitted language was

United States District Court
Northern District of California

essential. Opp. at 12. Moreover, Plaintiff argues that the body of the issued claims, as well as the specification and prosecution history, depicts a data optimization system or method that does not require data compression, thus the express language "instead of compression" is unnecessary. Id. at 14.

In evaluating Defendants' motion in light of the standard set forth by the Nautilus decision, it appears that Defendants seek a judicial determination as to whether the '339 Patent is valid.[2] This type of judicial determination at this stage of litigation is premature. The parties have not commenced discovery, nor have Defendants requested to convert the instant Rule 12(b)(6) motion to a motion for summary judgment.

Defendants argue that to conduct the § 112, ¶ 2 analysis it seeks, the Court should take judicial notice of the '339 Patent's prosecution history as a public record in order to demonstrate how the inventors regarded their invention. Mot. at 6, n.3. At oral argument, Defendants emphasized this point. The prosecution history "consists of the complete record of the proceedings before the PTO and includes the prior art cited during the examination of the patent." Phillips v. AWH Corp., 415 F.3d 1303, 1317 (Fed. Cir. 2005). "Like the specification, the prosecution history provides evidence of how the PTO and the inventor understood the patent . . . [and it] was created by the patentee in attempting to explain and obtain the patent." Id. While the Court takes judicial notice of the existence of the prosecution history, it declines to take judicial notice of Defendants' interpretation of the documents. A Rule 12(b)(6) motion is not the proper vehicle to examine and interpret the prosecution history, and engage in a § 112, ¶ 2 analysis to the extent set forth by the Nautilus decision.[3] Indeed, none of the court opinions relied on by Defendants show that this type of analysis was conducted on a Rule 12(b)(6) motion. See Mot. at 10; Allen Eng'g Corp. v. Bartell Indus., Inc., 299 F.3d 1336 (reviewing a district court judgment

---

[2] Defendants rely on a two-requirement standard set forth in Allen Engineering Corp. v. Bartell Industries, 299 F.3d 1336, 1348 (Fed. Cir. 2002), to evaluate a §112, ¶ 2 inquiry. See Mot. at 6. However, in light of the more recent Nautilus decision by the Supreme Court, this Court declines to use the Allen Engineering standard.

[3] This analysis also applies to Defendants' arguments concerning other terms that were allegedly omitted by the PTO. See Mot. at 7.

United States District Court
Northern District of California

following a bench trial); Competitive Techs. v. Fujitsu, Ltd., 286 F. Supp. 2d 1161 (N.D. Cal. 2003) (ruling on motions for summary judgment); Lucent Techs., Inc. v. Gateway, Inc., Case No. 02-CV-02060-B(WMc) (S.D. Cal. Aug. 11, 2005) (ruling on a motion for partial summary judgment); Nat'l Recovery Techs., Inc. v. Magnetic Separation Sys., Inc., 166 F.3d 1190 (Fed. Cir. 1999) (reviewing a district court judgment following a summary judgment).

In sum, within the scope of a Rule 12(b)(6) motion to dismiss, Plaintiff has sufficiently alleged the existence and validity of the '339 Patent. At this stage, this is sufficient to survive the instant motion to dismiss. Accordingly, Defendant's motion is DENIED.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is DENIED.

**IT IS SO ORDERED.**

Dated: May 13, 2015



EDWARD J. DAVILA
United States District Judge