REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED

1  MICHAEL A. KELLY (State Bar #71460)
   mkelly@walkuplawoffice.com
2  MATTHEW D. DAVIS (State Bar #141986)
   mdavis@walkuplawoffice.com
3  KHALDOUN A. BAGHDADI (State Bar #190111)
   kbaghdadi@walkuplawoffice.com
4  WALKUP, MELODIA, KELLY & SCHOENBERGER
   650 California Street, 26th Floor, San Francisco, CA 94108
5  Tel:  (415) 981-7210

6  JAY W. EISENHOFER (*pro hac vice* admitted)
   jeisenhofer@gelaw.com
7  ADAM J. LEVITT (*pro hac vice* admitted)
   alevitt@gelaw.com
8  MICHAEL T. MANUEL (*pro hac vice* admitted)
   mmanuel@gelaw.com
9  GRANT & EISENHOFER P.A.
   30 North LaSalle Street, Suite 2350, Chicago, IL  60602
10 Tel:  (312) 214-0000

11 CHRISTOPHER M. JOE (*pro hac vice* admitted)
   Chris.Joe@BJCIPlaw.com
12 ERIC W. BUETHER (*pro hac vice* admitted)
   Eric.Buether@BJCIPlaw.com
13 BRIAN A. CARPENTER (State Bar #262349)
   Brian.Carpenter@BJCIPlaw.com
14 MARK A. PERANTIE (*pro hac vice* admitted)
   Mark.Perantie@BJCIPlaw.com
15 BUETHER JOE & CARPENTER, LLC
   1700 Pacific, Suite 4750, Dallas, TX 75201
16 Tel:  (214) 466-1272

17 **ATTORNEYS FOR PLAINTIFF MAX SOUND CORPORATION**

18

19                    UNITED STATES DISTRICT COURT

20                   NORTHERN DISTRICT OF CALIFORNIA

21

22 MAX SOUND CORPORATION,              Case No. 5:14-cv-04412-EJD

                      Plaintiff,       Honorable Edward J. Davila
23
                      v.               **PLAINTIFF MAX SOUND**
24                                      **CORPORATION'S OPPOSITION TO**
   GOOGLE, INC., *et al.*,             **DEFENDANTS' MOTION TO DISMISS**
25                                      **PURSUANT TO FEDERAL RULE OF**
                      Defendants.       **CIVIL PROCEDURE 12(b)(1) OR, IN THE**
26                                      **ALTERNATIVE, TO STAY PENDING**
                                        **ARBITRATION**
27

28

# TABLE OF CONTENTS

I.  INTRODUCTION ........................................................................................................1

II. FACTUAL BACKGROUND .......................................................................................3

    A.  The Negotiations Leading Up to the Max Sound License .........................................3

    B.  The Max Sound License...........................................................................................5

    C.  The Preparation and Approval of the Patent Infringement and Trade Secret
        Lawsuits ..................................................................................................................7

    D.  The Dismissal of the California Trade Secrets Case and the Delaware Patent
        Infringement Case and the Filing of the California Patent Infringement Case..........9

    E.  The German Patent Litigation Against Google and the Confirmation of a
        License of the ODT Technology from VSL and Vedanti to Max Sound ...............10

    F.  Nash Attempts to Restructure or Sabotage the Max Sound License and the
        Patent Infringement Lawsuit Against Demands for a Restructuring of the
        Max Sound License ................................................................................................11

    G.  The Arbitration Proceeding...................................................................................11

III. PROCEDURAL BACKGROUND ..............................................................................12

IV. ARGUMENT .............................................................................................................12

    A.  Max Sound Has the Burden to Present "Specific Facts" Supporting Its
        Standing Allegations Sufficient to Entitle it to a Trial on the Issue ......................12

    B.  Max Sound has Standing as an Exclusive Licensee with the Right to
        Exclude the Google Defendants from Practicing the `339 Patent .........................13

    C.  VSL Held All of the Rights It Granted to Max Sound by Virtue of an
        Exclusive License from Vedanti to VSL ...............................................................15

    D.  In the Alternative, VSL Acted as the Agent or Alter Ego of Vedanti When It
        Entered Into the Max Sound License ....................................................................17

        1.  VSL is the Alter Ego of Vedanti ...............................................................17

        2.  VSL Acted as Vedanti's Agent .................................................................20

    E.  VSL Approved the Filing of a Patent Infringement Lawsuit Against Google
        for Infringement of the ODT Patents, Including the `339 Patent............................22

V.  CONCLUSION...........................................................................................................25

# TABLE OF AUTHORITIES

**<u>Cases</u>**

*Automotriz De California v. Resnick*,
  47 Cal.2d 792, 306 P.2d 1 (1957) ................................................................... 18

*Avago Techs. Fiber IP (Sing.) Pte. v. IPtronics Inc.*,
  2012 U.S. Dist. LEXIS 125362 (N.D. Cal. Sept. 4, 2012).............................. 15

*Blue Gentian, LLC v. Telebrands Corp.*,
  2014 U.S. Dist. LEXIS 69811 (D.N.J. Apr. 2, 2014) ...................................... 15

*Bowoto v. Chevron Texaco Corp.*,
  312 F. Supp. 2d 1229 (N.D. Cal. 2004) .......................................................... 20

*Chemtool, Inc. v. Lubrication Technologies, Inc.*,
  148 F.3d 742 (7th Cir.1998)............................................................................ 20

*Dole Food Co. v. Patrickson*,
  538 U.S. 468 (2003)......................................................................................... 18

*Fitz-Patrick v. Commonwealth Oil Co.*,
  285 F.2d 726 (5th Cir. 1960)........................................................................... 19

*Great Lakes Intellectual Prop. v. Sakar Int'l, Inc.*,
  516 F. Supp. 2d 880 (W.D. Mich. 2007) ........................................................ 15

*In re Combustion Eng'g, Inc.*,
  366 F. Supp. 2d 224 (D. Del. 2005) ................................................................ 17

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) ........................................................................................ 13

*Morrow v. Microsoft Corp.*,
  499 F.3d 1332 (Fed. Cir. 2007)....................................................................... 14

*Paice LLC v. Toyota Motor Corp.*,
  504 F.3d 1293 (Fed. Cir. 2007)....................................................................... 15

*Phoenix Canada Oil Co. v. Texaco, Inc.*,
  842 F.2d 1466 (3d Cir. 1988)..................................................................... 20, 21

*Propat Int'l Corp. v. Rpost, Inc.*,
  473 F.3d 1187 (Fed. Cir. 2007).................................................................. 13, 14

*Rotec Indus., Inc. v. Mitsubishi Corp.*,
  215 F.3d 1246 (Fed. Cir. 2000)....................................................................... 20

*Quantum Corp. v. Riverbed Tech., Inc.*,
  No. C 07-04161 WHA, 2008 WL 314490 (N.D. Cal. Feb. 4, 2008) ............... 17

*Sys. Div., Inc. v. Teknek Electronics, Ltd.*,
  253 F. App'x 31 (Fed. Cir. 2007) .................................................................... 18

*WiAV Solutions LLC v. Motorola, Inc.*,
    631 F.3d 1257 (Fed. Cir. 2010) ........................................................................................... 14

**<u>Statutes</u>**

35 U.S.C. § 100 ......................................................................................................................... 13

35 U.S.C. § 281 ......................................................................................................................... 13

**<u>Other Authorities</u>**

Restatement (Second) of Agency § 144 (1958) ........................................................................ 20

Restatement (Second) of Agency § 147 (1958) ................................................................. 20, 21

Restatement (Second) of Agency § 149 (1958) ................................................................. 20, 21

Restatement (Second) of Agency § 154 (1958) ........................................................................ 21

