HEIDI L. KEEFE (State Bar No. 178960)
COOLEY LLP
Five Palo Alto Square
3000 El Camino Real
Palo Alto, California  94306-2155
Telephone:  (650) 843-5000
Facsimile:   (650) 849-7400
E-Mail:       hkeefe@cooley.com

STEFANI E. SHANBERG (State Bar No. 206717)
JENNIFER J. SCHMIDT (State Bar No. 295579)
MICHAEL J. GUO (State Bar No. 284917)
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
One Market Plaza
Spear Tower, Suite 3300
San Francisco, California  94105
Telephone:  (415) 947-2000
Facsimile:   (415) 947-2099
E-Mail:       sshanberg@wsgr.com
                   jschmidt@wsgr.com
                   mguo@wsgr.com

Attorneys for Defendants
GOOGLE INC.; YOUTUBE, LLC; and
ON2 TECHNOLOGIES, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| MAX SOUND CORPORATION, | Case No. 5:14-cv-04412-EJD |
| Plaintiff, | **DEFENDANTS GOOGLE INC., YOUTUBE, LLC, AND ON2 TECHNOLOGIES, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(1) OR, IN THE ALTERNATIVE, TO STAY PENDING ARBITRATION** |
| v. | |
| GOOGLE INC., YOUTUBE, LLC, ON2 TECHNOLOGIES, INC., and VEDANTI SYSTEMS LIMITED, | |
| Defendants. | Date:  November 5, 2015 |
| | Time:  9:00 am |
| | Place:  Courtroom 4, 5th Floor |
| | Judge:  Honorable Edward J. Davila |

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION..................................................................................................1

II.  ARGUMENT ....................................................................................................2

    A.  It is Indisputable That No Agreement Confers Plaintiff Rights in the
    '339 Patent..................................................................................................2

        1.  It is Undisputed That the '339 Patent's Chain of Title Ends with
        Vedanti. .......................................................................................2

        2.  There Is No Agreement Conferring Rights in the '339 Patent from
        Vedanti to VSL. .........................................................................3

        3.  There Is No Agreement Conferring Rights in the '339 Patent from
        VSL to Plaintiff. ........................................................................4

        4.  Plaintiff's Inadmissible Parol Evidence Confirms that No Rights in
        the '339 Patent Were Conferred...............................................5

    B.  The VSL Agreement Disallows the Present Case. .................................6

        1.  The VSL Agreement Requires Pre-Approval of Each Claim...................6

        2.  Neither the Pre-Approved Margin Note Claim nor the Pre-Approved
        Trade Secrets Claim Allows for a Patent Infringement Claim. .................7

        3.  Plaintiff's Inadmissible Parol Evidence Confirms that the Present
        Patent Infringement Claim Is Not Pre-Approved. ....................................8

    C.  Plaintiff Fails to Demonstrate that VSL Was Vedanti's Agent...........................10

    D.  Plaintiff's Alter Ego Theory Fails to Confer Rights in the '339
    Patent..................................................................................................13

    E.  Since Plaintiff Lacks Standing, the Court Should Dismiss This Case. ...............15

III.  CONCLUSION ..............................................................................................15

## TABLE OF AUTHORITIES

**Page**

### CASES

*Dole Food Co. v. Patrickson*, 538 U.S. 468 (2003)........................................................................ 13

*Enzo APA & Son, Inc. v. Geapag A.G.*, 134 F.3d 1090 (Fed. Cir. 1998) ................................1, 3, 5

*Interim Healthcare, Inc. v. Spherion Corp.*, 884 A.2d 513 (Del. Super. Ct. 2005) ........................ 5

*McKesson HBOC, Inc. v. N.Y. State Common Ret. Fund, Inc.*, 339 F.3d 1087 (9th
        Cir. 2003)................................................................................................................................ 13

*Mentor H/S, Inc. v. Medical Device Alliance, Inc.*, 240 F.3d 1016 (Fed. Cir. 2001) ...................... 6

*Moreland v. Ad Optimizers, LLC*, No. 13-00216 PSG, 2013 U.S. Dist. LEXIS
        50509 (N.D. Cal. Apr. 8, 2013) ............................................................................................ 13

*NuCal Foods, Inc. v. Quality Egg LLC*, 887 F. Supp. 2d 977 (E.D. Cal. 2012) ........................... 13

*Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153 (Del. 2010) .......................................................... 7

*Quantum Corp. v. Riverbed Tech., Inc.*, No. C 07-04161 WHA, 2008 WL 314490
        (N.D. Cal. Feb. 4, 2008) ................................................................................................3, 4, 11
                                                                                                                                    12, 14

*Reimer v. Corp. de Viajes Mundiales S.A.*, No. 14-cv-00147-EDL, 2014 U.S. Dist.
        LEXIS 154756 (N.D. Cal. Oct. 30, 2014) ............................................................................ 13

*Rembrandt Techs., L.P. v. Harris Corp.*, No. 07C-09-059-JRS, 2008 Del. Super.
        LEXIS 400 (Del. Super. Ct. Oct. 31, 2008), *vacated*, 2009 Del. Super.
        LEXIS 298 (Del. Super. Ct. Aug. 14, 2009)..................................................................... 5, 8

*Speedplay, Inc. v. Bebop, Inc.*, 211 F.3d 1245 (Fed. Cir. 2000) .................................................... 6

*Sprint Nextel Corp. v. iPCS, Inc.*, 2008 Del. Ch. LEXIS 90 (Del. Ch. July 14, 2008) ................. 11

*Stinnes Interoil, Inc. v. Petrokey Corp.*, 1983 Del. Super. LEXIS 829 (Del. Super.
        Ct. 1983) ................................................................................................................................ 12

*Vivendi SA v. T-Mobile USA Inc.*, 586 F.3d 689 (9th Cir. 2009) ................................................. 13

*Walker Digital, LLC v. Expedia, Inc.*, 950 F. Supp. 2d 729, 737 (D. Del. 2013) ......................... 7

### STATUTES

35 U.S.C. § 261 .......................................................................................................................1, 3, 5

### MISCELLANEOUS

26 Corbin on Contracts § 573 (1960) ............................................................................................ 5

Restatement of Conflict of Laws 2d § 299..................................................................................... 14

Restatement of Conflict of Laws 2d § 302.................................................................. 14

