UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MAX SOUND CORPORATION,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>GOOGLE, INC., et al.,<br><br>　　　　Defendants. | Case No.  5:14-cv-04412-EJD<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**<br><br>Re: Dkt. No. 100 |

On January 23, 2015, Plaintiff Max Sound Corporation ("Max Sound") filed a First Amended Complaint ("FAC") against three defendants: Google, Inc., YouTube, LLC and On2 Technologies (collectively, "Defendants"), for the infringement of United States Patent No. 7,974,339 (the "'339 patent"). Dkt. No. 23. Max Sound has also named the owner of the '339 patent, Vedanti Systems Limited ("Vedanti"), as a party to this action with a corresponding role that is not entirely clear.

Presently before the court is Defendants' Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1). Dkt. No. 100. In the alternative, Defendants request a stay pending resolution of arbitration between Max Sound and Vedanti. Max Sound opposes both requests. Dkt. No. 116. Having fully reviewed the parties' briefing and considered the arguments made at the hearing on this matter, the court will grant Defendants' Motion to Dismiss.

**I.    FACTUAL HISTORY AND PROCEDURAL BACKGROUND**

　　**A.    The '339 Patent**

The '339 Patent, entitled "Optimized Data Transmission System and Method," was issued by the United States Patent and Trademark Office on July 5, 2011. See FAC, at Ex. 1. Alexander

1

Case No.: 5:14-cv-04412-EJD
ORDER GRANTING DEFENDANTS' MOTION TO DIMISS

Krichevsky and Constance Nash ("Nash") are the named inventors of the '339 patent. Id. These inventors assigned their rights in the '339 patent to an entity called Cornerstone. See Decl. of Michael Guo, Dkt. No. 101, at Exs. E, F. Thereafter, Cornerstone assigned its rights in the '339 patent to Vedanti. Id. at Exs. G, H. Vedanti is the last assignee in the assignment chain and the current owner of the '339 patent. Id.

### B.   Relevant Agreements

Aside from the history of the '339 patent, a series of agreements between Max Sound and other entities are also relevant to this motion's resolution.

According to Greg Halpern, Max Sound's Chairman and Chief Financial Officer, he met with Nash in April, 2014. See Decl. of Greg Halpern, Dkt. No. 118, at ¶ 2. During their discussions, Nash represented that she was the owner of a company called "VSL" that itself owned intellectual property relating to the transmission of data known as Optimized Data Transmission ("ODT") technology. Id. Nash also stated she had been unsuccessful in attempts to monetize the ODT intellectual property and discussed the possibility of entering into a business venture with Max Sound, which would assist VSL in that effort. Id. at ¶ 4. After further exchanges between Halpern and Nash, they eventually signed a "Letter of Intent" to enter into a business arrangement on April 18, 2014. Id. at ¶ 6. Nash also informed Halpern that although Vedanti held the ODT patents, all rights to the patents would be transferred to "the VSL Delaware entity Nash selected to be a party" to an ensuing license agreement between the companies. Id. at ¶ 11.

A "Representation Agreement" was executed by Halpern and Nash on May 16, 2014. Id. at ¶ 16. The parties to that agreement were Max Sound and "VSL Communications Inc., a Delaware corporation," the latter of which represented that it legally owned and controlled all of the worldwide rights, title and interest to the ODT intellectual property at the time the agreement was signed. Id. at Ex. N. Halpern states that Nash then "changed her mind and insisted on using another entity" also called "VSL Communications," but instead established in Hong Kong. Id. at ¶ 17. Thus, on May 19, 2014, Halpern and Nash signed a "Licensing and Representation Agreement" between Max Sound and the Hong Kong version of VSL Communications. Id. at Ex.