## TABLE OF ABBREVIATIONS

| | |
|---|---|
| Plaintiff Max Sound Corporation | Max Sound or Plaintiff |
| VSL Communications Ltd. | VSL |
| Defendant Vedanti Systems Limited | Vedanti |
| Defendants Google Inc., YouTube, LLC, and On2 Technologies, Inc., collectively | Google Defendants |
| U.S. Patent No. 7,974,339 | `339 Patent |
| Declaration of Greg Halpern | Halpern Declaration |
| Declaration of Kristy Zander | Zander Declaration |
| Declaration of Bernhard Arnold | Arnold Declaration |
| Declaration of Scott A. Denning | Denning Declaration |
| Declaration of Christopher M. Joe | Joe Declaration |
| Declaration of Eric W. Buether | Buether Declaration |
| Declaration of Nina Nelson | Nelson Declaration |
| Google Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(1) or, in the Alternative, to Stay Pending Arbitration (Dkt No. 99) | Google MTD |

1    Plaintiff Max Sound Corporation ("Max Sound") hereby submits its Opposition to

2    Defendants Google Inc., YouTube, LLC, and On2 Technologies, Inc.'s ("Google Defendants")

3    Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(1) or, in the Alternative, to

4    Stay Pending Arbitration (the "Motion") (Dkt No. 99).[1]

5                                    **I.    INTRODUCTION**

6    Google's argument that Max Sound lacks standing to pursue this lawsuit for infringement

7    of the `339 Patent should be rejected because Max Sound is an exclusive licensee of the `339

8    Patent with the exclusive right to sue the Google Defendants for infringement of the patent and to

9    settle the claim for infringement of the patent.  Max Sound became an exclusive licensee of the

10   `339 Patent pursuant to a license agreement executed by Max Sound and an entity called VSL

11   Communications Ltd. ("VSL") (the "Max Sound License").  The Max Sound License grants Max

12   Sound the worldwide rights to intellectual property relating to technology called ██████████

13   ████████████████████████████████████████  Max Sound License at 1.  The

14   `339 Patent is entitled "Optimized Data Transmission System and Method" and is included in the

15   licensed ODT Technology.  The Max Sound License further grants Max Sound the exclusive right

16   to sue pre-approved violators of the ODT Technology, including the `339 Patent.

17   Google's contention that Max Sound did not acquire the right to enforce the `339 Patent

18   pursuant to the Max Sound License because title to the patent is held by VSL's wholly-owned

19   subsidiary, Vedanti, ignores the undisputed fact that Vedanti granted VSL ██████████████

20   ████████████████████████████████████████  Vedanti has

21   also confirmed that VSL granted Max Sound a sublicense covering that technology pursuant to the

22   Max Sound License.  This is also confirmed by the language in the Max Sound License stating that

23   ████████████████████████████████████████████████

24   ████████████████████████████████████████████████

25   ██████████████████████  The contract negotiation history establishes that VSL sought to enter

26   into an agreement with Max Sound on its behalf and for the benefit of Vedanti for Max Sound to

27

28   ───────────────
     [1]  Any emphasis in bold face type is added unless otherwise indicated.

1    assert the `339 Patent and its foreign counterpart patents against Google and others.  Thus, VSL,

2    pursuant to the exclusive license granted to it by Vedanti, held all of the rights to the ODT

3    Technology it granted to Max Sound under the Max Sound License, including the right to enforce

4    the `339 Patent.

5         Putting aside that the evidence shows that VSL itself held the rights it granted to Max

6    Sound under the Max Sound License, the evidence also supports an alternative argument that VSL

7    entered into the agreement as the agent or alter ego of Vedanti.   The record is replete with

8    evidence that Connie Nash, the CEO of both VSL and Vedanti, formed VSL only days before

9    executing the Max Sound License for the sole purpose of granting Max Sound the right to enforce

10   the `339 Patent, among other intellectual property rights held by Vedanti.   The record also

11   establishes that Nash did not treat VSL and Vedanti as distinct entities, admitting on one occasion

12   that "the name VSL, stands for all assets in Vedanti Systems (UK)."  Thus, under an alter ego or

13   agency theory, Vedanti must be deemed a party to the Max Sound License and as having granted

14   Max Sound the right to enforce the `339 Patent the same as if it had been named the contracting

15   party in the agreement.

16        Finally, Google's argument that VSL did not grant Max Sound approval to sue Google for

17   infringement of the `339 Patent is contradicted by the evidence, which shows that Nash, on behalf

18   of VSL and Vedanti, stated that suing Google for infringement of the ODT Patents in general, and

19   the `339 Patent in particular was a principal objective for entering into the Max Sound License,

20   and that Nash reviewed, commented upon and approved of the complaints accusing Google and

21   others of infringing the `339 Patent and other ODT patents.   The Max Sound License identified

22   two specific pre-approved claims that Max Sound was obligated to pursue – ███████████

23   ████████████████████████████████████████

24   ████████████████████████████████████████

25   ████████████████████████████████████████

26   ███████████████████   Thus, the patent litigation against Google falls within the scope

27   of the Margin Notes Claim preapproved by VSL.

28

## II.   FACTUAL BACKGROUND

**A.   The Negotiations Leading Up to the Max Sound License**

Plaintiff Max Sound's standing to bring this action is grounded upon a license agreement executed by it and VSL on June 20, 2014 – the Max Sound License. *See* Halpern Declaration – Exhibit S.  Max Sound is a publicly traded company involved in providing high definition audio technology. Halpern Declaration, ¶1.  Greg Halpern is the Chairman and Chief Financial Officer of Max Sound.  *Id.*  Constance Nash ("Nash") is a businesswoman who owns and controls several closely-held companies including VSL and Defendant Vedanti, the owner of title to the `339 Patent and related patents.

In April of 2014, Nash approached Max Sound about entering into a business arrangement to monetize intellectual property called "Optimized Data Transmission Technology" (the "ODT Technology") relating to the transmission of data.  Halpern Declaration, ¶2.  During Nash's initial discussions with Halpern, Nash explained that she was an inventor of the ODT Technology and obtained several patents around the world covering that technology (the "ODT Patents").[2]  Nash stated that she believed that several companies, including Google, Qualcomm, Apple, Amazon, and Facebook, had been infringing her ODT Patents.  Nash further explained that she had entered into a non-disclosure agreement with Google and that Google, after acquiring technical information from her about the ODT Technology, returned the documents to her with several Post-It notes written by a Google in-house attorney and stuck to the margins of the documents indicating that Google intended to use her patented ODT technology without permission.  *See* Halpern Declaration – Exhibit A.  Nash referred to these Post-It notes as "Margin Notes."  Halpern Declaration, ¶3.  Nash wanted Max Sound's help in enforcing the ODT Patents and other intellectual property rights against Google and other infringers of those rights.  Halpern Declaration, ¶3.

In an effort to persuade Max Sound to assist her in pursuing infringers of her patented technology, in mid-April 2014, Nash sent to Max Sound several PowerPoint presentations and

---

[2]  A list of the ODT Patents is set forth in Exhibit A to the Buether Declaration.

other materials about the ODT Patents and how Google and others infringed them.  For example, Nash sent to Max Sound a PowerPoint presentation containing copies of the "Margin Notes" with Nash's comments regarding how they illustrated Google's intention to use the patented ODT technology and avoid liability for patent infringement.  *See* Halpern Declaration – Exhibit B. Nash also sent to Max Sound a claim chart showing how certain claims of the `339 Patent read on the H.264/MPEG-4 AVC advanced video coding format used by Google, among others.  Halpern Declaration, ¶5 – Exhibits C and D.  At the same time, Nash also sent to Max Sound a "Merger and Acquisition" PowerPoint presentation promoting the value of the ODT Patents and their enforcement against infringers.  *See* Halpern Declaration – Exhibit F.  This PowerPoint presentation identified the ODT Patents, including the `339 Patent, and discussed in detail the application of those patents to video coding formats used by numerous companies, including Google, in a variety of jurisdictions covered by the patents.  Then, on April 20, 2014, Nash sent to Max Sound a document entitled "Deal Memo Framework for Mutual Consideration" in which Nash described her plan for VSL to grant Max Sound an exclusive license to the ODT Technology, including the ODT Patents, and for Max Sound to enforce those patents against infringers.  *See* Halpern Declaration – Exhibit G.  In the Deal Memo, Nash described the ODT Patents as "our no prior art, hot patents."  Halpern Declaration, ¶8.