Restatement of Agency 3d § 7.03 d(3) .................................................................. 11

**TABLE OF ABBREVIATIONS**

| | |
|---|---|
| Plaintiff Max Sound Corporation | Max Sound, MAXD, or Plaintiff |
| Patent Owner Vedanti Systems Limited | Vedanti or Patent Owner |
| Third-Party VSL Communications | VSL |
| Defendant Google Inc. | Google |
| Defendant YouTube, LLC | YouTube |
| Defendant On2 Technologies, Inc. | On2 |
| Defendants Google, YouTube, and On2, collectively | Defendants |
| Plaintiff and Defendants, collectively | Parties |
| U.S. Patent No. 7,974,339 | '339 patent or asserted patent |
| EP 2,026,277 B1 | '277 patent |
| Plaintiff Max Sound Corporation's Complaint for Patent Infringement, Dkt. No. 1 | Complaint |
| Plaintiff Max Sound Corporation's First Amended Complaint for Patent Infringement, Dkt. No. 23 | Amended Complaint |
| Defendants' Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(1) or, in the Alternative, to Stay Pending Arbitration, Dkt. No. 100 | Br. |
| Declaration of Michael J. Guo in Support of Defendants' Motion to Dismiss or, in the Alternative, to Stay, Dkt. No. 101 | Guo Decl. |
| Plaintiff Max Sound Corporation's Opposition to Defendants' Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(1) or, in the Alternative, to Stay Pending Arbitration, Dkt. No. 116 | Opp. |
| Declaration of Eric W. Buether in Support of Plaintiff's Response to Defendants' Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(1) or, in the Alternative, to Stay Pending Arbitration, Dkt. No. 117 | Buether Decl. |

| | |
|---|---|
| Declaration of Greg Halpern in Support of Plaintiff's Response to Defendants' Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(1) or, in the Alternative, to Stay Pending Arbitration, Dkt. No. 118 | Halpern Decl. |
| Declaration of Bernhard Arnold, Dkt. No. 121 | Arnold Decl. |
| Declaration of Nina Nelson in Support of Plaintiff's Response to Defendants' Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(1) or, in the Alternative, to Stay Pending Arbitration, Dkt. No. 123 | Nelson Decl. |
| Max Sound Corporation and VSL Communications Licensing and Representation Agreement (Optimized Data Transmission System & Method), Halpern Decl., Ex. S | VSL Agreement |
| Reply in Support of Motion for Leave to Withdraw as Counsel of Record for Vedanti Systems Limited, Dkt. No. 97 | Withdrawal Br. |
| Vedanti's Notice of Joinder to Defendants' Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(1) or, in the Alternative, to Stay Pending Arbitration, Dkt. No. 127 | Joinder |
| Inventor Constance Nash | Nash |
| Cornerstone Group, Ltd. | Cornerstone |

# I.    INTRODUCTION

By joining the present motion, Vedanti again confirms that Plaintiff lacks standing to sue. And even Plaintiff admits that Vedanti is the patent owner and that the sole operative agreement, the VSL Agreement, is with VSL.  The VSL Agreement unambiguously states that it is between VSL and Plaintiff—not Patent Owner Vedanti—and does not grant any rights in the '339 patent, much less the right to sue for infringement.  Unable to point to an express grant of any right in the '339 patent from Vedanti to VSL or from VSL to Plaintiff, Plaintiff attempts to conjure a grant via multiple alternative theories and inadmissible parol evidence.  None of Plaintiff's arguments change the underlying fact that VSL has no rights in the '339 patent.  Without a written agreement conferring rights in the '339 patent from Vedanti to VSL, it is impossible as a matter of law for any of Plaintiff's theories to provide it with standing.  *See* 35 U.S.C. § 261; *Enzo APA & Son, Inc. v. Geapag A.G.*, 134 F.3d 1090, 1093 (Fed. Cir. 1998) ("While we acknowledge that a license may be written, verbal, or implied, if the license is to be considered a virtual assignment to assert standing, it *must be in writing*.") (emphasis in original).

As for Plaintiff's parol evidence, even if it were admissible, it does not show the requisite grant of rights in the '339 patent to Plaintiff.  If anything, the parol evidence shows that Plaintiff realized that it lacked standing for the present case, attempted unsuccessfully to cure the defect, and filed a claim for patent infringement anyway.  Further, Plaintiff's mere belief that Vedanti and VSL are one and the same hardly proves agency or alter ego.

The Court and Defendants should not be required to expend resources on a case brought by a party with no right to do so.  Plaintiff's apparent dissatisfaction with the rights that it did gain via the VSL Agreement, *i.e.*, rights to VSL's—not Vedanti's—technology and the right to sue on margin note and trade secret claims—not patent infringement claims—does not allow Plaintiff to rewrite the VSL Agreement to insert the rights it wishes it had.  Any alleged deficiencies with the VSL Agreement is a dispute between the parties to that agreement—VSL and Plaintiff—not Defendants and must be resolved prior to Plaintiff pursuing a patent infringement claim.

## II.  ARGUMENT

### A.  It Is Indisputable that No Agreement Confers Plaintiff Rights in the '339 Patent.

There is no dispute that the VSL Agreement is the sole operative agreement.  *See* Opp. at 1.  As a matter of law, the VSL Agreement cannot confer standing on Plaintiff to assert the '339 patent because, not only does the VSL Agreement fail to mention or confer any rights in the '339 patent to Plaintiff, but also VSL is not in the chain of title for the '339 patent and, therefore, has no authority to grant rights in the '339 patent.  None of Plaintiff's arguments change this fact—requiring dismissal because Plaintiff lacks standing.[1]

#### 1.  It Is Undisputed that the '339 Patent's Chain of Title Ends with Vedanti.

The '339 patent's clear chain of title starts with the named inventors and ends with Vedanti, which Plaintiff admits holds title to the '339 patent.  *See* Br. at 1-2; Opp. at 1; Amended Complaint at ¶ 14.  Plaintiff nevertheless attempts to rely upon the VSL Agreement as the source of its alleged rights to extend the chain of title.  *See* Opp. at 1.  But Vedanti is not a party to the VSL Agreement, and the VSL Agreement does not even mention the '339 patent.  *See* Br. at 6-7; *see also generally* Halpern Decl., Ex. S (VSL Agreement).  Aside from its misplaced reliance on the VSL Agreement, Plaintiff fails to produce any written agreement that would confer any rights in the '339 patent, whether by assignment or license.  *See* Opp. at 1.  As such, the '339 patent's chain of title ends with Vedanti and does not extend to Plaintiff.