2
Case No.: 5:14-cv-04412-EJD
ORDER GRANTING DEFENDANTS' MOTION TO DIMISS

1  O. That agreement contained the same representation concerning ownership of the ODT
2  intellectual property. Id. But after Nash "changed her mind again" and designated a Delaware
3  company called "Vedanti Systems Ltd." to be party to the agreement with Max Sound, another
4  version of a representation agreement was executed on May 19, 2014. Id. at ¶ 18, Ex. Q.

5  That did not end the matter though because Nash apparently "changed her mind a third
6  time" and insisted on a new agreement naming "VSL Communications, Ltd." ("VSL"), a United
7  Kingdom company, as a party. Id. at ¶ 19. An agreement was ultimately signed on June 20, 2014
8  entitled "Max Sound Corporation and VSL Communications Licensing and Representation
9  Agreement," between Max Sound and the United Kingdom version of VSL Communications. Id.
10 at ¶ 21. This agreement contained the following provision:



15 Id. at ¶ 23, Ex. S.

16 As suggested, however, VSL did not own the rights to the '339 patent on June 20, 2014, as
17 even Max Sound recognizes. Vedanti, VSL's subsidiary, owned those rights.

18 In response to patent litigation in Germany, Vedanti and VSL executed a confirmatory
19 license agreement on September 4, 2014, wherein Vedanti granted to VSL "an exclusive and non-
20 restricted license" to European Patent EP 2 026 277 B1 (the "EP '277 patent"), as well as standing
21 to sue under that patent. Id. at ¶ 30, Ex. T. Nash, the acting CEO of both Vedanti and VSL, was
22 the only signatory to this agreement and signed on behalf of both companies. Id. at Ex. T. Also
23 on September 4, 2014, VSL and Max Sound executed a similar confirmatory license agreement in
24 which VSL granted to Max Sound "a non-restricted exclusive" license to the EP '277 patent,
25 including standing to sue. Id. at ¶ 31, Ex. U.

26 **C. Procedural History**

27 Max Sound initiated this action on October 1, 2014. It named Vendanti as a co-plaintiff in

28 
3
Case No.: 5:14-cv-04412-EJD
ORDER GRANTING DEFENDANTS' MOTION TO DIMISS

the original complaint and alleged that Vedanti was the owner of the '339 patent. On January 23, 2015, Max Sound filed the FAC. Max Sound still included Vedanti as a co-plaintiff in the caption and still alleged that Vedanti was the owner of the '339 patent. At the same time, Max Sound also alleged that Vedanti was actually a defendant and was listed in the FAC "in the event the Court deems VSL[1] to be a necessary party to this action."

Defendants filed a motion to dismiss the FAC under Federal Rule of Civil Procedure 12(b)(6), which the court denied. However, the court granted a motion for more definite statement filed by Vedanti and required Max Sound to state whether Vedanti was a plaintiff or defendant.

The instant motion was filed by Defendants on August 28, 2015, and Max Sound filed an opposition on October 10, 2015. Defendants filed a reply on October 22, 2015, and, interestingly, Vedanti filed a notice of joinder in the motion. The court heard argument on November 5, 2015, at which time the motion was submitted for decision.

## II.  LEGAL STANDARD

Under Rule 12(b)(1), a party may file a motion to dismiss for lack of subject matter jurisdiction, which may be either facial or factual. Cedars-Sinai Medical Ctr. v. Watkins, 11 F.3d 1573, 1583-84 (Fed. Cir. 1993). When, as here, "the Rule 12(b)(1) motion denies or controverts the pleader's allegations of jurisdiction . . . the movant is deemed to be challenging the factual basis for the court's subject matter jurisdiction." Id. at 1583. "In such a case, the allegations in the complaint are not controlling . . . and only uncontroverted factual allegations are accepted as true for purposes of the motion." Id. Since the "facts underlying the controverted jurisdictional allegations are in dispute," the court "is not restricted to the face of the pleadings, but may review evidence extrinsic to the pleadings." Id. at 1584.