Thus, from the very beginning of the negotiations between Nash and Max Sound leading up to the execution of the Max Sound License, Nash clearly represented to that Max Sound that Max Sound's enforcement of the ODT Patents against infringers, including Google, was an essential aspect of any agreement with Max Sound.  Nash continued to make this clear throughout her protracted contract negotiations with Max Sound.  Halpern Declaration, ¶¶9-13.

During the following weeks of negotiation between Nash and Max Sound, Nash executed several versions of a license agreement before a final, definitive agreement was reached.  Halpern Declaration, ¶16.  In April 2014, Nash had formed a corporation in Delaware called VSL Communications, Inc. ("VSL Delaware") (*See*, Buether Declaration – Exhibit H), and initially selected this entity to be the party to the agreement with Max Sound.  Halpern Declaration, ¶16. *See also* Halpern Declaration – Exhibit N.  In this agreement, dated and executed on May 16,

2014, VSL Delaware represented to Max Sound that it was "the lawful rights holder of Intellectual Property Titled Optimized Data Transmission System and Method ('ODT')" and that it "legally owns and controls all of the worldwide rights, title and interest" to the ODT Patents and other ODT intellectual property rights. *Id.*

On May 19, 2014, a mere three days later, Nash changed her mind and insisted on using another entity as the party to the contract also called "VSL Communications" and supposedly established in Hong Kong ("VSL Hong Kong"). Halpern Declaration, ¶17. *See also* Halpern Declaration – Exhibit O. In this agreement, dated and executed May 19, 2014, VSL Hong Kong made essentially the same representations and warranties that VSL Delaware made about ownership of the ODT Patents. *Id.*

On the same day, Nash changed her mind again, this time making the party to the agreement an entity called "Vedanti Systems Ltd." with a Delaware address ("Vedanti Delaware"). Halpern Declaration, ¶18. *See also* Halpern Declaration – Exhibit P. Nash explained this demanded change as follows: "There is no VSL. Why? The litigation with Google which will be in the public on every pundit talk show in the world, will have to be Vedanti. . . ." *Id.* Vedanti Delaware represented in this agreement that it "legally owns and controls all of the worldwide rights, title and interest to all fields of use of its Trade Secrets, Patents, and all other know-how, through its Vedanti Systems Limited entity. . . ." *Id.* The "Vedanti Systems Limited entity" is a reference to the United Kingdom Vedanti entity that holds title to the ODT Patents.

Nash then changed her mind a third time. After Max Sound made the initial payments totaling $500,000 required under the agreement with Vedanti Delaware, Nash insisted that a new agreement be signed naming a different entity called "VSL Communications, Ltd." as a party to the agreement. This "VSL" is a United Kingdom company. Halpern Declaration, ¶19. This agreement became the final Max Sound License. *See* Halpern Declaration – Exhibit S.

**B.      The Max Sound License**

On June 20, 2014, after several negotiating sessions and the execution of various iterations of the agreement, Max Sound and VSL entered into a final agreement – the Max Sound License – entitled "Max Sound Corporation and VSL Communications Licensing and Representation

Agreement (Optimized Data Transmissions System & Method).  *See* Halpern Declaration, ¶21 – Exhibit S.

The Max Sound License states that ██████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████  The `339 Patent is intellectual property and is entitled "Optimized Data Transmission System and Method."  The Max Sound License further states that ████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ Thus, VSL represented that it owns the rights relating to the ODT Patents, including the `339 Patent.

The Max Sound License contains a broad grant to Max Sound of a license to the ODT Technology, including the `339 Patent.█████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████  Thus, pursuant to the Max Sound License, Max Sound was granted a worldwide and unrestricted license to the `339 Patent, among other ODT technology.

The Max Sound License further provides Max Sound with the exclusive right to sue pre-approved violators of the ODT Technology, including infringers of the `339 Patent.  The agreement provides that █████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████  The Google Defendants are ██ ████████████████████ of the ODT Patent rights.  Halpern Declaration, ¶43.████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████

## C.   The Preparation and Approval of the Patent Infringement and Trade Secret Lawsuits

In early July 2014, in accordance with the Max Sound License, Max Sound retained legal counsel to advise and assist it in connection with preparing lawsuits against Google for infringement of the `339 Patent and trade secret misappropriation.  The plan was to file the two lawsuits by August 13, 2014, one for Google's infringement of the `339 Patent and the other relating to Google's misappropriation of Vedanti's trade secrets.  Halpern Declaration, ¶53. During the process of preparing these lawsuits, Nash was fully aware that Max Sound was proceeding to file a patent infringement lawsuit against Google and related entities for infringement of the `339 Patent, and she accepted that strategy.

For example, on July 1, 2014, Nash expressed to Halpern a preference for obtaining a license from Facebook before suing Google for infringement of the `339 Patent, stating that "now we have ALL patents in NO Prior art for only 1 month remaining – before Google litigation makes us a pariah."  Halpern Declaration, ¶54.  Nash, therefore, understood and accepted that Max Sound would sue Google for infringement of the `339 Patent soon.  In another e-mail sent to Halpern the same day, Nash acknowledged that there was limited time to complete a licensing deal with Facebook "before [the] Google litigation."  Halpern Declaration, ¶57.  Nash proposed that Max Sound secure a licensing deal with Facebook and "[t]hen Google is sued."  *Id.*  Nash also asked Max Sound for a $100,000 loan for VSL in order to strengthen VSL's financial condition, explaining that "[b]uilding [a] British company so it is prestigious and strong with leadership, when Google looks at the Plaintiffs: VSL and MaxSound. [*sic*]"  *Id.*

On August 4, 2014, Max Sound sent Nash a draft of the complaint for patent infringement against Google and met with her at her house to review the draft complaint with her.  Halpern Declaration, ¶58.  On August 5, 2014, Max Sound discussed with Nash which "Margin Notes" that should be included in the patent infringement complaint, and which Google products used the patented technology.  *Id.*  On August 8, 2014, Nash sent an e-mail to Max Sound's counsel

1    suggesting which specific "Margin Notes" should be included in the patent infringement lawsuit to

2    provide "sizzle for the media and judge."  Halpern Declaration, ¶59.

3         On August 9, 2014, Max Sound filed a complaint against Google for patent infringement

4    in Delaware federal court naming Max Sound and Vedanti as co-plaintiffs.  On August 10, 2014,

5    Nash sent a string of e-mails to Max Sound, once again acknowledging and approving the now-

6    filed patent infringement lawsuit against Google in Delaware.  Halpern Declaration, ¶60.  Early on

7    that day, Nash sent an e-mail to Max Sound acknowledging that the patent infringement lawsuit

8    would be filed in Delaware and specifically commenting that "Sikora says claims and invention

9    are violated," referring to the report by expert Dr. Sikora finding that Google practiced the

10   invention claimed in several of the ODT patents.  *Id.*  Although Nash expressed a preference for

11   filing a patent infringement lawsuit against Google in Germany rather than in Delaware, she

12   accepted Max Sound's decision to file in Delaware, and suggested that her patent attorney in

13   Germany (Yorck Hernandez) be consulted regarding the allegations made in the Delaware patent

14   infringement lawsuit.  *Id.*  Nash further acknowledged that a patent infringement lawsuit against

15   Google was directly related to the "margin notes," stating that the "Margin notes will thrill

16   Europe".  *Id.*  Later that day, Nash sent an e-mail acknowledging the filing of the "patent case"

17   stating "[t]hanks for the lifeline, I couldn't face mocking and patents destruction."  *Id.*

18        The next day, Nash e-mailed Yorck again and requested him to coordinate with counsel for

19   Max Sound and Vedanti in the United States the anticipated filing of patent infringement litigation

20   against Google in Germany.  Halpern Declaration, ¶61.  Nash specifically asked for this help "for

21   Vedanti," and asserted that "I alone have the inventions and all the patents' knowledge all way

22   round. . . ."  *Id.*  Nash also acknowledged that the patent infringement lawsuit would include as a

23   plaintiff "our Vedanti Systems (UK)" and that Max Sound's "is prepared in the US to sue Google

24   for patents actions, and separately we have a Trade Secrets and Fraud case for California court."