---

[1] Contrary to Plaintiff's allegation of delay on the part of Defendants, *see* Opp. at 23 n.9, it has taken Defendants months to get to the bottom of this issue because Plaintiff has engaged in herculean efforts to hide its lack of standing from Defendants.  Although Defendants have long suspected that Plaintiff lacked standing, it was not until immediately before Defendants filed the present motion that Defendants received the necessary documents from Vedanti, which apparently declined to come forward earlier due to intimidation by Plaintiff.  *See* Guo Decl., Ex. C (E-Mail from C. Nash (Aug. 12, 2015)) at 2 ("I was terrified of Greg after he came to my home November 5 . . . ."); Guo Decl., Ex. D (E-Mail from C. Nash (Aug. 12, 2015)) at 1 ("The harassment is just getting started isn't it?  Greg said that 'people just want to get rid of him, settle, pay him off.'"); *see generally* Withdrawal Br.  And Plaintiff itself waited to produce much of the parol evidence upon which it relies until the same day as its opposition was due despite earlier confirmation that its "production is complete," at which time it continued to falsely deny that there existed a dispute as to its standing:  "Vedanti has not challenged Max Sound's standing in this case."  *See* Guo Decl., Ex. B (E-Mail from E. Buether to S. Shanberg (Aug. 11, 2015)); Guo Decl., Ex. I (E-Mail from A. Macias to M. Guo (Aug. 12, 2015)) at 5.

1    **2.    There Is No Agreement Conferring Rights in the '339 Patent from
2          Vedanti to VSL.**

3          Even if the VSL Agreement did attempt to transfer rights in the '339 patent—which it does

4    not—it could not do so because VSL does not have any rights in the '339 patent to transfer.  There

5    exists an obvious void in the '339 patent's chain of title between Patent Owner Vedanti and VSL.

6    Presumably recognizing this hole in its claim to rights in the '339 patent, Plaintiff repeatedly

7    refers to an imagined license from Vedanti to VSL but offers no support and incorrectly states that

8    the existence of such a license is an undisputed fact.  *See* Opp. at 1, 17.  To be clear, there is no

9    evidence that any such license exists, and both Defendants and Vedanti dispute its existence.  *See*

10   Opp. at 1, 17 (claiming that VSL had "license from Vedanti" without citing evidence); Br. at 6-7

11   (disputing existence of any license agreement from Vedanti); Withdrawal Br. at 4 (same); Joinder

12   at 1-2 (stating "no such paper trail exists with respect to the '339 patent").  Neither Plaintiff nor

13   Vedanti has produced a document that transfers rights in the '339 patent from Vedanti to VSL.

14   *See* Opp. at 6, 15.  Instead, Plaintiff merely offers the VSL Agreement as circumstantial proof of

15   such a grant—but the VSL Agreement itself transfers no such rights from Vedanti to VSL since it

16   is between only VSL and Plaintiff.  *See id.* (arguing that "Vedanti gave VSL an exclusive and non-

17   restricted license to its ODT Patents and ODT Technology, including the '339 patent" and that

18   "VSL represented that it owned rights relating to the ['339 patent]").

19         Plaintiff's belief that there was a transfer of rights based on its misinterpretation of the

20   VSL Agreement is insufficient to confer standing because Plaintiff has the burden to show a

21   ***written*** assignment or license conferring rights in the '339 patent from Vedanti to VSL.  *See* 35

22   U.S.C. § 261; *Enzo*, 134 F.3d at 1093; *Quantum Corp. v. Riverbed Tech., Inc.*, No. C 07-04161

23   WHA, 2008 WL 314490, at *1-4 (N.D. Cal. Feb. 4, 2008) (dismissing case for lack of standing

24   where parent corporation purported to have rights to subsidiary's patent without tangible

25   evidence).[2]  Since there is no written agreement between Vedanti and VSL that transfers rights in

26   _____

27   [2] Plaintiff's attempt at distinguishing *Quantum* makes little sense; here, just as in *Quantum*, no
     written agreement exists that would confer rights to the '339 patent from subsidiary Vedanti to
28   parent VSL.  *See* Opp. at 17 n.7.

the '339 patent, Plaintiff does not have standing.

> **3.** **There Is No Agreement Conferring Rights in the '339 Patent from VSL to Plaintiff.**

Even if there were a transfer of rights from Vedanti to VSL—which there is not—there exists a void in the chain of title between VSL and Plaintiff.  Plaintiff attempts to divine rights to the '339 patent by pointing to Section 1.01(a) of the VSL Agreement in which "VSL hereby grants MAXD the Worldwide License to ODT Technology" and Section 1.03 of the VSL Agreement in which "VSL is granting the Worldwide License to MAXD to VSL's ODT Technology."  *See* Opp. at 6; Halpern Decl., Ex. S at 1, 3.  But neither Section 1.01(a) nor Section 1.03 mentions Vedanti's '339 patent, a fact that Vedanti has repeatedly maintained.  *See id.*; Withdrawal Br. at 4 (stating that the VSL Agreement "does not purport to grant any rights to sue on [Vedanti's] U.S. patent."); Guo Decl, Ex. C (E-mail from C. Nash to M. Guo (Aug. 12, 2015)) at 2; Guo Decl., Ex. I (E-mail from M. Rips to S. Shanberg (Aug. 12, 2015)) at 1; Joinder at 2 ("VSL had no such rights to convey, so the agreement could not have conveyed them.").  Rather, these sections unambiguously refer only to "*VSL's* ODT Technology."[3]  *See* Halpern Decl., Ex. S at 1, 3 (emphasis added).