Standing is properly challenged through a Rule 12(b)(1) motion because it is "a threshold jurisdictional issue." Abraxis Bioscience, Inc. v. Navinta LLC, 625 F.3d 1359, 1363 (Fed. Cir. 2010). "The party bringing the action bears the burden of establishing that it has standing."

---

[1] Max Sound refers to Vedanti as VSL in the FAC.

4
Case No.: 5:14-cv-04412-EJD
ORDER GRANTING DEFENDANTS' MOTION TO DIMISS

Sicom Sys. v. Agilent Techs., Inc., 427 F.3d 971, 976 (Fed. Cir. 2005). If the court determines that the plaintiff has not demonstrated standing to sue, the action must be dismissed for lack of subject matter jurisdiction. See Media Techs. Licensing, LLC v. Upper Deck Co., 334 F.3d 1366, 1370 (Fed. Cir. 2003) ("Pursuant to Article III, 'standing . . . is jurisdictional and not subject to waiver.'"); see also Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

## III.    DISCUSSION

Defendants assert this action must be dismissed because Max Sound lacks standing to sue for infringement of the '339 patent. According to Defendants, VSL had no authority to confer any rights under the '339 patent to Max Sound on June 20, 2014, because the true owner of the '339 patent at that time was Vedanti. Moreover, Defendants believe the plain language of the June 20th license agreement makes clear that the contract was only between VSL and Max Sound - not Vedanti. On these points, the court agrees with Defendants.

"The essential issue regarding the right to sue on a patent is who owns the patent." Aspex Eyewear, Inc. v. Miracle Optics, Inc., 434 F.3d 1336, 1341 (Fed. Cir. 2006). Consequently, the Patent Act requires that "a suit for infringement of patent rights ordinarily be brought by a party holding legal title to the patent." Propat Int'l Corp. v. Rpost, Inc., 473 F.3d 1187, 1189 (Fed. Cir. 2007) (citing 35 U.S.C. §§ 100, 281). A plaintiff asserting patent infringement "'must demonstrate that it held enforceable title to the patent at the inception of the lawsuit' to assert standing." Abraxis, 625 F.3d at 1364 (quoting Paradise Creations, Inc. v. UV Sales, Inc., 315 F.3d 1304, 1309-310 (Fed. Cir. 2003)). "'[I]f the original plaintiff lacked Article III initial standing, the suit must be dismissed, and the jurisdictional defect cannot be cured' after the inception of the lawsuit." Id. (quoting Schreiber Foods, Inc. v. Beatrice Cheese, Inc., 402 F.3d 1198, 1203 (Fed. Cir. 2005)).

"[A] licensee normally does not have standing to sue without joinder of the patentee." Aspex, 434 F.3d at 1340. However, the Federal Circuit has held that an "exclusive licensee" has standing to sue without joining the patent holder when "all substantial rights" under the patent

5
Case No.: 5:14-cv-04412-EJD
ORDER GRANTING DEFENDANTS' MOTION TO DIMISS

have been transferred to the exclusive licensee.  Int'l Gamco, Inc. v. Multimedia Games, Inc., 504 F.3d 1273, 1276 (Fed. Cir. 2007); see Morrow v. Microsoft Corp., 499 F.3d 1332, 1340 (Fed. Cir. 2007) ("When a party holds all rights or all substantial rights [to a patent], it alone has standing to sue for infringement."); see also Alfred E. Mann Found. for Scientific Research v. Cochlear Corp., 604 F.3d 1354, 1358-59 (Fed. Cir. 2010) ("A patent owner may transfer all substantial rights in the patents-in-suit, in which case the transfer is tantamount to an assignment of those patents to the exclusive licensee, conferring standing to sue solely on the licensee.").  In those circumstances, the licensee becomes the "virtual assignee."  Enzo APA & Son, Inc. v. Geapag A.G., 134 F.3d 1090, 1093 (Fed. Cir. 1998).