25   *Id.*  Later that same day, Nash e-mailed Max Sound asking about the status of the Delaware patent

26

27

28

1    infringement complaint.  Shortly thereafter, Nash told Max Sound that, "[i]f you want to win, put

2    me in charge of patents and complaints."  *Id.* [3]

3    **D.    The Dismissal of the California Trade Secrets Case and the Delaware Patent**
     **Infringement Case and the Filing of the California Patent Infringement Case**

4

5         In September 2014, Max Sound learned that Nash had not disclosed to Max Sound or its

6    counsel the existence of certain e-mails she received from Google relating to the Post-It notes.  In

7    addition, while Max Sound was investigating the Post-It notes issue, Max Sound's litigation

8    counsel specifically requested that Nash not do anything to publicize the Post-It notes, as she had

9    threatened to do.  Nash or someone on her behalf, however, sent copies of the Post-It notes to

10   media outlets in the Silicon Valley area after which they were published in a local newspaper and

11   on the Internet – a fact that Nash has since admitted to Max Sound.  Halpern Declaration, ¶65.

12   Given these developments, Max Sound decided to dismiss the trade secrets lawsuit completely,

13   and to dismiss the Delaware patent infringement lawsuit and re-file it the same day in California.

14        In the California patent infringement lawsuit, Max Sound named Vedanti as a co-plaintiff

15   but Max Sound's counsel no longer represented Vedanti.  Halpern Declaration, ¶66.  Based upon

16   ████████████████████████████████████████████████████████████████

17   Max Sound expected Vedanti to retain separate counsel and appear in the lawsuit as a co-plaintiff.

18   Nash, however, refused to cooperate with Max Sound regarding the California lawsuit and was

19   unable to retain counsel for Vedanti.  Max Sound, therefore, had no alternative but to file an

20   amended complaint naming Vedanti as a defendant.  Halpern Declaration, ¶67. [4]

21

22   _____

     [3]  On August 13, 2014, Max Sound also filed a complaint for trade secret misappropriation against
23   Google in Santa Clara Superior Court also naming Vedanti as a co-plaintiff.  *See* Exhibit J to the
     Declaration of Michael J. Guo In Support of Defendants Motion to Dismiss or, in the Alternative,
24   to Stay.

25   [4]  Google's contention that Vedanti "is still not participating in this case by refusing to respond to
     discovery or otherwise meaningfully participate in this action," Google MTD at 3, has no bearing
26   on Max Sound's standing in this case.  It is but one more example of Nash's disruptive nature, and
     most likely a substantial reason why Vedanti's counsel repeatedly withdraw from the case.
27   Vedanti has been named a defendant as the owner of the `339 Patent and has appeared in this case.
     That is sufficient to satisfy the prudential standing requirement.  Indeed, Google withdrew its
28   motion to dismiss based upon the absence of an appearance by Vedanti as a co-plaintiff
     immediately after Vedanti was named as a defendant.

**E.      The German Patent Litigation Against Google and the Confirmation of a License of the ODT Technology from VSL and Vedanti to Max Sound**

In September 2014, at Nash's urging, Max Sound filed patent infringement lawsuits in Germany against Google and manufacturers of infringing Google products (the "German Patent Infringement Litigation").   Halpern Declaration, ¶28.   In the German Patent Infringement Litigation, Max Sound asserted one of the ODT Technology – European patent EP 2 026 277 B1 also called "Optimized Data Transmission System and Method" the "EP 277 Patent")  *Id.*

Under German patent law, a plaintiff asserting infringement of a patent must show that he is either the owner of the patent, an exclusive licensee of the patent, or otherwise entitled by the rights holder to enforce the patent.  Arnold Declaration, ¶9.  In September 2014, Max Sound's German patent counsel requested confirmation that Max Sound was entitled to enforce the EP 277 Patent.   Halpern Declaration, ¶30.   On September 4, 2014, Vedanti and VSL executed a Confirmatory License Agreement (the "Vedanti/VSL Confirmatory License Agreement") confirming that Vedanti was the owner of the EP 277 Patent and "granted an exclusive and non-restricted patent license to VSL for the Patent."   Arnold Declaration, ¶4.   The Vedanti/VSL Confirmatory License Agreement was executed by Nash on behalf of both Vedanti and VSL.  *Id.* Also, on September 4, 2014, Vedanti executed another Confirmatory License Agreement confirming that "VSL granted a non-restricted exclusive patent license to MAX SOUND for, inter alia, the [EP 277] Patent" (the "VSL/Max Sound Confirmatory License Agreement").   Arnold Declaration, ¶5.

On September 8, 2014, Robert Newell, the Chairman and founder of Vedanti and Nash's husband, signed an affidavit confirming that "[e]xcept for the license that has been granted to VSL Communications Ltd. . . . and the sublicense granted to Max Sound Corporation, no other license has been granted by Vedanti regarding EP 026 277 for the territory of Germany" (the 'Newell Affidavit").  Arnold Declaration, ¶5.

The combination of the licenses confirmed by the Confirmatory License Agreements establish that, at the time VSL entered into the Max Sound License, VSL held the rights it granted to Max Sound pursuant to the license.  VSL acquired those rights from Vedanti pursuant to the

1    "exclusive and non-restricted patent license to VSL' granted by Vedanti.   Arnold Declaration,

2    ¶¶11-12.

3    **F.     Nash Attempts to Restructure or Sabotage the Max Sound License and the
             Patent Infringement Lawsuit Against Demands for a Restructuring of the Max
4            Sound License**

5           Within weeks of signing the Max Sound License, Nash began demanding more money

6    from Max Sound beyond what Max Sound agreed to pay pursuant to the Max Sound License, and

7    attempting to restructure the Max Sound License to benefit VSL and her more.   *See* Halpern

8    Declaration, ¶¶68-74.   When Nash's efforts to restructure the Max Sound License failed, Nash

9    resorted to repeated attempts to sabotage the California patent infringement litigation.

10          For example, during several meetings between Nash and Max Sound in November and

11   December 2014 and in April and May 2015, Nash admitted that she would "blow up" or

12   "sabotage" the patent case if Max Sound did not accept her new terms.   *See* Halpern Declaration,

13   ¶75.   On two occasions in December 2014, Nash contacted Google's counsel attempting to

14   undermine the California patent infringement litigation.   Declaration of Nina Nelson, ¶2.   In

15   addition, during an April 15, 2015, meeting between Nash and Max Sound, Nash told Max Sound

16   that she had tried to sell VSL and the ODT Patents to Google.   Halpern Declaration, ¶76.   On

17   August 19, 2015, ███████████████████████████████████████   *Id*.

18   Nash also attempted to hire away Max Sound's consulting technical expert Scott Denning to work

19   with Nash to prosecute that lawsuit on her own.   *See* Denning Declaration and Joe Declaration.