The rights that VSL granted to its ODT Technology do not encompass rights in Vedanti's '339 patent because, as a matter of law, a parent corporation cannot assign rights that it does not own, even if those are held by an affiliate or subsidiary.  *See Quantum*, 2008 WL 314490, at *1 (dismissing case for lack of standing where parent corporation had assigned patent portfolio including subsidiary's asserted patent to plaintiff but subsidiary had failed to assign rights in asserted patent to parent).  Furthermore, that the '339 patent is not included in "VSL's ODT Technology" is underscored by the fact that VSL rejected Plaintiff's efforts to secure a letter of clarification pertaining to VSL's ownership of Vedanti and Vedanti's patent portfolio.  *See* Guo Decl., Ex. U (Letter of Clarification); Guo Decl., Ex. V (Letter of Clarification); Halpern Decl. at

---

[3] Plaintiff incorrectly asserts that "[a] list of the ODT Patents is set forth in Exhibit A to the Buether Declaration."  *See* Opp. at 3 n.2; Buether Decl., Ex. A (Transcript of Proceedings).  Even now, there is no such list.  In fact, Plaintiff apparently received "Patent Documents . . . representing the VSL Technology Assets by VSL" within ten days of the closing date of the VSL Agreement, but has not produced such documents, leading to the reasonable adverse inference that they, too, do not list the '339 patent.  *See* Halpern Decl., Ex. S at 9.

DEFENDANTS' REPLY ISO
MOT. TO DISMISS PURSUANT TO
FED. R. CIV. P. 12(b)(1) OR TO STAY
Case No. 5:14-cv-04412-EJD

- 4 -

¶¶ 49-50; Joinder at 1-2 ("MaxSound prepared drafts of instruments that would have conveyed rights to pursue claims on the '339 patent.  However, those documents were never signed . . . because VSL rejected the proposed claims.").

### 4.      Plaintiff's Inadmissible Parol Evidence Confirms that No Rights in the '339 Patent Were Conferred.[4]

Plaintiff attempts to rely on so-called "agreements" involving the '277 patent as supposed proof of a transfer of rights in the '339 patent.[5]  *See* Opp. at 10.  But, as with the VSL Agreement, the '277 patent agreements similarly fail to demonstrate a grant of rights in the '339 patent since they do not mention the '339 patent.  *See* Arnold Decl., Ex. 1 ('277 Patent License Agreement from Vedanti to VSL); Arnold Decl., Ex. 2 ('277 Patent License Agreement from VSL to Plaintiff).  Put simply, the alleged agreements pertain only to the '277 patent and, therefore, can have no bearing on Plaintiff's lack of standing with regard to the '339 patent.  *See* Opp. at 16 (admitting that "the Confirmatory License Agreements are directed at the EP 277 Patent"); Joinder at 2 ("MaxSound's seeming argument that the E.U. patent license evidences a right for MaxSound to sue on the '339 patent makes no sense.").  Further, these alleged agreements to which Plaintiff curiously points do not actually grant rights.  Instead, they seek only to allegedly "confirm" a prior grant of rights, and neither Plaintiff nor Vedanti has produced a written agreement showing any actual grant of rights in the '277 patent, much less in the '339 patent.  *See* 35 U.S.C. § 261; *Enzo*,

---

[4] The VSL Agreement is governed by Delaware law.  *See* Halpern Decl., Ex. S (VSL Agreement) at 10.  Under Delaware law, the Court begins its construction of the contract by determining whether the contract clearly and accurately reflects the agreement of the parties.  *Rembrandt Techs., L.P. v. Harris Corp.*, No. 07C-09-059-JRS, 2008 Del. Super. LEXIS 400, at *16 (Del. Super. Ct. Oct. 31, 2008) (citing *Interim Healthcare, Inc. v. Spherion Corp.*, 884 A.2d 513, 546 (Del. Super. Ct. 2005)), *vacated*, 2009 Del. Super. LEXIS 298 (Del. Super. Ct. Aug. 14, 2009) (citing 26 Corbin on Contracts § 573 (1960)).  If the Court determines that the contract is a clear and accurate reflection of the parties' intended agreement, extrinsic evidence is not considered and the interpretation is limited to the four corners of the contract.  *Rembrandt Techs.*, 2008 Del. Super. LEXIS 400, at *16-18 (holding that contract was not ambiguous from perspective of reasonable person's interpretation and disallowing extrinsic evidence).

[5] Plaintiff alleges that the agreements are sufficient to confer standing in actions it has filed in Germany against Defendants and their affiliates claiming infringement of the '277 patent.  *See* Opp. at 10; Guo Decl., Ex. M (Statement of Claim).  Contrary to Plaintiff's statement that it is "undisputed" that VSL and Vedanti authorized Plaintiff to sue Google for infringement of the '277 patent, the validity of the agreements and whether or not they confer any rights in the '277 patent are disputed issues in the German actions.  *See* Opp. at 24 n.10.

134 F.3d at 1093; Arnold Decl., Ex. 1; Arnold Decl., Ex. 2.  As such, Plaintiff's reliance on the "confirmatory license agreements" fails to resolve its lack of standing since they do not grant rights in any patent—neither the '277 patent nor the '339 patent.

Moreover, setting aside that these "confirmatory license agreements" do not confer standing in the German actions to which Plaintiff refers, the fact that Plaintiff admits that they are necessary for standing in the German actions demonstrates that Plaintiff understands that the VSL Agreement alone does not confer the requisite rights in any of Vedanti's patents.  Otherwise, Plaintiff would have relied solely upon the VSL Agreement for its standing arguments in the German actions.  Here, no corresponding agreements for the '339 patent that would allegedly grant or even "confirm" rights from Vedanti to VSL or from VSL to Plaintiff exist.  *See Mentor H/S, Inc. v. Medical Device Alliance, Inc.*, 240 F.3d 1016, 1017 (Fed. Cir. 2001) ("The party asserting that it has all substantial rights in the patent 'must produce . . . written document[s] documenting the transfer of proprietary rights.") (citing *Speedplay, Inc. v. Bebop, Inc.*, 211 F.3d 1245, 1250 (Fed. Cir. 2000)); Guo Decl., Ex. I (E-mail from A. Macias to M. Guo (Aug. 12, 2015)) at 5; Joinder at 1 ("By contrast, no such paper trail exists with respect to the '339 patent.").  Indeed, Plaintiff has made efforts to obtain them, but as Vedanti's counsel explained, Vedanti refused to sign such agreements.  *See* Guo Decl., Ex. I (E-mail from M. Rips to S. Shanberg (Aug. 12, 2015)) at 1; Joinder at 1-2.