"To determine whether an agreement constitutes just an exclusive license or instead also transfers 'all substantial rights' in a patent, [the court] must ascertain the intention of the parties and examine the substance of what was granted by the agreement."  Mentor H/S, Inc. v. Med. Device Alliance, Inc., 240 F.3d 1016, 1017 (Fed. Cir. 2001).  "The party asserting that it has all substantial rights in the patent 'must produce . . . written instruments documenting the transfer of proprietary rights.'"  Id. (quoting Speedplay, Inc. v. Bebop, Inc., 211 F.3d 1245, 1250 (Fed. Cir. 2000)).

Here, Max Sound has not shown through written instruments that it received "all substantial rights" to the '339 patent such that it qualifies as a "virtual assignee."  Indeed, of all the agreements described above, the one critical to Max Sound's standing is the license agreement it executed on June 20, 2014.  But two aspects of the June 20th agreement cannot be disputed, both of which are unfavorable to Max Sound: first, that the agreement involved, if anything, a transfer of rights between Max Sound and VSL and not a transfer between Max Sound and Vedanti, and second, that the agreement does not reference the '339 patent anywhere in the document.  It therefore follows that Max Sound could not have received *any* rights to the '339 patent - let alone substantial ones - through the license agreement it signed with VSL because the uncontradicted evidence shows that Max Sound did not contract with the entity that owned those rights.  See Quantum Corp. v. Riverbed Tech., Inc., No. C 07-04161 WHA, 2008 U.S. Dist. LEXIS 11348, at

6
Case No.: 5:14-cv-04412-EJD
ORDER GRANTING DEFENDANTS' MOTION TO DIMISS

\*9, 2008 WL 314490 (N.D. Cal. Feb. 4, 2008) ("Given that the August 2007 licensing agreement was not signed by Rocksoft, no rights in the '810 patent were transferred by that agreement."). Thus, the inescapable conclusion on this record is that Max Sound cannot independently pursue this action for infringement of the '339 patent. It lacks standing to do so, no matter what litigation it believes was authorized in "margin notes" or in the June 20th agreement itself.[2] Authorization to sue is not a substitute for standing.

Max Sound attempts to avoid this result with several unpersuasive arguments. Reading much into portions of its June 20th license agreement with VSL, Max Sound contends that the September 4th confirmatory license agreement between Vedanti and VSL is evidence that VSL must have been an exclusive licensee under the '339 patent at the time it contracted with Max Sound. This argument is simply unsupported insinuation because what is missing from this scenario is the written document between Vedanti and VSL which endorses Max Sound's contention in relation to the '339 patent as opposed to the EP '277 patent. To be sure, that sort of transfer - which would necessarily impart on VSL its own virtual assignment to assert the '339 patent - must be in writing in order for Max Sound to, in turn, have standing to do the same here. Enzo, 143 F.3d at 1093 (holding that while "a license may be written, verbal, or implied, if the license is to be considered a virtual assignment to assert standing, it must be in writing"). Without such evidence completing the transfer chain for the '339 patent, neither the terms of the June 20th agreement nor the September 4th confirmatory license agreement are of any moment to the issue of Max Sound's standing.

Max Sound also argues that VSL was either Vedanti's agent or alter ego. Both theories

---

[2] The same reasoning applies even if Max Sound claims to be an exclusive licensee without all "substantial rights" to the '339 patent. Since it has not been shown that VSL owned any rights to the '339 patent at the time it contracted with Max Sound, VSL had no authority to grant a license. Even if it did, VSL would need to be properly joined as a plaintiff to perfect Max Sound's standing under those circumstances. Textile Prods. v. Mead Corp., 134 F.3d 1481, 1484 (Fed. Cir. 1998) ("[A]n exclusive licensee that does not have all substantial rights has standing to sue third parties only as a co-plaintiff with the patentee."). VSL has not voluntarily appeared as a plaintiff or been properly joined over its resistance, however, and it notably supports the dismissal of this case.