20   Further illustrating Nash's efforts to sabotage the Max Sound License, on April 15, 2015, Nash's

21   husband Newell filed an application to dissolve VSL Communications Ltd. without notice to Max

22   Sound, as required by law, and in violation of the Max Sound License, in an attempt to undermine

23   the Max Sound License.   Halpern Declaration, ¶77.   Max Sound found out about this only in early

24   August of 2015 and was able to thwart this attempt by Nash to perpetrate a fraud on it.   *Id*.

25   **G.    The Arbitration Proceeding**

26          Nash's repeated attempts to undermine the Max Sound License and the patent litigation

27   against Google forced Max Sound to invoke the arbitration provision in the Max Sound License

28   and file an Arbitration Demand against Nash and VSL on August 11, 2015, seeking injunctive

relief and monetary damages. Halpern Declaration, ¶78. On August 28, 2015, the arbitrator entered an Emergency Arbitration Award in favor of Max Sound finding that VSL was "being dissolved and emptied of assets" by Nash and that Nash "provided no *prima facie* legally tenable explanation for that conduct." *Id.* The Arbitrator also found that this conduct by Nash, if successful, would result in VSL "no longer hold[ing] ODT rights upon which the entire architecture of the [Max Sound License] is premised." *Id.* [5]

### III.    PROCEDURAL BACKGROUND

This is Google's third motion to dismiss. The first was withdrawn as moot, Dkt. No. 24, and the second was denied. Dkt. No. 78. Google's assertion that its most recent motion to dismiss was prompted by its recent discovery of "evidence" from Vedanti is without merit. Google has been aware that Nash denied that Vedanti authorized this patent infringement lawsuit since before April 2015, when Nash called Google' litigation counsel and left voicemail messages stating such denials. *See* Nelson Declaration. Indeed, Google's counsel mentioned these messages during the April 30 hearing on Google's Second Motion to Dismiss, suggesting then that it might challenge Max Sound's standing on this ground. Transcript of April 30, 2015 Hearing at 25; Buether Declaration at ¶2. Indeed, at the end of May 2015 Google served written discovery specifically directed to Max Sound's contention that it had standing and any challenge to its standing by Vedanti or VSL. Significantly, Max Sound provided a detailed response to Google's standing contention interrogatory, whereas Google refused to respond to Max Sound's standing interrogatory until it filed the current motion to dismiss, choosing instead to lodge baseless objections. *See* Buether Declaration at ¶6.

### IV.    ARGUMENT

**A.    Max Sound Has the Burden to Present "Specific Facts" Supporting Its Standing Allegations Sufficient to Entitle it to a Trial on the Issue**

Although Max Sound has the burden to prove it has standing, it only has to present "specific facts" supporting its allegations that it has standing sufficient to entitle it to a trial on the

---

[5]   At the time Google filed its Motion to Dismiss, it was aware of the Emergency Arbitration Award, **[GOOG-MXSND3255]**, but neglected to mention it in its motion.

issue.  As the Supreme Court has held, since standing is "an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).  For example, the Court observed in *Lujan*, "[i]n response to a summary judgment motion," the plaintiff must only 'set forth' by affidavit or other evidence 'specific facts,' [citation omitted], which for purposes of the summary judgment motion will be taken to be true."  *Id.*  "And at the final stage," the Court held, "those facts (if controverted) must be 'supported adequately by the evidence adduced at trial.'"  Max Sound has set forth specific facts supporting its allegations that it has standing.  Max Sound submits that Google has not and cannot controvert them but, at a minimum, those specific facts warrant denial of Google's motion to dismiss.

## B. Max Sound has Standing as an Exclusive Licensee with the Right to Exclude the Google Defendants from Practicing the `339 Patent

The Patent Act provides that a "patentee" has the right to initiate a "civil action for infringement of [its] patent."  35 U.S.C. § 281.  The term "patentee includes not only the patentee to whom the patent was issued but also the successors in title to the patentee"  35 U.S.C. § 100(d).  The Act, however, does not limit the right to sue to only patent owners or their successors in interest.  It also can include certain licensees of the patent.

Google's assertion that "standing requires the plaintiff holds enforceable title to the patent at the inception of the lawsuit," [Motion at 6, ll.3-4] is an incorrect statement of the law.  "A party that is neither the legal owner of the patent nor the transferee of all substantial rights in the patent still has standing to sue for infringement if that party has a legally protected interest in the patent created by the Patent Act, so that it can be said to suffer legal injury from an act of infringement."  *Propat Int'l Corp. v. Rpost, Inc.*, 473 F.3d 1187, 1193 (Fed. Cir. 2007).  "An exclusive licensee is considered to have such an interest."  *Id.*

An exclusive licensee has fewer than all substantial rights under the patent, but still has a proprietary interest in the patent because it has been granted the right to exclude.  *WiAV Solutions LLC v. Motorola, Inc.*, 631 F.3d 1257, 1266 (Fed. Cir. 2010) ("[A] licensee is an exclusive licensee of a patent if it holds any of the exclusionary rights that accompany a patent.").  The

13

"right to exclude is the legal interest created by statute . . . .  Constitutional injury in fact occurs when a party performs at least one prohibited action with respect to the patented invention that violates these exclusionary rights."  *Morrow v. Microsoft Corp.*, 499 F.3d 1332, 1339 (Fed. Cir. 2007) (internal citations omitted).

The Federal Circuit in *WiAV Solutions* emphasized that "the touchstone of constitutional standing in a patent infringement suit is whether a party can establish that it has an exclusionary right in a patent that, if violated by another, would cause the party holding the exclusionary right to suffer legal injury."  631 F.3d at 1265. Therefore, a party has the standing to sue another party for patent infringement if it has the right to exclude that person from practicing the patent.  *WiAV*, 631 F.3d at 1266-67.  The Federal Circuit in *WiAV Solutions* clarified that the proper consideration is whether a plaintiff has been granted a right to exclude others from practicing the patent, and total exclusion was not required.  631 F.3d 1257.  The primary question, therefore, is "whether [the licensee] has shown that it has the right under the patents to exclude **the Defendants** from engaging in the alleged infringing activity and therefore is injured by the defendants' conduct." *Id.*

The Max Sound License confers upon Max Sound an indefeasible right to exclude the Google Defendants from practicing the patent, thereby conferring exclusive licensee standing upon Max Sound to sue those defendants for infringement of the `339 Patent.

As explained below, VSL authorized Max Sound to bring a claim for infringement of the `339 Patent against the Google Defendants, and the Max Sound License expressly provides that VSL has granted Max Sound "rights to this claim."  Furthermore, VSL expressly granted Max Sound the "Exclusive Right" to sue the Google Defendants for infringement of the `339 Patent. Max Sound has a proprietary interest in the `339 Patent because it was granted the right to exclude the Google Defendants from practicing the patent.  In particular, Max Sound has an exclusionary right in the `339 patent that has been violated by the Google Defendants, thereby causing Max Sound to suffer legal injury in the form of deprivation of a reasonable royalty for their use of the patented invention.

Moreover, the Google Defendants do not presently have a license to practice the `339 Patent and cannot obtain such a license from VSL, now or in the future.  Max Sound has the sole right to settle the patent infringement claim against the Google Defendants.  Furthermore, VSL cannot grant the Google Defendants a license at some point in time in the future.  Max Sound's patent infringement claim against those defendants includes the right to seek an equitable remedy addressing future infringement such as an injunction or an ongoing royalty for patent infringement in lieu of an injunction may be appropriate.  *See Paice LLC v. Toyota Motor Corp.*, 504 F.3d 1293, 1314 (Fed. Cir. 2007).  Max Sound has the sole right to accept or reject a settlement that would dispose of these potential remedies.

This Court and others have recognized that a patentee can grant a licensee the right to exclude a specific defendant from practicing a patent or anyone from practicing the patent in a particular field, thereby giving that licensee standing to sue the specific defendant or defendants operating in a particular field for infringement of the patent.  *See Avago Techs. Fiber IP (Sing.) Pte. v. IPtronics Inc.*, 2012 U.S. Dist. LEXIS 125362, 7-8 (N.D. Cal. Sept. 4, 2012); *Blue Gentian, LLC v. Telebrands Corp.*, 2014 U.S. Dist. LEXIS 69811 (D.N.J. Apr. 2, 2014); *Great Lakes Intellectual Prop. v. Sakar Int'l, Inc.*, 516 F. Supp. 2d 880, 890 (W.D. Mich. 2007).

**C.      VSL Held All of the Rights It Granted to Max Sound by Virtue of an Exclusive License from Vedanti to VSL**

Google's argument that the Max Sound License "gave Plaintiff certain rights to VSL's – not Vedanti's – technology" overlooks the fact that Vedanti gave VSL an exclusive and non-restricted license to its ODT Patents and ODT Technology, including the `339 Patent, that was confirmed in the Vedanti/VSL Confirmatory License Agreement.  Thus, at the time VSL entered into the Max Sound License, VSL held the rights to the Vedanti ODT Patents and ODT Technology it granted to Max Sound.