Finally, Plaintiff's argument that the VSL Agreement "would be rendered illusory" if it did not confer rights in the '339 patent is unavailing since the VSL Agreement does appear to confer *other* rights from VSL to Plaintiff (such as for VSL's—not Vedanti's—technology and the right to sue on margin note and trade secret—not patent infringement—claims).  *See* Opp. at 16; *see also generally* Halpern Decl., Ex. S.  Plaintiff's apparent dissatisfaction with the agreement it negotiated with VSL does not allow it to retroactively rewrite the agreement to include rights to the '339 patent.

**B.     The VSL Agreement Disallows the Present Case.**

**1.     The VSL Agreement Requires Pre-Approval of Each Claim.**

Because the VSL Agreement does not confer any patent rights, it, of course, also does not

authorize patent infringement litigation.  The plain terms of the VSL Agreement—which do not mention patent infringement litigation—demonstrate that the the VSL Agreement did not authorize the present patent infringement lawsuit.  *See, e.g.*, *Walker Digital, LLC v. Expedia, Inc.*, 950 F. Supp. 2d 729, 737 (D. Del. 2013) (rejecting equivocal parol evidence where language of contract was unambiguous).

Moreover, other than two expressly enumerated claims, the VSL Agreement requires that each additional claim be pre-approved by VSL prior to filing.  *See* Halpern Decl., Ex. S at 3, Section 1.01(l)(i) (allowing Plaintiff to pursue only "VSL pre-approved actions" for which "VSL has pre-approved specific suits against specific parties").  The present patent infringement lawsuit is neither pre-approved nor approved.  *See* Amended Complaint at 9-12.  The VSL Agreement unambiguously lacks any mention of pre-approved patent infringement claims, and there exists no agreement providing subsequent approval of this patent infringement suit.[6]  *See* Opp. at 3; *see also generally* Halpern Decl., Ex. S; Joinder at 2 ("MaxSound's argument that the agreement between MaxSound and VSL 'pre-approved' claims on the '339 patent is not true.  Yet the Court need not decide the merits of that argument. . . .  VSL had no such rights to convey, so the agreement could not have conveyed them.").  Therefore, Plaintiff has no rights in the '339 patent and has no authorization under the VSL Agreement to bring the present patent infringement lawsuit.  Plaintiff's arguments to the contrary are without merit.

### 2.    Neither the Pre-Approved Margin Note Claim nor the Pre-Approved Trade Secrets Claim Allows for a Patent Infringement Claim.

As mentioned above, the VSL Agreement expressly confers a right to sue from VSL to Plaintiff for only two pre-approved claims:  (1) a "Margin Note Claim" and (2) "an additional Claim . . . against all receivers of VSL Trade Secrets."  *See* Halpern Decl., Ex. S at 1, Section 1.01(c) ("VSL has pre-approved the Margin Note Claim as the first such matter that [Plaintiff] will

---

[6] For this reason, Plaintiff's reliance on Nash's alleged intent to sue "Google, Qualcomm, Apple, Amazon, and Facebook" for patent infringement is meritless.  *See Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1158-59 (Del. 2010) (holding where contract is unambiguous, "[t]he face of [the] contract manifests the parties' intent").  The VSL Agreement unambiguously lacks any mention of pre-approved patent infringement claims against any of those companies.  *See* Opp. at 3; *see also generally* Halpern Decl., Ex. S.

1  bring forward . . . .  VSL has pre-approved an additional Claim on the same basis against all

2  receivers of VSL Trade Secrets.").  Plaintiff's entire argument that it was authorized to file the

3  present patent infringement claim depends upon it being the pre-approved margin note claim.  *See*

4  Opp. at 14.  But, as its name suggests, the margin note claim simply does not encompass any

5  patent infringement claim.  *See* Halpern Decl., Ex. S at 1, Section 1.01(c) (failing to mention

6  patents in connection with margin note claim).  Rather, as alleged in Plaintiff's state court

7  complaint, the margin note claim relates solely to physical Post-It notes that had been

8  inadvertently left by Defendants on the margin of documents returned to Vedanti, *i.e.*, "margin

9  notes," and is a separate cause of action, unrelated to patent litigation, that has already been filed

10  and voluntarily dismissed by Plaintiff.  *See* Guo Decl., Ex. J (Complaint for Damages and

11  Injunctive Relief) at ¶¶ 82, 84, 86 (alleging misappropriation of trade secrets, breach of contract,

12  unfair competition, conversion, fraud, and declaratory relief relating to allegations that Google left

13  Post-It notes, *i.e.*, margin notes, on VSL documents returned pursuant to non-disclosure

14  agreement); Guo Decl., Ex. K (Request for Dismissal).

15              **3.    Plaintiff's Inadmissible Parol Evidence Confirms that the Present
                          Patent Infringement Claim Is Not Pre-Approved.**

16

17              Even if it were proper to consider Plaintiff's inadmissible parol evidence—which it is

18  not—the parol evidence demonstrates that the present patent infringement claim was not

19  authorized.  *See Rembrandt Techs.*, 2008 Del. Super. LEXIS 400, at *16-18.  As an initial matter,

20  Vedanti's unwillingness to participate in the present case stands in direct contrast to VSL's

21  willingness to participate as co-plaintiff in the dismissed margin note case.  *See* Guo Decl., Ex P

22  (Complaint for Damages and Injunctive Relief).  And Vedanti has consistently maintained since

23  the filing of the original Delaware patent infringement complaint that it never authorized any suit

24  on the present claim.  *See* Guo Decl., Ex. I (E-mail from M. Rips to S. Shanberg (Aug. 12, 2015))

25  at 1 ("Vedanti consistently and repeatedly has maintained, and continues to maintain, that neither

26  it nor VSL has granted any rights to Max Sound to sue on Vedanti's U.S. patent. . . .  When Max

27  Sound filed the first U.S. patent action, in Delaware, it was without authorization.  Vedanti

28  objected, and a Vedanti representative personally went to the courthouse in Delaware to so advise

the court.  Max Sound withdrew that suit, but then refiled in the Northern District of California.

When Vedanti learned of the refiled suit, it again objected.").  Vedanti's failure to participate in

the lawsuit and its purported lack of information as to why it was named as a party to the suit

demonstrate that Vedanti did not authorize the present suit.[7]  *See* Dkt. No. 53 (Joint Case

Management Statement), 58 (Motion for More Definite Statement), 89 (Proposed Agreed

Protective Order); Guo Decl., Ex. R (E-mail from M. Rips to J. Schmidt (July 21, 2015)).