7
Case No.: 5:14-cv-04412-EJD
ORDER GRANTING DEFENDANTS' MOTION TO DIMISS

require Max Sound to make a specific showing in order to overcome the presumption of distinct corporate forms. See Cedric Kushner Promotions, Ltd. v. King, 533 U.S. 158, 163 (2001) ("[I]ncorporation's basic purpose is to create a distinct legal entity, with legal rights, obligations, powers, and privileges different from those of the natural individuals who created it, who own it, or whom it employs.").[3] Control over the subsidiary is an important consideration for both doctrines. Sonora Diamond Corp. v. Super. Ct., 83 Cal. App. 4th 523, 539-41 (2000). Even so, a parent's "control of its subsidiaries is insufficient to confer standing" in this context because a parent company is not automatically deemed authorized to transfer its subsidiaries' patent rights. Quantum, 2008 U.S. Dist. LEXIS 11348, at *5-8. Max Sound needed to show something more than control, but its argument focused again on circumstantial interpretations of the June 20th license agreement falls short of showing that VSL was specifically authorized to transfer any of Vedanti's patent rights when it executed that agreement.

Moreover, the fact that Nash is the CEO of both companies is not enough to raise the "unity of interest" required to prove that VSL is the alter ego of Vedanti. See Sys. Div., Inc. v. Teknek Elecs., Ltd., 253 Fed. Appx. 31, 34 (Fed. Cir. 2007) (observing that under California law "[t]here are two general requirements for disregarding the corporate entity: there must be 'such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist,' and it must be demonstrated that 'if the acts are treated as those of the corporation alone, an inequitable result will follow.'"); see also Sonora Diamond, 83 Cal. App. 4th at 548 ("It is considered a normal attribute of ownership that officers and directors of the parent serve as officers and directors of the subsidiary."). Nor is there sufficient evidence to find that Nash abused the corporate privilege such that it should be disregarded in her dealings with Halpern. See

---

[3] The discussion of alter ego and agency is supplemented with federal and California law in order to emphasize those doctrines' basic principles and because Max Sound relied on federal and state law in its opposition to this motion. The court does note, however, that "the law of the state of incorporation normally determines issues relating to the internal affairs of a corporation." First Nat'l City Bank v. Banco Para El Comercio Exterior De Cuba, 462 U.S. 611, 621 (1983). Vedanti and VSL are both United Kingdom corporations, but Max Sound provided no argument on the issues of agency or alter ego under the law of that country.

8
Case No.: 5:14-cv-04412-EJD
ORDER GRANTING DEFENDANTS' MOTION TO DIMISS

Manville Sales Corp. v. Paramount Sys., Inc., 917 F.2d 544, 552 (Fed. Cir. 1990) ("[A] court may exert its equitable powers and disregard the corporate entity if it decides that piercing the veil will prevent fraud, illegality, injustice, a contravention of public policy, or prevent the corporation from shielding someone from criminal liability."); see also Dole Food Co. v. Patrickson, 538 U.S. 468, 475 (2003) ("The doctrine of piercing the corporate veil, however, is the rare exception, applied in the case of fraud or certain other exceptional circumstances . . . ."); see also Sonora Diamond, 83 Cal. App. 4th at 539 ("Alter ego is an extreme remedy, sparingly used."). This situation is not extraordinary; it is just an example of what can happen when a company does not perfect rights before filing suit.

In sum, Max Sound has not demonstrated that it had standing to enforce the '339 patent at the time it initiated this action, with or without Vedanti as a party. Its suit for infringement must therefore be dismissed, and the court need not reach Defendants' alternative to stay in favor of arbitration.

### III.   ORDER

Based on the foregoing, Defendants' Motion to Dismiss (Dkt. No. 100) is GRANTED. This action is DISMISSED for lack of subject matter jurisdiction. The Clerk shall close this file.

**IT IS SO ORDERED.**

Dated:  November 24, 2015


EDWARD J. DAVILA
United States District Judge