This is the only interpretation of the Max Sound License consistent with VSL's representation in the agreement that ████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████ VSL held the ODT Patent rights it granted to Max Sound through the exclusive and non-restricted patent license granted to VSL by Vedanti, a wholly-

owned subsidiary of VSL and one of its "affiliated entities".  VSL did not have any assets other than the rights under the ODT Patent and other ODT Technology acquired from Vedanti pursuant to the exclusive license between VSL and Vedanti.  This explains Nash's statement that "the name VSL, stands for all assets in Vedanti Systems (UK)" in conjunction with her last-minute replacement of VSL for Vedanti Delaware in the Max Sound License.  VSL was not created until June 11, 2014, only nine days before the Max Sound License was consummated.  If VSL did not hold the rights to the Vedanti ODT Patents and ODT Technology that it granted to Max Sound, the entire Max Sound License would be rendered illusory.

Even though the Confirmatory License Agreements are directed at the EP 277 Patent and the litigation in Germany enforcing the patent, there is only one license agreement between VSL and Max Sound – the June 20, 2014 Max Sound License.  The reference in the VSL/Max Sound Confirmatory License Agreement to "a non-restricted exclusive patent license to MAX SOUND" is a reference to the Max Sound License.  The non-restricted exclusive patent license granted to Max Sound contained in the Max Sound License is not limited to the EP 277 Patent.  It is a license to all of Vedanti's ODT Technology, including the `339 Patent.  This is confirmed by the statement in the VSL/Max Sound Confirmatory License Agreement that "VSL granted a non-restricted exclusive patent license to MAX SOUND for, *inter alia*, the [EP 277] Patent." The "among other things" referred to in the VSL/Max Sound Confirmatory License Agreement includes the `339 Patent.

The history of the contract negotiations concerning the Max Sound License and the course of dealing between Nash and Max Sound establish that Nash, through VSL, intended to give Max Sound the right to pursue patent litigation against Google and others with respect to the entire set of ODT Patents.  During the contract negotiations, Nash repeatedly emphasized the value of the ODT Patents in general and discussed a worldwide enforcement strategy regarding the `339 Patent and other ODT Patents.  For example, Nash, in a May 7, 2014, e-mail, described her plan for Max Sound and VSL to exploit the ODT Patents through licensing and litigation activity and explained

that., although "Vedanti owns the assigned patents," VSL "will have licensed and invested massive sums in assets."  *Id.*[6]

The patents rights VSL granted to Max Sound in the Max Sound License are described in generic terms and apply to the Vedanti ODT Patents in general.  ████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████  As explained above, the ODT Technology includes the ODT Patents.  VSL did not grant patent rights to Max Sound on a patent-specific basis.  Thus, the VSL/Max Sound Confirmatory License Agreement confirms that VSL granted Max Sound a non-restricted exclusive patent license to the ODT Patents in general, and the Vedanti/VSL Confirmatory License Agreement confirms that VSL held such rights pursuant to the exclusive and non-restricted patent license granted by Vedanti to VSL.  Max Sound did not need to receive a grant of those rights directly from Vedanti.  It received the grant from VSL, which held those rights pursuant to its license from Vedanti.[7]

**D.     In the Alternative, VSL Acted as the Agent or Alter Ego of Vedanti When It Entered Into the Max Sound License**

**1.     VSL is the Alter Ego of Vedanti**

Even if Vedanti had not granted VSL the rights to the ODT Patents that VSL then granted to Max Sound, VSL's grant of those rights would be effective because VSL was acting as the agent or alter ego of Vedanti when it entered into the Max Sound License.

"Alter ego is a doctrinal basis for disregarding the corporate entity and is invoked where recognition of the corporate form would work an injustice to a third party."  *Sys. Div., Inc. v. Teknek Electronics, Ltd.*, 253 F. App'x 31, 34-35 (Fed. Cir. 2007).   "There are two general

---

[6]   Several different types of evidence can be offered in support of a party's position about the meaning of language in the contract including: (1) the structure of the contract; (2) bargaining history of the parties; and (3) the parties' conduct that reflects their understanding of the contract's meaning.  *In re Combustion Eng'g, Inc.*, 366 F. Supp. 2d 224, 231 (D. Del. 2005).

[7]   Given that Max Sound's standing derives from the patent rights granted to it by VSL as the licensee of those rights pursuant to the Vedanti/VSL exclusive license, the decision in *Quantum Corp. v. Riverbed Tech., Inc.*, No. C 07-04161 WHA, 2008 WL 314490 (N.D. Cal. Feb. 4, 2008) is not relevant.

1   requirements for disregarding the corporate entity:  there must be 'such unity of interest and

2   ownership that the separate personalities of the corporation and the individual no longer exist,' and

3   it must be demonstrated that 'if the acts are treated as those of the corporation alone, an

4   inequitable result will follow.'"  *Id.* (quoting *Automotriz De California v. Resnick*, 47 Cal.2d 792,

5   796, 306 P.2d 1 (1957)).  "It is also appropriate where fraud or other exceptional circumstances

6   merit piercing the corporate veil."  *Id.* (citing *Dole Food Co. v. Patrickson*, 538 U.S. 468, 475

7   (2003)).   "When a parent corporation dominates a subsidiary so that the subsidiary is an

8   instrumentality or agent of the parent corporation, courts frequently disregard the corporate

9   fiction."  *Fitz-Patrick v. Commonwealth Oil Co.*, 285 F.2d 726, 730 (5th Cir. 1960).

10        In this case, there is substantial evidence that Nash dominated the affairs of both VSL and

11   Vedanti such that the Court should disregard the corporate distinction between those entities.  As

12   discussed above, Nash created VSL only days before she selected that entity for the specific

13   purpose of becoming a party to the Max Sound License.  Nash repeatedly emphasized that VSL

14   was the sole shareholder of Vedanti and Nash controlled VSL, emphasizing that both entities were

15   under her direct and complete control.  *See* Halpern Declaration at ¶39; Halpern Declaration –

16   Exhibit EE at MAXD-VSL6117. Nash signed the Vedanti/VSL Confirmatory License Agreement

17   on behalf of **both** Vedanti and VSL.  Nash also had the compensation owed by Max Sound to

18   VSL under the Max Sound License diverted to another company Nash controls called

19   eTechInvestments.  Halpern Declaration at ¶38.  The VSL/Max Sound Confirmatory License

20   Agreement confirming the license between VSL and Max Sound was signed by Nash on behalf of

21   **Vedanti**.  Nash's attempted dissolution of VSL this year further illustrates her arbitrary exercise of

22   complete domination of VSL and Vedanti.

23        United Kingdom corporate records indicate that VSL was never capitalized and, if the

24   Vedanti/VSL exclusive license is to be ignored, did not have any assets.  This would make VSL's

25   representations in the Max Sound License ██████████████████

26   ██████████████████  a sham, resulting in the very inequity the alter ego doctrine was

27   intended to prevent.  *See Fitz-Patrick v. Commonwealth Oil Co.*, 285 F.2d 726, 730 (5th Cir.

28   1960).

Given that VSL is the sole shareholder of Vedanti, and Nash is the controlling officer of both VSL and Vedanti, there clearly is a unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist.   United Kingdom records reflect that neither VSL nor Vedanti have any assets with any value or cash and each is characterized as a "dormant company."  *See* Zander Declaration – Exhibits 1-5.

Furthermore, there is substantial evidence that Nash repeatedly disregarded the corporate distinctions between the companies.   From the very beginning of the Max Sound License negotiations, Nash acknowledged that "the name VSL, stands for all assets in Vedanti Systems (UK)," and referred to "VSL Communications Ltd. formerly Vedanti Systems Limited."  Halpern Declaration at ¶11; Halpern Declaration – Exhibit I.  As described above, after Nash and Halpern reached agreement as to the terms for Max Sound to enforce the ODT Patents and other ODT intellectual property rights, Nash created and used one entity after another to be the formal party to the written agreements with Max Sound.  Nash constantly communicated with Max Sound using a Vedanti e-mail address as well as e-mail addresses for VSL and other entities she controlled.  *See, e.g.*, Halpern Declaration at ¶59; Halpern Declaration – Exhibit BB at MAXD-VSL5636 (using nash@vedantisystems.co.uk  and  cnash@vsl-communications.com).   When Nash asked Greg Halpern to contact Nash's German patent attorney in connection with the patent infringement lawsuit against Google filed in Delaware, Nash told Halpern she told the German patent attorney that Max Sound "bought a part of Connie's [Nash's] assets."  *See* Buether Declaration – Exhibit G.