Vedanti's counsel also has confirmed that the VSL Agreement's "term 'margin notes'

specifically refers to the post-it notes that accompanied a return of documents by Google pursuant

to an NDA" and that "the concept of the Margin Notes Claim referred to the claims that were filed

in Santa Clara County Superior Court . . . and the concomitant trade secret, UCL and fraud

claims."  *See* Ex. I (E-mail from M. Rips to S. Shanberg (Aug. 12, 2015)) at 1; Withdrawal Br. at

4 ("That agreement permitted Max Sound (i) to sue Google and its subsidiaries for breach of a

non-disclosure agreement, misappropriation of trade secrets and related state law claims

(characterized therein as the 'Margin Notes Claims') and (2) to sue subsequent recipients of such

trade secrets for misappropriation of trade secrets (characterized therein as the 'Trade Secret

Claims'"); Ex. C (E-mail from C. Nash to M. Guo (Aug. 12, 2015)) at 2.  In fact, despite its

present attempt to shoehorn a patent infringement claim into the margin note claim, even Plaintiff

has acknowledged that the dismissed "margin/Post-It notes" claim and the trade secrets claim are

separate from the patent claim and that it had to dismiss the margin note claim because it lacked

merit.  *See* Guo Decl., Ex. L (Application for Preliminary Injunction) at 10:15-24 ("Given the

potential ethical issues raised, ***MaxD had no choice but to amend the Complaints to remove the***

***allegations regarding the margin/Post-It notes*** and to dismiss the trade secret case in its entirety,

on the grounds that it was time-barred.") (emphasis added); Halpern Decl. at ¶¶64-66.

Plaintiff's behavior in relation to the German litigation further indicates that Plaintiff

recognized that the pre-approved claims of the VSL Agreement were limited in scope and did not

cover patent suits.  As discussed above, in advance of filing the German actions relating to the

---

[7] In fact, despite being a necessary party, Vedanti is still not properly a party to the present lawsuit.  *See* Dkt. No. 58.

1  '277 patent, Vedanti and VSL executed an agreement to allegedly "confirm" a right to sue for

2  infringement of the '277 patent.  *See* Arnold Decl., Ex. 1 ('277 Patent License Agreement from

3  Vedanti to VSL).  And VSL and Plaintiff similarly executed an agreement to allegedly "confirm"

4  a right to sue for infringement of the '277 patent.  *See* Arnold Decl., Ex. 2 ('277 Patent License

5  Agreement from VSL to Plaintiff).  In contrast, there exists nothing of the sort relating to the right

6  to sue for infringement of the '339 patent between Vedanti and VSL or between VSL and

7  Plaintiff.[8]  *See supra* Section II.A.

8       It further appears that Plaintiff's own counsel knew that the VSL Agreement did not

9  authorize a patent infringement suit.  *See* Withdrawal Br. at 5 ("Max Sound's current counsel,

10  speaking to a VSL Communications Ltd. representative, acknowledged before numerous

11  witnesses that the 'marching orders' to the lawyers were that there would be no patent

12  infringement lawsuit."); Guo Decl., Ex. I (E-mail from M. Rips to S. Shanberg (Aug. 12, 2015)) at

13  1 ("In connection with the making of the agreement between VSL and Max Sound, Max Sound

14  sought rights to sue on Vedanti's U.S. patent.  Those requests were rejected.  On about June 12,

15  2014, after the VSL-Max Sound agreement was made, Chris Joe speaking to a VSL representative

16  acknowledged, before numerous witnesses, that the 'marching orders' to the lawyers were that

17  there would be no patent infringement lawsuit.").

18       Thus, Plaintiff seeks to rewrite the VSL Agreement to include an additional right to sue for

19  patent infringement that it failed to obtain.  *See* Opp. at 9; Halpern Decl. at ¶¶ 63-66.  As with the

20  failure to negotiate an agreement that confers rights to the '339 patent, Plaintiff's failure to obtain

21  authorization to sue for infringement of the '339 patent is an issue that it needs to resolve with

22  VSL—not with Defendants—before it has standing to bring the present action.

23       **C.      Plaintiff Fails to Demonstrate that VSL Was Vedanti's Agent.**

24       Left with nothing to argue based upon the unambiguous terms of the operative VSL

25  _____

26  [8] Contrary to Plaintiff's assertion, Defendants never argued that "the term 'Margin Note Claim'
   [was] limited to the German Patent Infringement Litigation."  *See* Opp. at 24.  In fact, the margin

27  note claim does not authorize the German actions either since the margin note claim is the case
   that was already filed and dismissed in Santa Clara County Superior Court—and it has nothing to

28  do with patent litigation.

Agreement, Plaintiff concocts an agency relationship between Vedanti and VSL, but "nothing in the record shows that [parent] was actually authorized to act as an agent for [subsidiary], with respect to the patent in suit or any other asset." *See Quantum*, 2008 WL 314490, at *2. Indeed, the record demonstrates the opposite. *See* Guo Decl., Ex. I (E-mail from M. Rips to S. Shanberg (Aug. 12, 2015 15:52 PT)) at 1 ("As for Max Sound's claim that VSL was acting as Vedanti's agent, there was no such conduct or intent."); Opp. at 20. And even if Plaintiff were able to prove an agency relationship—which it cannot—that showing would still fail to confer standing since Plaintiff cannot provide a written agreement between Vedanti and VSL and between VSL and Plaintiff that confers rights in the '339 patent. *See supra* Sections II.A and II.B.

To support its agency theory, Plaintiff relies upon Nash's position as CEO of both VSL and Vedanti, but common management is insufficient, as a matter of law, to demonstrate an agency relationship. *See, e.g.*, *Sprint Nextel Corp. v. iPCS, Inc.*, 2008 Del. Ch. LEXIS 90, at *48 (Del. Ch. July 14, 2008) (finding that subsidiaries were not agents of their parent despite sharing same management and refusing to impute actions of parent to subsidiary); Restatement of Agency 3d § 7.03 d(3) ("The fact that a corporation or other entity owns a majority of the voting equity in another entity does not create a relationship of agency between them . . . . Likewise, common ownership of multiple entities does not create relationships of agency among them. An entity becomes the agent of another entity . . . only when they are linked by the elements of an agency relationship . . . .").