During the drafting of the complaints for the patent infringement and trade secret lawsuits against Google, Nash flip-flopped between VSL and Vedanti as the entity she wanted to name as a co-plaintiff.   Compare MAXD-VSL3693 with MAXD-VSL5973.   Nash finally requested the named plaintiff be VSL in order to avoid United Kingdom taxes.  See Halpern Declaration – Exhibit Y at MAXD-VSL5973.  Nash told Max Sound that "VSL has to be plaintiff.  It clearly owns assets.  And Vedanti Systems limited shows VSL as sole shareholder since April when we started the max dance."  *Id.*  Nash, however, explained that "I hope in the body of the Complaint mention is made of Vedanti Systems Limited, patents and software assets.  Signed NDA with

Google.  VSL owns bundle of assets."  Clearly, Nash was confirming that VSL and Vedanti were, for practical purposes, one and the same, and that VSL acted on behalf of Vedanti and had the right to grant Max Sound the patent rights held by Vedanti pursuant to the Max Sound License. Nash essentially used the VSL entity as a "front" for Vedanti for tax avoidance purposes.  Nash did not respect the separate corporate identities of VSL and Vedanti, and neither should the Court. *See Bowoto v. Chevron Texaco Corp.*, 312 F. Supp. 2d 1229, 1237 (N.D. Cal. 2004).

> **2.      VSL Acted as Vedanti's Agent**

Alternatively, Vedanti should be regarded as a party to the Max Sound License because VSL entered into that agreement on its own behalf and as the agent of Vedanti.  Courts have frequently used agency theory as an alternative to alter ego theory as a basis for holding one entity liable for the contractual commitments made by another.  The seminal case on this subject is *Phoenix Canada Oil Co. v. Texaco, Inc.*, 842 F.2d 1466 (3d Cir. 1988).  In that case, the court held that:

> When one corporation acts as the agent of a disclosed principal corporation, the latter corporation may be liable on contracts made by the agent.  *See* Restatement (Second) of Agency § 144 (1958).  Liability may attach to the principal corporation even though it is not a party named in the agreement.  *See* Restatement (Second) of Agency §§ 147, 149 (1958).
>
> Unlike the alter ego/piercing the corporate veil theory, when customary agency is alleged the proponent must demonstrate a relationship between the corporation and the cause of action.  Not only must an arrangement exist between the two corporations so that one acts on behalf of the other and within usual agency principles, but the arrangement must be relevant to the plaintiff's claim of wrongdoing.

*Id.* at 1477.  *See also Bowoto v. Chevron Texaco Corp.*, 312 F. Supp. 2d 1229, 1238-39 (N.D. Cal. 2004).  When using the agency theory, the completeness of one corporation's domination over the other "is not material."  *Phoenix Canada Oil*, 842 F.2d at 1478.  The court must decide "whether the alleged principal has the right to control the manner and method in which work is carried out by the alleged agent and whether the alleged agent can affect the legal relationships of the principal."  *Rotec Indus., Inc. v. Mitsubishi Corp.*, 215 F.3d 1246, 1256 (Fed. Cir. 2000) (quoting *Chemtool, Inc. v. Lubrication Technologies, Inc.*, 148 F.3d 742, 745 (7th Cir.1998)).

In this case, there is substantial evidence that VSL was acting on behalf of Vedanti when it entered into the Max Sound License.  Much of the alter ego evidence discussed above shows that

1   VSL acted on behalf of Vedanti in connection with entering into the Max Sound License.

2   Furthermore, the Max Sound License itself states that ███████████████████████

3   ████████████████████████████████████████████████████████

4   ████████████████████████████████████   Although Max Sound contends that

5   this language reflects the exclusive license granted to VSL by Vedanti, at a minimum it shows that

6   VSL was acting with the Vedanti's permission and authority in connection with entering into the

7   agreement and granting Max Sound the rights under the ODT Patents pursuant to that agreement.

8   Indeed, if VSL did not hold the rights to the ODT Patents and other ODT Technology granted to

9   Max Sound pursuant to the Max Sound License, then it was granting those rights held by Vedanti,

10  clearly with Vedanti's permission (since both entities are controlled by Nash).  Otherwise, VSL

11  would be committing fraud.

12      Given that Nash was the CEO for both VSL and Vedanti (*See, e.g.* Halpern Declaration –

13  Exhibits T and U), there cannot be any question that Vedanti had the right to control VSL, and that

14  VSL was acting with Vedanti's authority when entering into the Max Sound License.  Nor can

15  there be any genuine dispute that VSL could affect Vedanti's legal rights, given that, pursuant to

16  the Max Sound License, VSL was granting to a third party patent rights held by Vedanti.

17      Although Google asserts that Vedanti "is not mentioned in the agreement," it is well-

18  established that "the fact that . . . the principal's name does not appear in the integrated instrument

19  is not sufficient . . . to rebut the inference that a disclosed principal is a party to a contract made by

20  its agent."  1 Restatement, Second, Agency §154, comment b.  *See also See Phoenix Canada*, 842

21  F.2d at 1477 ("Liability may attach to the principal corporation even though it is not a party

22  named in the agreement." (citing Restatement (Second) of Agency §§ 147, 149 (1958)).

23  Moreover, Vedanti is identified generically in the Max Sound License as one of VSL's "affiliated

24  entities."

25      Furthermore, although Google asserts that "Vedanti never conferred patent rights" upon

26  Max Sound, Google MTD at 6, the Vedanti/VSL-Max Sound Confirmatory License Agreement

27  confirming the license granted to Max Sound was signed on behalf of **Vedanti**.  Furthermore, the

28  September 8, 2014, Newell Affidavit states that, "[e]xcept for the license that has been granted to

VSL Communications Ltd. . . . and the sublicense granted to Max Sound Corporation, no other license has been granted by **Vedanti** regarding EP 026 277 for the territory of Germany."  This also confirms that VSL entered into the Max Sound License not only on its own behalf but also **on behalf of Vedanti**, making Vedanti itself effectively a party to the Max Sound License.  Thus, regardless of whether VSL or Vedanti held the rights to the ODT Patents granted to Max Sound in the Max Sound License, those rights were effectively granted to Max Sound when VSL entered into the Max Sound License on behalf of VSL and Vedanti.

**E.      VSL Approved the Filing of a Patent Infringement Lawsuit Against Google for Infringement of the ODT Patents, Including the `339 Patent**

Google asserts that the Max Sound License "expressly pre-approves only two claims, neither for patent infringement."  Google MTD at 2.  This assertion is demonstrable false.  The VSL/Max Sound Confirmatory License Agreement signed by Nash states that, with respect to the patent lawsuits filed by Max Sound in Germany, "[a]ll such actions have been reviewed and approved by Constance Nash and Greg Halpern prior to filing."  Halpern Declaration – Exhibit U.  This confirms that VSL approved of patent litigation against Google.

Although the approved patent litigation against Google referred to in the VSL/Vedanti-Max Sound Confirmatory License Agreement was litigation filed in Germany, in the Max Sound License VSL did not authorize litigation against Google limited to any specific territory.  Instead, Section 1.01(c) contains the following broad language: "VSL grants MAXD the Exclusive Right to Sue pre-approved violators of VSL's intellectual property rights."  As discussed above, VSL's intellectual property rights include the ODT Patents.   Google was a "pre-approved violator of VSL's intellectual property rights."   The German Patent Infringement Litigation confirms this.  There is no language in the Max Sound License limiting the approval of patent infringement against Google to a specific patent or specific territory.  VSL approved patent litigation against Google with respect to any of the ODT Patents.  Max Sound and its counsel determined that patent infringement litigation against Google based upon the `339 and EP 277 ODT Patents was in the best interests of Max Sound and VSL.