Additionally, Plaintiff fails to prove that Vedanti authorized VSL to act on its behalf. In *Quantum*, the court found no agency relationship existed where a parent corporation had purported to act on behalf of its subsidiary in assigning the subsidiary's patent-in-suit to the plaintiff, but nothing in the record showed that the parent corporation was actually authorized to act as the subsidiary's agent. *See Quantum*, 2008 WL 314490, at *2-4 ("[T]he mere fact that [subsidiary] was [plaintiff]'s wholly-owned subsidiary does not automatically mean that [parent] and [subsidiary] had an agency relationship. . . . The decisive fact is that no signature for [subsidiary] was on the . . . agreement. Even if the signor for [parent] was also an officer of [subsidiary] and could have also signed for [subsidiary], there was no such signature block on the signature page.

Only [parent] purported to sign."); *see also Stinnes Interoil, Inc. v. Petrokey Corp.*, 1983 Del. Super. LEXIS 829, at *6 (Del. Super. Ct. 1983) (finding subsidiary was not agent of parent by virtue of being subsidiary).

Just as in *Quantum*, Plaintiff's reliance on the representation in the VSL Agreement that "***VSL*** legally owns and controls all of the Worldwide rights, title and interest to all fields of use of ***its*** Trade Secrets, Patents, and all other know-how, through its affiliated entities and owners" is unavailing because it fails to demonstrate the requisite authorization ***by Vedanti*** for VSL to act on its behalf, particularly since Vedanti did not sign the VSL Agreement.[9] *See* Halpern Decl., Ex. S at 1, 11 (emphasis added). Only VSL signed. *See id.* Without ***Vedanti's*** written authorization, VSL could not assign rights in Vedanti's patent to Plaintiff, even as Vedanti's parent.[10] *See Quantum*, 2008 WL 314490, at *2-4. And even if VSL lacked intellectual property rights that it could assign, Plaintiff might at best have a claim against VSL for breach of contract—but that does not confer standing to sue Defendants for infringement of the '339 patent.

Likewise, Plaintiff's contention that a '277 patent "confirmatory license agreement"— which has nothing to do with the '339 patent—between VSL and Plaintiff shows an agency relationship between Vedanti and VSL is mistaken. *See* Opp. at 21-22; Arnold Decl., Ex. 2. Nothing in the agreement indicates that VSL was acting on Vedanti's behalf. *See id.* And Vedanti has adamantly denied that VSL ever acted on its behalf. *See, e.g.*, Ex. I (E-mail from M. Rips to S. Shanberg (Aug. 12, 2015)) ("As for Max Sound's claim that VSL was acting as Vedanti's agent, there was no such conduct or intent.").

Accordingly, Plaintiff cannot show that VSL acted as Vedanti's agent. Moreover, its agency theory is irrelevant because there still exists no written agreement conferring rights in the '339 patent.

---

[9] In fact, this clause appears to suggest the reverse relationship, but even if Vedanti were an agent of VSL, Vedanti still did not sign the VSL Agreement, despite VSL's supposed control over Vedanti. *See* Opp. at 21.

[10] It appears that Vedanti may not even be a subsidiary of VSL, as Plaintiff alleges, since "it is Vedanti's position that its shareholders are other than VSL." *See* Joinder at 2.

**D.     Plaintiff's Alter Ego Theory Fails to Confer Rights in the '339 Patent.**

Plaintiff's alternate alter ego theory, which seeks to pierce the corporate veil, also fails to demonstrate that Plaintiff has standing.  As with Plaintiff's agency theory, whether VSL is an alter ego of Vedanti is irrelevant to the question of standing because, even if Plaintiff were able to meet its burden of demonstrating alter ego, that showing would still fail to confer standing to Plaintiff due to lack of a written agreement between Vedanti and VSL or between VSL and Plaintiff (or between Vedanti and Plaintiff) that confers any right in the '339 patent, much less the right to sue for infringement.  *See supra* Sections II.A and II.B.

Plaintiff's sole purpose in contending that Vedanti and VSL are alter egos of one another is to obtain rights to the '339 patent to enable it to sue Defendants for patent infringement.  *See generally* Opp.  But that is not the deal that Plaintiff negotiated and obtained.  *See supra* Sections II.A and II.B.  Plaintiff's dissatisfaction that it received rights only to VSL's technology and to the margin note and trade secret claims does not allow Plaintiff to rewrite the VSL Agreement to obtain rights to which it is not entitled by resorting to the extraordinary remedy of piercing the corporate veil.  *See, e.g.*, *Reimer v. Corp. de Viajes Mundiales S.A.*, No. 14-cv-00147-EDL, 2014 U.S. Dist. LEXIS 154756, at *12 (N.D. Cal. Oct. 30, 2014) (declining to find alter ego in part because "[c]ourts will pierce the corporate veil only in ***exceptional*** circumstances") (emphasis added) (quoting *NuCal Foods, Inc. v. Quality Egg LLC*, 887 F. Supp. 2d 977, 993 (E.D. Cal. 2012)); *Moreland v. Ad Optimizers, LLC*, No. 13-00216 PSG, 2013 U.S. Dist. LEXIS 50509, at *6-9, *7 n.30 (N.D. Cal. Apr. 8, 2013) (declining to pierce corporate veil since doing so is "the ***rare exception***") (emphasis added) (quoting *Dole Food Co. v. Patrickson*, 538 U.S. 468, 475 (2003)).

But even if this Court were to decide the question of alter ego,[11] Plaintiff would still fail to

---

[11] This Court does not appear to be the appropriate forum for deciding whether VSL is an alter ego of Vedanti, which counsels in favor of dismissal.  As Plaintiff acknowledges, both VSL and Vedanti are formed under United Kingdom ("U.K.") law.  *See* Opp. at 18-19.  As such, this Court should apply U.K. law to decide whether VSL is an alter ego of Vedanti, but U.K. law is a subject that is better left to U.K. courts.  *See, e.g.*, *Vivendi SA v. T-Mobile USA Inc.*, 586 F.3d 689, 696 (9th Cir. 2009) (noting that "lack of familiarity with foreign law counseled in favor of dismissal"); *McKesson HBOC, Inc. v. N.Y. State Common Ret. Fund, Inc.*, 339 F.3d 1087, 1091, 1094-96 (9th (continued...)