Google also asserts that "neither VSL, nor Patent Owner Vedanti, authorized the present suit."  Google MDT at 7.  The only "evidence" Google cites for this assertion is an e-mail sent one

month ago by Vedanti's counsel's to Google's counsel.  This "evidence" is inadmissible and incompetent hearsay from a person obviously without personal knowledge of the facts.  Also inadmissible and incompetent is the e-mail sent by Nash to Google's counsel making similar conclusory assertions.[8]  Max Sound, on the other hand, has submitted the Halpern Declaration and substantial and admissible documentary evidence showing that VSL's objective was to enforce the ODT Patents, including the `339 Patent, against Google, and that VSL approved the filing of the patent litigation against Google in the United States.  *See* discussion, *supra*, ██████████[9]

The Max Sound License ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

██████  The patent infringement lawsuits filed by Max Sound against Google certainly are not the ████████████████  Instead, they are encompassed by the ████████████████

Although the term ████████████████ is not defined in the Max Sound License, the evidence shows that the term refers to patent litigation against Google.  The ████████████ is clearly focused on Google, given that the term "Margin Notes" refers to the Post-It notes left by the Google in-house attorney on the Vedanti materials returned to Vedanti.  Given that the Max Sound License expressly distinguishes between ████████████████████ ██████ these claims should be understood as referring to separate and distinct claims.  The Trade Secret Claim is reflected in the Trade Secret Lawsuit filed by Max Sound and Vedanti in Santa Clara County state court.  *See* Exhibit J to the Declaration of Michael J. Guo In Support of Defendants Motion to Dismiss or, in the Alternative, to Stay.  The ████████████████ is reflected in the patent infringement lawsuits filed by Max Sound in Germany, Delaware and here.

---

[8]  Interestingly, Nash admits in the August 12, 2015 e-mail cited by Google that VSL is "a new company formed to co-sue Google with max sound. . . ."  *See* Google MTD at 3-4.

[9]  Although Google argues that "[r]ecent evidence shows that Plaintiff has known that this threshold issue of standing was in question since August 2014," Google MTD at 1, Google ignores the fact that, although Vedanti appeared as a party in this case in February 2015, it has not alleged in this action that it did not authorize the filing of this action or otherwise challenge Max Sound's standing in this case.  Finally, even though Google was aware that Nash was denying the approval of this lawsuit since at least April 2015, it did not file a motion to dismiss for lack of standing until the end of August.

1   As explained in more detail in the Halpern Declaration, the "Margin Notes" repeatedly refer

2   extensively to patent infringement issues.  *See* Halpern Declaration at ¶3.  As Nash stated to her

3   attorney in Germany at the time the Delaware patent infringement lawsuit was filed, Max Sound

4   "is prepared in the US to sue Google for patents actions, and separately we have a Trade Secrets

5   and Fraud case for California court."  Halpern Declaration at ¶61.

6          Thus, it is evident that Max Sound's patent infringement lawsuits in this Court and in

7   Germany were pre-approved as a "Margin Note Claim."   Given that the VSL/Max Sound

8   Confirmatory License Agreement confirms that the German Patent Infringement Litigation was

9   pre-approved, that pre-approved lawsuit must qualify as a "Margin Notes Claim" under the Max

10  Sound License as a "Margin Note Claim."  It certainly cannot be the "Trade Secrets Claim" also

11  preapproved by VSL. [10]

12         Google cannot contend that the patent litigation in this Court is not authorized under the

13  Max Sound License, even if the term ███████████████ were limited to the German Patent

14  Infringement Litigation.  This is because █████████████████████████████████

15  ████████████████████████████████████████████████████████████

16  ████████████████████████████████████████████████████████████

17  ██████████████████████████████████ Max Sound and its lawyers advising

18  it regarding the enforcement of the ODT Patents against Google, determined that that pursuing the

19  Delaware and California Patent Infringement Litigation was in the best interests of Max Sound

20  and VSL, and provided the highest likelihood of success.  Thus, even if the term ███████████

21  ████████ were limited to the German Patent Infringement Litigation, Max Sound would have

22  authority to bring this lawsuit as an additional claim that Max Sound or its counsel deem best and

23  provides the highest likelihood of success" in accordance with the Max Sound License.

24

25

26  [10]  Although Google asserts that the Max Sound License does not mention the `339 Patent, Google
    MDT at 7, the agreement also does not refer to the EP 277 Patent.  It is undisputed, however, that
27  VSL and Vedanti authorized Max Sound to sue Google for infringement of the EP 277 Patent.
    Thus, an ODT Patent does not have to be mentioned by number in the Max Sound License for
28  Max Sound to have the right to sue Google for infringement of the patent.

1

## V.    CONCLUSION

2      Max Sound has presented substantial "specific facts" showing that it acquired from VSL

3  the exclusive right and approval to sue the Google Defendants for infringement of the `339 Patent,

4  thereby establishing its standing to bring this lawsuit.  Google's motion ignores the Confirmatory

5  License Agreements signed by VSL and Vedanti proving that Vedanti granted VSL an exclusive

6  license to the ODT Technology, including the right to enforce the `339 Patent, and that VSL

7  granted Max Sound those rights under the Max Sound License.  Google's motion further ignores

8  the express language in the Max Sound License wherein VSL confirms that it holds the rights to

9  the ODT Technology through its affiliated entity Vedanti.  Google's motion ignores the evidence

10  that Nash, the CEO of both VSL and Vedanti, entered into the Max Sound License for the specific

11  purpose of enforcing the ODT Patents against Google and others, and reviewed and approved the

12  filing of the lawsuits against Google, including the lawsuit alleging Google's infringement of the

13  `339 Patent.[11]

14

15

16

17

18

19

20

---

21  [11]   Google makes the curious argument that, even if this Court finds that Max Sound has standing
to assert the `339 Patent against Google, the Court should nevertheless stay this action pending
22  some ruling by the arbitrator that Google assumes might relate to the issue of standing.  Google,
however, by squarely presenting to the Court at this time the issue of Max Sound's standing,
23  cannot legitimately ask the Court to stay this action in deference to the arbitration proceeding if it
finds sufficient evidence exists to establish Max Sound's standing and denies Google's third
24  motion to dismiss.  The Court's decision on this issue is the only decision that matters.  The issue
of Max Sound's standing to pursue a claim for patent infringement against Google in federal court
25  will not be decided in the arbitration proceeding.  Neither Google nor Vedanti are formally parties
to the Arbitration Proceeding.  Vedanti does not dispute that VSL entered into the Max Sound
26  License.  Google does not identify any issue which will likely be decided in the arbitration
proceeding that would directly impact the Court's decision regarding standing.  Thus, if the Court
27  denies Google's motion, there is no good cause for the Court to further stay proceedings in this
case pending the outcome of the arbitration proceeding.

28

1   Dated:  October 2, 2015                    **BUETHER JOE & CARPENTER, LLC**

2

3                                             */s/ Eric W. Buether*
                                             Eric W. Buether
4                                             Christopher M. Joe
                                             Brian A. Carpenter
5                                             Mark A. Perantie
                                             **BUETHER JOE & CARPENTER, LLC**
6                                             1700 Pacific Avenue, Suite 4750
                                             Dallas, Texas  75201
7                                             Telephone:     (214) 466-1271

8
                                             Adam J. Levitt
9                                             Jay W. Eisenhofer
                                             Michael T. Manuel
10                                            **GRANT & EISENHOFER, P.A.**
                                             30 North LaSalle Street, Suite 2350
11                                            Chicago, Illinois  60602
                                             Telephone:     (312) 214-0000
12

13                                            Michael A. Kelly
                                             Matthew D. Davis
14                                            Khaldoun A. Baghdadi
                                             **WALKUP, MELODIA, KELLY & SCHOENBERGER**
15                                            650 California Street, 26th Floor
                                             San Francisco, California  94108
16                                            Telephone:     (415) 981-7210

17
                                             **Attorneys for Plaintiff Max Sound Corporation**
18

19

20

21

22

23

24

25

26

27

28