1    meet its burden.  As with agency, "[c]orporate control is not enough by itself to prove alter ego."

2    *Quantum*, 2008 WL 314490, at *2 n.*.  Because Plaintiff primarily relies on the same allegations

3    for its alter ego theory as it did for its flawed agency theory, specifically that both VSL and

4    Vedanti were "dominated" by Nash, Plaintiff's alter ego theory similarly fails.  *See* Opp. at 18.

5    Plaintiff's reliance on cherry-picked statements made by Nash is similarly misplaced, as she and

6    her counsel have consistently and adamantly maintained that Vedanti and VSL are separate

7    entities.  *Compare* Opp. at 19 *with, e.g.*, Nelson Decl., Ex. A (Voicemail from C. Nash to J.

8    Schmidt) at 1 ("[T]here's no agreement and no contract with Vedanti Systems and Vedanti

9    Systems was [] off limits to the joint venture with Max Sound . . . ."); Nelson Decl., Ex. B

10   (Voicemail from C. Nash to J. Schmidt) at 1("We're Vedanti Systems Ltd. and that is the owner of

11   the patents.  There's a separate company called VSL, and I'm really sorry that you [] write about

12   VSL because it's not the same corporation."); Guo Decl., Ex. C at 2 ("Vedanti Systems . . . IS

13   NOT TO BE MiXED UP WITH VSL COMMUNICATIONS LTD (UK))") (caps in original);

14   Guo Decl., Ex. I at 1 ("The agreement cited by Max Sound is between VSL and Max Sound.

15   Vedanti is not a party to it."); Withdrawal Br. at 4 ("There *is* an agreement between Max Sound

16   and VSL Communications Ltd., an affiliate of [Vedanti].  [Vedanti] is not a party to that

17   agreement.").

18           In fact, Plaintiff conveniently omits that it already attempted the same alter ego argument

19   _____

                 (...continued from previous page)
20   Cir. 2003) (applying law of state of incorporation in declining to pierce corporate veil) (citing
     Restatement of Conflict of Laws 2d § 302(2) ("The local law of the state of incorporation will be
21   applied to determine [issues involving the rights and liability of a corporation], except in the
     unusual case where, with respect to the particular issue, some other state has a more significant
22   relationship to the occurrence and the parties . . . .")).  Likewise, what effect, if any, of VSL or
     Vedanti being classified as a "dormant company" or being dissolved is also more appropriately a
23   question for a U.K. court applying U.K. law.  *See, e.g.*, Restatement of Conflict of Laws 2d
     § 299(1) ("Whether the existence of a corporation has been terminated or suspended is determined
24   by the local law of the state of incorporation."); Opp. at 19.  Plaintiff does not even attempt to
     discern what body of law should apply, instead citing a hodgepodge of disparate cases from
25   various districts and circuits.  *See* Opp. at 17-20.  Moreover, to the extent that Plaintiff alleges
     fraudulent behavior on the part of VSL, Vedanti, or Nash, the only apparent fraud that would
26   potentially merit piercing the corporate veil appears to be avoidance of U.K. taxes, an issue that is
     of course better left to U.K. courts applying U.K. law since the U.K. "has the most significant
27   relationship" to this issue.  *See* Restatement of Conflict of Laws 2d § 302(1); Opp. at 19.
     Providing Plaintiff with the remedy it presently seeks—a rewriting of the VSL Agreement to
28   confer to it rights in the '339 patent—has nothing to do with U.K. taxes.

before the emergency arbitrator who found it unavailing.[12]  *See* Halpern Decl., Ex. PP at ¶¶ 43-44 (declining to extend arbitration clause of VSL Agreement to non-signatories under alter ego theory and dismissing Nash, Robert Newell, Vedanti, eTechInvestments, and Does 1 through 10 from emergency arbitration proceedings); Joinder at 2 ("[T]he arbitrator correctly ruled that Vedanti is not a party to the arbitration agreement, and thus dismissed Vedanti from the arbitration.").  And Plaintiff's suggestion that eTechInvestments may be an alter ego of Nash hardly relates to the question of the relationship between Vedanti and VSL.  *See* Opp. at 18.

As such, Plaintiff cannot demonstrate an alter ego theory, and such a theory is irrelevant since even an alter ego relationship would not fix the fact that no written agreement exists to confer rights in the '339 patent from Vedanti to VSL or from VSL to Plaintiff.

**E.      Since Plaintiff Lacks Standing, the Court Should Dismiss This Case.**

Although Defendants request a dismissal or, in the alternative, a stay pending arbitration, Plaintiff insists that "the issue of Max Sound's standing to pursue a claim for patent infringement against Google in federal court will not be decided in the arbitration proceeding."  *See* Opp. at 25. Vedanti similarly "disagrees that a stay pending arbitration would be an appropriate alternative to disimssal of the [complaint]."  Joinder at 2.  If Plaintiff's assertion is correct, then the Court should dismiss this case now rather than stay pending arbitration since neither the VSL Agreement nor the arbitration can confer the necessary rights to Plaintiff.[13]

**III.    CONCLUSION**

Accordingly, Defendants respectfully request that the Court grant this motion and dismiss or, in the alternative, stay this case pending resolution of the arbitration between Plaintiff and VSL.

---

[12] Plaintiff claims the arbitration has no bearing on the instant proceedings, yet complains that Defendants have "neglected to mention" the emergency arbitration order.  *See* Opp. at 12 n.5.  But the emergency arbitration order is irrelevant because it makes no substantive final findings and merely imposes a "status quo injunction" that prevents VSL from, *inter alia*, changing its corporate structure and transferring intellectual property rights until the arbitration is complete. *See* Halpern Decl., Ex. PP at ¶¶ 64-67.

[13] Should the Court prefer to stay the case, Plaintiff has completely failed to address the stay factors and has, therefore, waived any arguments against a stay.  *See* Br. at 7-11; *see generally* Opp.

1    Dated:  October 22, 2015                    COOLEY LLP

2

3                                               By: _____ /s/ Heidi L. Keefe _____
                                                        Heidi L. Keefe
4
                                                Attorneys for Defendants Google Inc.; YouTube,
5                                               LLC; and On2 Technologies, Inc.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28