UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MAX SOUND CORPORATION,<br><br>                    Plaintiff,<br><br>            v.<br><br>GOOGLE, INC., et al.,<br><br>                    Defendants. | Case No.  14-cv-04412-EJD<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR ATTORNEYS' FEES**<br><br>Re: Dkt. No. 153 |

Presently before the Court is a motion from Defendants Google, Inc., YouTube, LLC, and On2 Technologies (collectively, "Defendants") for attorneys' fees pursuant to 35 U.S.C. § 285, 28 U.S.C. § 1927, and the Court's inherent power.  Dkt. No. 153 ("Mot.").  Plaintiff Max Sound Corporation ("Max Sound") opposes this request.  Dkt. No. 161 ("Opp.").  For the reasons discussed below, the Court GRANTS IN PART and DENIES IN PART Defendants' request.

## I.     BACKGROUND

The Court's Order Granting Defendants' Motion to Dismiss, Dkt. No. 138 ("Dismissal Order"), sets forth the factual background of this case.  The Court repeats facts relevant to the instant motion below.

### A.     Licensing History

U.S. Patent No. 7,974,339 ("the '339 patent"), entitled "Optimized Data Transmission System and Method," issued on July 5, 2011.  Dkt. No. 23 ("FAC"), Ex. 1.  It names Alexander Krichevsky and Constance Nash as inventors.  *Id.*  Mr. Krichevsky and Ms. Nash assigned their

1 | rights in the '339 patent to an entity called Cornerstone Group, Ltd. ("Cornerstone"), which

2 | thereafter assigned its rights to an entity called Vedanti Systems Limited ("Vedanti").  Dismissal

3 | Order at 2 (citing Dkt. Nos. 101-5 through 101-8).  Ms. Nash has been closely affiliated with both

4 | entities, serving as the Director of Cornerstone and CEO of Vedanti.  Dkt. No. 101-7 at 2; Dkt.

5 | No. 162 ¶ 10.

6 |       In April 2014, Greg Halpern, the Chairman and Chief Financial Officer of Max Sound, met

7 | with Ms. Nash, who represented that she was the owner of a company called "VSL" that owned

8 | intellectual property relating to the transmission of data known as Optimized Data Transmission

9 | ("ODT") technology.  Dismissal Order at 2 (citing Dkt. No. 118 ¶ 2).  Eventually,

10 | communications culminated in an agreement ("June 20 Licensing Agreement") between Max

11 | Sound and an entity called "VSL Communications, Ltd." ("VSL"), which was entitled "Max

12 | Sound Corporation and VSL Communications Licensing and Representation Agreement" and

13 | signed on June 20, 2014.  Dkt. No. 115-7.  VSL is a United Kingdom company which was

14 | incorporated on June 11, 2014—nine days before the consummation of the June 20 Licensing

15 | Agreement—and of which Ms. Nash was the CEO.  Dkt. No. 117-9.  According to Max Sound,

16 | Ms. Nash has represented that VSL is the sole shareholder of Vedanti; however, Vedanti has later

17 | disputed this fact.  *Compare* Dkt No. 118 ¶ 39 and Dkt. No. 118-31, *with* Dkt. No. 127 at 2.

18 |       The June 20 Licensing Agreement provided:

19 |       WHEREAS, before the Closing Date, VSL legally owns and controls all of the
20 |       worldwide rights, title and interest to all fields of use of its Trade Secrets, Patents,
     |       and all other know-how, through its affiliated entities and owners, including the
21 |       rights to license, the rights to develop and market ODT and the Rights to Sue . . .
     |       and Legally Defend and Uphold its Intellectual Property, Trade Secrets and
22 |       Proprietary Technology.

23 | Dkt. No. 115-7 at 1.  However, at the time of signing, VSL did not hold rights to the '339 patent;

24 | instead, only Vedanti held these rights.  Dismissal Order at 3; Dkt. No. 162 ¶ 4.

25 |       No further action was taken to transfer or confirm rights to the '339 patent.  The parties

26 | did, however, take such actions with respect to a different patent.  On September 4, 2014, Vedanti

27 | and VSL executed a confirmatory license agreement, where Vedanti granted to VSL "an exclusive

and non-restricted license" to European Patent EP 2 026 277 B1 ("the '277 European patent"), as well as standing to sue under that patent. Dismissal Order at 3 (citing Dkt. No. 118 ¶ 30 and Dkt. No. 118-20). Nash, the acting CEO of both Vedanti and VSL, signed on behalf of both companies. *Id.* That same day, VSL and Max Sound also executed a confirmatory license agreement in which VSL granted to Max Sound "a non-restricted exclusive" license to the EP '277 patent, including standing to sue. Dismissal Order at 3 (citing Dkt. No. 118 ¶ 31 and Dkt. No. 118-21). Although this agreement was between Max Sound and VSL, its signature line lists Ms. Nash signing "[f]or V[edanti]." Dkt. No. 118-21. On September 8, 2014, Robert Newell, the Chairman and founder of Vedanti and Ms. Nash's husband, signed an affidavit stating that "[e]xcept for the license that has been granted to VSL Communications Ltd. (Confirmatory License Agreement of September 04, 2014), and the sublicense granted to Max Sound Corporation, no other license has been granted by Vedanti regarding EP 2 026 277 for the territory of Germany." Dkt. No. 121-3.

### B.   This Lawsuit

On October 1, 2014, Max Sound filed a Complaint against Defendants alleging infringement of the '339 patent. Dkt. No. 1 ("Complaint"). The Complaint named Vedanti as a co-plaintiff "pursuant to Rule 19" and alleged that Vedanti was the owner of the '339 patent. *Id.* at 2. However, Vedanti did not sign the Complaint, nor did the Complaint list any counsel for Vedanti. *Id.*

In response, Defendants moved to dismiss the Complaint because Vedanti was a required party under Federal Rule of Civil Procedure 19(a), but had not been properly joined. Dkt. No. 15. The motion noted that Vedanti had not voluntarily joined as co-plaintiff, nor had Max Sound followed the proper procedures to join Vedanti as an involuntary co-plaintiff under Rule 19(a)(2). *Id.*

Max Sound did not oppose the motion to dismiss, but instead, on January 23, 2015, filed a First Amended Complaint ("FAC"), which named Vedanti as a defendant "in the event the Court

United States District Court
Northern District of California

United States District Court
Northern District of California

deems [it] to be a necessary party to the action." FAC ¶ 16.  The FAC also still named Vedanti as a co-plaintiff and alleged that it was the owner of the '339 patent.  *Id*. ¶ 14.  In addressing the relationship between Max Sound and Vedanti, the FAC alleged that "VSL[1] entered into a contract with Max Sound in the State of California pursuant to which VSL granted Max Sound certain rights with respect to the '339 Patent."  *Id*. ¶ 11.  It also alleged that "[t]he VSL Agreement entered into between Max Sound and VSL provides that Max Sound shall have the exclusive right to enforce VSL's patent rights on VSL's behalf."  *Id*. ¶ 15.

On April 13, 2015, Vedanti moved for a more definite statement as to the claims asserted against it and whether and on what grounds Max Sound claimed that Vedanti should be an involuntary plaintiff.  Dkt. No. 53.

In anticipation of the Court's initial case management conference, the parties files a Joint Case Management Statement ("JCMS") on April 23, 2015.  Dkt. No. 58.  In the JCMS, Defendants stated that they "intend to seek early discovery relating to Max Sound's allegation that it is an exclusive licensee of the '339 Patent with standing to sue."  *Id*. at 9.  Consequently, Defendants "propose[d] deferring all other discovery until after the issue of Max Sound's standing is resolved."  *Id*.  Max Sound opposed bifurcating discovery in this way.  *Id*.  On May 14, 2015, the Court issued its Case Management Order denying Defendants' request.  Dkt. No. 79.

The following day, on May 15, 2015, Defendants sent a letter to Max Sound expressing concerns as to whether Max Sound had Vedanti's permission to assert the '339 patent and whether, without it, Max Sound had standing to sue.  Mot., Ex. C.  The letter also called out the fact that Max Sound had not yet produced a copy of "the VSL Agreement" which the FAC alleged "provide[d] that Max Sound shall have the exclusive right to enforce [Vedanti's] patent rights on [Vedanti's] behalf."  *Id*. at 1 (quoting FAC ¶¶ 14-15).

Max Sound responded roughly two weeks later, on May 27, 2015, asserting that "as far as

---

[1] Max Sound referred to Vedanti as "VSL" in its Complaint and FAC.  Complaint at 1 ("Plaintiff Max Sound Corporation ('Max Sound') . . . and Vedanti Systems Limited ('VSL') and allege as follows . . ."); FAC at 1 (same).

Case No.: 14-cv-04412-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR ATTORNEYS' FEES

United States District Court
Northern District of California

1  Max Sound is concerned, there is no 'contract issue between VSL and Max Sound' regarding Max

2  Sound's standing that must be resolved before the Google Defendants should be required to

3  respond on the merits to Max Sound's patent infringement allegations."  Mot., Ex. D at 2.  Max

4  Sound also enclosed a copy of the June 20 Licensing Agreement, which it represented was "the

5  VSL Agreement" referenced in the FAC.  *Id.*

6       That same day, Defendants served discovery requests on Max Sound, including

7  interrogatories, requests for production, and requests for admission relating to ownership of the

8  '339 patent and Max Sound's right to sue.  Mot., Exs. F, G, H.  Defendants also that day noticed a

9  30(b)(6) deposition regarding the issue of standing.  Dkt. No. 162 ¶ 28.

10       On June 12, 2015, Max Sound served its infringement contentions and Patent L.R. 3-2

11  disclosures and document production.  Dkt. No. 162 ¶ 26.  According to Max Sound, this

12  "included the production of all of the license agreements executed by Connie Nash in the names of

13  the numerous shell entities she used to serve as the conduit through which she transferred rights to

14  the ODT patents to Max Sound, the confirmatory license agreement executed in the name of

15  Vedanti and VSL that Max Sound contended confirmed the transfer of its right to sue Google for

16  infringement of the '339 Patent."  *Id.*

17       On June 25, 2015, Defendants sent Max Sound a letter regarding its Patent L.R. 3-2

18  document production, stating that Max Sound "ha[d] not produced any documents showing that

19  Vedanti Systems Ltd. has assigned any rights in the '339 patent to Max Sound" and requesting

20  that Max Sound produce such documents or confirm they did not exist.  Mot., Ex. I at 1.  Max

21  Sound did not respond.  *See* Mot., Ex. J at 1.

22       Sometime before July 29, 2015, Max Sound produced documents and served responses to

23  Defendants' May 27 discovery requests.[2]  Dkt. No. 101 ¶ 29; Dkt. No. 99-17; *see also* Dkt. No.

24

25  _____

26  [2] Max Sound's interrogatory responses were served July 21, 2015.  Dkt. No. 101 ¶ 29; Dkt. No.
   99-17.  While it seems reasonable to assume that Max Sound's responses to Defendants' other

27  May 27 discovery requests were served that same day, the parties have not filed these documents
   so the Court cannot confirm the same.

28  Case No.: 14-cv-04412-EJD
   ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR
   ATTORNEYS' FEES

5

162 ¶ 27; Mot., Ex. J.  On July 29, 2015, Defendants sent Max Sound a letter detailing perceived deficiencies in Max Sound's discovery responses and reiterating their request that Max Sound "produce all agreements, documents, and correspondence pertaining to Max Sound's alleged right to assert the '339 patent" or confirm that none exist.  Mot., Ex. J at 3–4.  On August 4, after no response from Max Sound, Defendants followed up by email.  Mot., Ex. K at 1.

Meanwhile, on August 3, 2015, Max Sound initiated arbitration proceedings against Nash, Newell, VSL, and Vedanti.  Dkt. No. 118-41 at 5.  In the proceedings, Max Sound sought, among other things, emergency relief that VSL be "enjoined from licensing, selling, assigning, transferring, etc., any of the technology, patents, intellectual property, etc., connected to the [Licensing Agreement] in any manner, and required to cooperate with the pending litigation and [its] other contractual obligations."  *Id.* at 4.  According to Defendants, "Max Sound withheld information that the arbitration was filed."  Mot. 2 n.1.

On August 7, 2015, Max Sound sent Defendants a letter responding to the July 29 letter, which denied that its discovery responses were deficient.  Mot., Ex. M.  The letter also asserted:

> [T]here is no "dispute" that Vedanti "is obligated by agreement to join Max Sound as a co-plaintiff in any case asserting infringement of the '339 Patent. The Max Sound/VSL Agreement expressly sets forth that obligation and Vedanti has not asserted that such an obligation does not exist. Vedanti has simply breached that obligation. Similarly, Vedanti has not responded to Max Sound's First Amended Complaint by challenging Max Sound's right to assert the '339 Patent.

*Id*. at 3.

The following Monday, August 10, 2015, Defendants sent an email to Max Sound stating that "[b]ased on Vedanti's statements and refusal to participate in this litigation, it is apparent that there is a dispute between Vedanti and Max Sound regarding Max Sound's standing to assert the '339 patent."  Mot., Ex. E at 2.  As a solution, Defendants proposed staying the case "until Max Sound and Vedanti resolve the issues between them."  *Id*. at 3.

Max Sound responded the following day, rejecting Defendants' proposal.  *Id*. at 1–2.  Instead, Max Sound stated that "Vedanti has not asserted in this litigation that Max Sound lacks standing to assert the patent infringement claims against the Google Defendants" and asserted that,

United States District Court
Northern District of California

because Vedanti had been served with the FAC and appeared in the case, it was untrue that it had refused to participate in the case. *Id.*

On August 12, 2015, Ms. Nash corresponded directly with Defendants, confirming that Vedanti had not authorized Max Sound to assert the '339 patent. *See* Dkt. Nos. 99-6, 99-7; *see also* Dkt. No. 101-9 at 5–6. Defendants then sent Max Sound an email informing it that "[i]n view of the correspondence from Ms. Nash this morning, we intend to pursue motion practice in lieu of a deposition at this time." Dkt. No. 101-9 at 4. Later that day, Vedanti, through its counsel, sent an email to Defendants and copied Max Sound which "summarize[d] the core of Vedanti's position concerning Max Sound's standing." *Id.* at 1. It stated, in relevant part:

> Vedanti consistently and repeatedly has maintained, and continues to maintain, that neither it nor VSL has granted any rights to Max Sound to sue on Vedanti's U.S. patent.
>
> The agreement cited by Max Sound is between VSL and Max Sound. Vedanti is not a party to it. As for Max Sound's claim that VSL was acting as Vedanti's agent, there was no such conduct or intent.
>
> In connection with the making of the agreement between VSL and Max Sound, Max Sound sought rights to sue on Vedanti's U.S. patent. Those requests were rejected. On about June 12, 2014, after the VSL-Max Sound agreement was made, Chris Joe speaking to a VSL representative acknowledged, before numerous witnesses, that the "marching orders" to the lawyers were that there would be no patent infringement lawsuit.
>
> Subsequently, in July and early August 2014, Max Sound renewed its requests for permission to file suit on the U.S. patent. The desire and need for such permission is evidenced, inter alia, by the documents Max Sound prepared and submitted to Vedanti in order for Vedanti to grant that permission. Vedanti refused. The absence of Vedanti's signature on the documents evidences Vedanti's refusal.
>
> When Max Sound filed the first U.S. patent action, in Delaware, it was without authorization. Vedanti objected, and a Vedanti representative personally went to the courthouse in Delaware to so advise the court. Max Sound withdrew that suit, but then refiled in the Northern District of California. When Vedanti learned of the refiled suit, it again objected.

*Id.*; *see also* Dkt. No. 97 at 4–5; Dkt. No. 127.

Shortly thereafter, on August 28, 2015, Defendants moved to dismiss the case for lack of standing on the basis that Max Sound had no rights in the '339 patent. Dkt. No. 99-3. Vedanti joined the motion to dismiss. Dkt. No. 127.

Case No.: 14-cv-04412-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR ATTORNEYS' FEES

On September 3, 2015, the Court shortened the time for hearing on Defendants' motion to dismiss and stayed all pending deadlines in the case.  Dkt No. 105.  However, up until that point, the case had continued to move forward on the merits.  On June 12, 2015, Max Sound served infringement contentions pursuant to Patent L.R. 3-1.  Dkt. No. 162 ¶ 26; Dkt. No. 88; *cf.* Dkt. No. 79 at 2.  On July 24, 2015, Defendants served invalidity contentions pursuant to Patent L.R. 3-3. Dkt. No. 88; *cf.* Dkt. No. 79 at 2.  In July and August 2015, the parties began preparing for claim construction, including serving disclosures pursuant to the Patent Local Rules.  *See* Dkt. No. 79 at 2 (ordering that the parties exchange proposed terms for construction pursuant to Patent L.R. 4-1 on July 27, 2015 and preliminary claim constructions and extrinsic evidence pursuant to Patent L.R. 4-2 on August 21, 2015).  At the time the Court stayed case deadlines, the parties were five days away from filing their Joint Claim Construction and Prehearing Statement pursuant to Patent L.R. 4-3.  *See* Dkt. No. 79 at 2.

On November 24, 2015, the Court granted Defendants' motion to dismiss.  Dkt. No. 138. In response, Max Sound moved for leave to file a second amended complaint and for relief from the Court's order dismissing the case.  Dkt. No. 142.  The Court denied this request.  Dkt. No. 149. Defendants then filed the instant motion, seeking attorneys' fees pursuant to 35 U.S.C. § 285, 28 U.S.C. § 1927, and the Court's inherent power.  Dkt. No. 153.

## II.     LEGAL STANDARDS

### A.     Attorneys' Fees Pursuant to 35 U.S.C. § 285

"The court in exceptional cases may award reasonable attorney fees to the prevailing party."  35 U.S.C. § 285.  In *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, the Supreme Court explained that an exceptional case "is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated."  134 S. Ct. 1749, 1756 (2014).

"District courts may determine whether a case is 'exceptional' in the case-by-case exercise

United States District Court
Northern District of California

of their discretion, considering the totality of the circumstances." *Octane Fitness*, 134 S. Ct. at 1756; *see also Eon-Net LP v. Flagstar Bancorp*, 653 F.3d 1314, 1324 (Fed. Cir. 2011) ("[W]e are mindful that the district court has lived with the case and the lawyers for an extended period.").  In considering the totality of the circumstances, the Supreme Court suggested that district courts could consider 'nonexclusive' factors it previously set forth concerning a similar provision in the Copyright Act, including "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Octane Fitness*, 134 S. Ct. at 1756 n.6 (citing *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994)).  A movant must establish its entitlement to attorneys' fees under § 285 by a preponderance of the evidence.  *Id*. at 1758.

**B.     28 U.S.C. § 1927**

"Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  28 U.S.C. § 1927.   An award under this section requires a finding of "subjective bad faith," where counsel "knowingly or recklessly raise a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent." *In re Keegan Mgmt. Co., Sec. Litig*., 78 F.3d 431, 436 (9th Cir. 1996) (internal quotations omitted); *see also Blixseth v. Yellowstone Mountain Club, LLC*, 796 F.3d 1004, 1007 (9th Cir. 2015) (a finding of subjective bad faith required for sanctions under § 1927, which could be met with a showing of: (i) a reckless and frivolous argument; or (ii) a meritorious claim made with the purpose of harassing the opponent).

**C.     The Court's Inherent Power**

"[T]he district court has the inherent authority to impose sanctions for bad faith, which includes a broad range of willful improper conduct." *Fink v. Gomez*, 239 F.3d 989, 992 (9th Cir. 2001).  "To impose sanctions under its inherent authority, the district court must make an explicit

finding . . . that counsel's conduct constituted or was tantamount to bad faith." *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1131 (9th Cir. 2002); *see also B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1107–08 (9th Cir. 2002) (attorney's knowing and reckless introduction of inadmissible evidence was tantamount to bad faith and warranted sanctions under Section 1927 and the court's inherent power); *Fink v. Gomez*, 239 F.3d 989, 993–94 (9th Cir. 2001) (attorney's reckless misstatements of law and fact, combined with an improper purpose, are sanctionable under the court's inherent power).

The Court "has the inherent authority to impose sanctions for bad faith, which includes a broad range of willful improper conduct." *Fink v. Gomez*, 239 F.3d 989, 992–94 (9th Cir. 2001) (finding "mere recklessness, without more, does not justify sanctions under a court's inherent power" but that "[s]anctions are available for a variety of types of willful actions, including recklessness when combined with an additional factor such as frivolousness, harassment, or an improper purpose").

## III.   DISCUSSION

Defendants contend that they are entitled to attorneys fees' under 35 U.S.C. § 285, 28 U.S.C. § 1927, and the Court's inherent power.  Mot. 3–8.  The Court addresses each in turn.

### A.   Attorneys' Fees Pursuant to 35 U.S.C. § 285

Under 35 U.S.C. § 285, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party."  The parties do not dispute that, here, Defendants are the prevailing party.  *See* Mot. 3–8; Opp. 6–20.  Thus, the issue before the Court is whether this is an "exceptional case[]" justifying an award attorneys' fees.  A case can be "exceptional" either "with respect to the substantive strength of [Max Sound's] litigating position . . . or the unreasonable manner in which the case was litigated."  *Octane Fitness*, 134 S. Ct. at 1756.  For the reasons discussed below, the Court finds that, based on the totality of circumstances, this case is "exceptional" on both of these grounds.

#### i.   Substantive Strength of Max Sound's Litigating Position

United States District Court
Northern District of California

United States District Court
Northern District of California

1   With respect to the substantive strength of Max Sound's litigating position, Defendants

2   argue it was exceptionally weak because Max Sound did not have any rights to the '339 patent and

3   that it knew that Vedanti had not given "marching orders" to file claims for patent infringement.

4   Mot. 5 (quoting Dkt. No. 101-9 at 1 and Dkt. No. 127 at 2).  Max Sound responds that its litigating

5   position was objectively reasonable, as it had a reasonable basis for asserting standing based on

6   several legal theories, including that: VSL was the agent of Vedanti, VSL was Vedanti's alter ego,

7   and Vedanti impliedly agreed to grant Max Sound an exclusive license to sue.  Opp. 6–11.

8   The Court agrees with Defendants that Max Sound's litigating position was exceptionally

9   weak.  As Max Sound has admitted from the beginning, Complaint ¶ 9; FAC ¶ 14, Vedanti—not

10   VSL—was the owner of the '339 patent.  Thus, in order to have standing, Max Sound needed to

11   either (1) join Vedanti as a co-plaintiff; or (2) be an "exclusive licensee" with "all substantial

12   rights" to the '339 patent.  *See Aspex Eyewear, Inc. v. Miracle Optics, Inc.*, 434 F.3d 1336, 1340

13   (Fed. Cir. 2006) ("[A] licensee normally does not have standing to sue without joinder of the

14   patentee."); *Alfred E. Mann Found. for Scientific Research v. Cochlear Corp.*, 604 F.3d 1354,

15   1358–59 (Fed. Cir. 2010) ("A patent owner may transfer all substantial rights in the patents-in-

16   suit, in which case the transfer is tantamount to an assignment of those patents to the exclusive

17   licensee, conferring standing to sue solely on the licensee.").

18   Max Sound cannot reasonably contend that either of these were the case.  First, Vedanti

19   was not properly joined as a plaintiff in this lawsuit.  The Complaint named Vedanti as a co-

20   plaintiff, but Vedanti never signed the document.  Complaint at 13.  The FAC, in an apparent

21   attempt to join Vedanti as an involuntary plaintiff pursuant to Federal Rule of Civil Procedure

22   19(a)(2), also named Vedanti as a defendant, but Max Sound never moved this Court to realign

23   Vedanti as an involuntary plaintiff.[3]

24

25   [3] Moreover, even if it had, it does not seem likely that Max Sound would have succeeded in
showing that this is a "proper case" under Rule 19(a)(2) for making Vedanti an involuntary

26   plaintiff.  "[I]n light of the original purpose for the Rule and its use almost exclusively in patent
and copyright infringement cases, 'the authorization in Rule 19(a) to join a party as an involuntary

27   plaintiff may be invoked only when the party sought to be joined has a duty to allow plaintiff to

Case No.: 14-cv-04412-EJD

28   ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR
ATTORNEYS' FEES

Second, Max Sound cannot reasonably contend that it was an "exclusive licensee" with "all substantial rights" to the '339 patent.  As the Court found in its Dismissal Order, two aspects of the June 20 Licensing Agreement cannot be disputed: (1) the agreement transferred rights from VSL—not Vedanti—to Max Sound; and (2) the agreement did not reference the '339 patent. Dismissal Order at 6.  No other agreements or documents tied Max Sound to either Vedanti or the '339 patent.  Max Sound points to the September 4 confirmatory licenses and the September 8 Robert Newell affidavit, Opp. 8, but, by their plain language, these documents concerned only the '277 European patent.  Dkt. Nos. 118-20, 118-21, 121-3.  Thus, without a written document that tied it to either the patent owner or the patent, Max Sound had no reasonable basis to contend that it was an "exclusive licensee" with "all substantial rights."  *Cf. Enzo APA & Son, Inc. v. Geapag A.G.*, 134 F.3d 1090, 1093 (Fed. Cir. 1998) (an exclusive license conferring all substantial rights must be in writing).  Accordingly, the substantive strength of Max Sound's standing arguments was exceptionally weak.

Max Sound's arguments to the contrary are not persuasive.  First, Max Sound argues that it had a reasonable basis for contending that it acquired rights to the '339 patent through the June 20 Licensing Agreement because VSL was acting as either the agent or alter ego of Vedanti.  Opp. 6–11.  As an initial matter, these arguments were considered and rejected by the Court, and need not

---

use his name in the action.'"  *Caprio v. Wilson*, 513 F.2d 837, 839 (9th Cir. 1975) (quoting 7 Wright & Miller, Federal Practice and Procedure s 1606, 1974 Pocket Part at 6).  Consistent with this, the Federal Circuit has held that even in the much stronger case of patent co-owners, "'one co-owner has the right to impede the other co-owner's ability to sue infringers by refusing to voluntarily join in such a suit.'"  *Ethicon, Inc. v. U.S. Surgical Corp*., 135 F.3d 1456, 1468 (Fed. Cir. 1998) (quoting *Schering*, 104 F.3d at 345).  This "is a substantive right that trumps the procedural rule for involuntary joinder under Rule 19(a)."  *STC.UNM v. Intel Corp*., 754 F.3d 940, 946 (Fed. Cir. 2014).  The Federal Circuit has recognized only two exceptions to this rule, both of which involve patent owners which "ha[d] a duty to allow [the] plaintiff to use his name in the action," *Caprio*, 513 F.2d at 839: "'First, when any patent owner has granted an exclusive license, he stands in a relationship of trust to his licensee' and can be involuntarily joined as a plaintiff in the licensee's infringement suit; second, '[i]f, by agreement, a co-owner waives his right to refuse to join suit, his co-owners may subsequently force him to join in a suit against infringers.'"  *STC.UNM*, 754 F.3d at 946 (quoting *Ethicon*, 135 F.3d at 1468 n. 9).  Here, because there was no contract between Vedanti and Max Sound, Vedanti owed no duty to allow Max Sound to sue in its name.  Thus, this would likely not have been a "proper case" to make Vedanti an involuntary plaintiff.

Case No.: 14-cv-04412-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR ATTORNEYS' FEES

be re-litigated here. Dismissal Order at 7–9. Moreover, for the purposes of assessing whether this is an exceptional case, the Court disagrees with Max Sound that these arguments provide "reasonable bas[e]s" such that they take Max Sound's litigating position out of the realm of being exceptionally weak. As the Court discussed in its Dismissal Order, both theories required Max Sound to make a specific showing in order to overcome the presumption that VSL and Vedanti were distinct corporate entities. Dismissal Order at 8. However, Max Sound's only basis for maintaining this position is a collection of weak circumstantial evidence—e.g., the timing and alleged purpose of VSL's incorporation; Nash's statement in an email that "the name VSL, stands for all assets in Vedanti Systems (UK);" Nash's referring to VSL and Vedanti synonymously; and Nash signing the September 4 confirmatory license between Max Sound and VSL on Vedanti's behalf. Opp. 6–10. This is readily superseded by the plain fact that VSL and Vedanti are separate entities with separate names, certificates of incorporation, returns, and accounts.[4] *See* Dkt. 118-20 (confirmatory license between VSL and Vedanti as separate entities); Dkt. No. 117-9 (VSL certificate of incorporation); Dkt. No. 122-1 (accounts filed for VSL); Dkt. No. 122-3 (accounts filed for Vedanti); Dkt. No. 122-2 (annual return for Vedanti). Thus, neither Max Sound's agency or alter ego theory alter the Court's conclusion that its litigating position was exceptionally weak.

Second, Max Sound argues that it had a reasonable basis for contending that it acquired rights to the '339 patent because Vedanti impliedly agreed to grant an exclusive license to Max Sound. However, as Max Sound even acknowledges in its briefing, Opp. 10, implied licenses not in writing are insufficient to confer "all substantial rights" on an "exclusive licensee." *Enzo APA & Son, Inc.*, 134 F.3d at 1093. Thus, even if Vedanti had impliedly agreed to grant an exclusive license to Max Sound, Max Sound was required to properly join Vedanti as a co-plaintiff. As discussed above, Max Sound does not have a reasonable basis for arguing that it had done so here.

_____

[4] Max Sound also points to documents that concern only the '277 European patent, such as the September 4 confirmatory licenses and the September 8 Robert Newell affidavit. See Dkt. Nos. 118-20, 118-21, 121-3. However, because they relate only to the '277 European patent, they are irrelevant to the Court's consideration of VSL's actions with respect to the '339 patent.

Case No.: 14-cv-04412-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR ATTORNEYS' FEES

United States District Court
Northern District of California

1    Thus, Max Sound's implied license theory does not save its litigating position from being

2    exceptionally weak.

3         Finally, Max Sound also argues that the fact that the June 20 Licensing Agreement did not

4    explicitly name the '339 patent should not render its litigating position exceptionally weak.  Opp.

5    13–14.  In particular, Max Sound argues that, because the June 20 Licensing Agreement granted to

6    Max Sound "the Worldwide License to ODT [(Optimized Data Transmission System and

7    Method)] Technology" and the '339 patent is titled "Optimized Data Transmission System and

8    Method," it was reasonable for Max Sound to contend that the June 20 Licensing Agreement had

9    granted it rights in the '339 patent.  *Id*.  This argument is unpersuasive for two reasons.  First, it

10   ignores the fact that, even if this language could be construed as referring to the '339 patent, the

11   June 20 Licensing Agreement was, by its plain terms, a contract between Max Sound and VSL—

12   not Vedanti.  A party cannot convey rights it does not have.  *Mitchell v. Hawley*, 83 U.S. 544, 550,

13   21 L. Ed. 322 (1872).  Second, the June 20 Licensing Agreement does not explicitly identify

14   which patents and other intellectual property are covered by "ODT Technology," so this language

15   is at best ambiguous as to whether it includes the '339 patent.  However, given that the '339 patent

16   was not owned by VSL, "ODT Technology" is best construed as not covering the '339 patent.

17   Max Sound's position to the contrary is not objectively reasonable.

18        At bottom, Max Sound relied on nothing more than its own aspirations from weak

19   circumstantial indicators—rather than clear language from the controlling legal documents—to

20   argue that it had standing to assert the '339 patent.  As such, this case stands out as "exceptional"

21   with respect to the substantive strength of Max Sound's litigating position.  *Octane Fitness*, 134 S.

22   Ct. at 1756.

23        **ii.    Manner in Which the Case was Litigated**

24        With respect to the manner in which this case was litigated, Defendants contend that this

25   case is exceptional because (1) Max Sound failed to reasonably investigate its basis for standing

26   despite knowledge of the basis of its standing defects; and (2) Max Sound unreasonably prolonged

27   Case No.: 14-cv-04412-EJD

28   ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR
     ATTORNEYS' FEES

14

1    this case by hiding its lack of standing.  Mot. 5–7.  Max Sound disagrees on both accounts,

2    arguing that (1) Defendants have not submitted any evidence that Max Sound's pre-suit

3    investigation was unreasonable or that Max Sound knew all along that it lacked authority to sue;

4    and (2) it was prompt and forthright in providing discovery on standing.  Opp. 11–12.

5        The Court agrees with Defendants that Max Sound litigated this case in an exceptionally

6    unreasonable manner.  First, Max Sound brought this lawsuit without performing sufficient due

7    diligence as to whether it had standing.  It is clear from the pleadings that, from the outset, Max

8    Sound was aware of the root of its standing issues—that Vedanti (not VSL) owned the '339

9    patent.  Both the Complaint and the FAC explicitly state this fact.  Complaint ¶ 9; FAC ¶ 14.

10   Moreover, it is also clear that from the pleadings that Max Sound was aware that Vedanti had not

11   itself authorized the assertion of its patent.  Despite naming Vedanti as a co-plaintiff in the

12   Complaint—in essence, an admission that Vedanti was a necessary party—Vedanti's signature or

13   any identification of its counsel are conspicuously absent from the Complaint.  Complaint at 13.

14   Max Sound must have known that a party is required to sign a pleading, Fed. R. Civ. P. 11(a), as it

15   itself signed the Complaint.  *Id*.  Although the Court considers these facts alone enough to find

16   that Max Sound was aware that Vedanti had not authorized the assertion of the '339 patent, these

17   findings are further bolstered by later representations from Vedanti's counsel, which confirm the

18   same.  *See* Dkt. No. 101-9 at 1 (describing how: from June through August 2014, "Max Sound

19   sought rights to sue on Vedanti's U.S. patent" and each time "[t]hose requests were rejected;"

20   "[o]n about June 12, 2014," Max Sound "acknowledged, before numerous witnesses, that the

21   'marching orders' . . . were that there would be no patent infringement lawsuit;" and when Vedanti

22   learned that Max Sound "refiled in the Northern District of California . . . it again objected"); Dkt.

23   No. 97 at 4–5 (same); *see also* Dkt. No. 127 at 2 (referring to "MaxSound's lawyer's own words,

24   that his 'marching orders' were that there would be no patent infringement lawsuit").

25       Nevertheless, even though it knew that Vedanti owned the '339 patent and had not agreed

26   to its assertion, Max Sound proceeded to sue Defendants.  This was not reasonable.  The

27

28   Case No.: 14-cv-04412-EJD
     ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR
     ATTORNEYS' FEES

United States District Court
Northern District of California

United States District Court
Northern District of California

knowledge that Vedanti owned the '339 patent should have put Max Sound on notice that, in order

to have standing, it either needed to (1) join Vedanti as a co-plaintiff, or (2) be an "exclusive

licensee" with "all substantial rights" to the '339 patent.  After Vedanti refused to agree to assert

the '339 patent against Defendants, Max Sound should have realized that the first of these options

was not possible.  To the extent that Max Sound believed it could join Vedanti as an involuntary

plaintiff under Rule 19, reasonably diligent legal research would have revealed that this was not an

option.  *See* n.4, *supra*.  It was not reasonable for Max Sound to blindly assume that it was.

Thus, left with only the second option, Max Sound should have undertaken reasonable

measures to confirm that it was an "exclusive licensee" with "all substantial rights" to the '339

patent before filing suit.  While it is not entirely clear what pre-filing diligence Max Sound did or

did not undertake in 2014,[5] the record permits several observations:  Even a cursory review of the

June 20 Licensing Agreement would have revealed that it conveyed no rights from *Vedanti* to Max

Sound.  Dkt. No. 115-7 (June 20 Licensing Agreement).  This means that either (1) Max Sound

did not (contrary to its representations) review the June 20 Licensing Agreement; (2) it did,

realized that the agreement conferred no rights in the '339 patent from Vedanti, and proceeded

anyways; or (3) it did, came to the objectively unreasonable conclusion (as discussed above in

Section II.A.i) that the agreement—which names neither Vedanti nor the '339 patent—conferred

rights in the '339 patent from Vedanti, and proceeded on that basis.  Of these three scenarios, the

---

[5] Max Sound asserts that its counsel reviewed the June 20 Licensing Agreement and that, based on its review, its counsel concluded that "the agreement confers upon Max Sound an indefeasible right to exclude Google from practicing the patent" and that "Max Sound had a strong argument that VSL entered into the Max Sound License as the agent or alter ego of Vedanti."  Dkt. No. 162 ¶¶ 12, 14; *see generally id.* ¶¶ 3–22.  Defendants, on the other hand, suggest that these are *post-hoc* justifications, which do not reflect Max Sound's state of mind at the time.  Reply 3–4.  As support, Defendants point out that that Max Sound took the position in its pleadings and during discovery that Vedanti had explicitly agreed to license the '339 patent to Max Sound, and that Max Sound's agency and alter ego theories were raised for the first time in its opposition to Defendants' motion to dismiss.  *Id.* (citing Dkt. No. 115-4 at 16–22).  The Court agrees that Max Sound's positions seem to have shifted from its pleadings, Dkt. No. 1, to the characterization of its state of mind that it offers now, Dkt. No. 162 ¶¶ 3–22.  However, the Court recognizes that a party's representation of a position in pleadings and to opposing counsel are not the same thing as its own internal assessment of that position.  Thus, the precise nature of the due diligence that Max Sound performed before filing suit is at best unclear.

Case No.: 14-cv-04412-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR ATTORNEYS' FEES

last is the most innocuous.  However, even if only this is true, Max Sound was no less than willfully blind as to its standing.  Instead of making efforts to clarify whether "VSL" could mean "Vedanti" or whether "ODT Technology" could mean "the '339 patent," Max Sound stuck its head in the sand and proceeded to file this lawsuit.  As such, it failed to undertake an adequate pre-suit filing investigation before filing this suit, which was exceptionally unreasonable litigation conduct.

Second, in addition to failing to perform an adequate pre-filing investigation, Max Sound's litigation conduct makes this case exceptional because it insisted on maintaining this lawsuit even when faced with mounting evidence that it lacked standing.  When Defendants filed their first motion to dismiss and brought to light the concern that Max Sound had no standing without Vedanti (including the factual and legal basis for this concern), Max Sound doubled down and amended its Complaint.  Dkt. No. 23.  When, at the parties' initial case management conference, Defendants proposed bifurcating discovery so that the issue of standing could be quickly resolved before expending resources on the merits, Max Sound opposed this request.  Dkt. No. 58.  Further, when Defendants proposed staying the case "until Vedanti and Max Sound could resolve the issues between them," Max Sound refused.  Mot., Ex. E at 1–2.  Finally, even after Defendants filed their final motion to dismiss and the Court dismissed Max Sound's claims for lack of standing, Max Sound continued to insist that it had standing, filing a motion for leave to file a second amended complaint and for relief from the Court's order dismissing the case.  Dkt. No. 142.  Although any one of these actions, assessed individually, might not be exceptionally unreasonable, their sum total—especially when assessed against the backdrop of Max Sound's awareness that Vedanti owned the '339 patent and was not a willing participant in this lawsuit— amounts to a pattern of behavior that is exceptionally unreasonable.  At some point, Max Sound should have realized that it had serious standing issues and taken steps to attempt to resolve them before proceeding with the merits.  To insist on forging ahead—even when presented with opportunities to pause to resolve its standing issues—was not reasonable.

Case No.: 14-cv-04412-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR ATTORNEYS' FEES

17

United States District Court
Northern District of California

1       Third and finally, Max Sound's litigation conduct makes this case "exceptional" because,

2   although the Court is not convinced that it rises to the level of intentional misrepresentation, Max

3   Sound at least obfuscated the fact that there were potential problems with its standing.  The

4   allegations in both its Complaint and FAC are misleading.  Its Complaint states that "Max Sound

5   and VSL[6] have agreed that Max Sound shall have the right to enforce VSL's patent rights on

6   VSL's behalf."  Complaint ¶ 10.  Its FAC takes this one step further, alleging that:

> The VSL Agreement entered into between Max Sound and VSL provides that Max
> Sound shall have the exclusive right to enforce VSL's patent rights on VSL's
> behalf.  In particular, the VSL Agreement confers upon Max Sound an indefeasible
> right to exclude the Google Defendants from practicing the patent and expressly
> provides that VSL has granted Max Sound the exclusive right to sue the Google
> Defendants for infringement of the '339 Patent and to settle any claim for
> infringement of the '339 Patent.  VSL, pursuant to the VSL Agreement, also
> granted to Max Sound a worldwide license to VSL's Optimized Data Transmission
> System and Method technology, including the technology claimed in the '339
> Patent, for all fields of use.  Thus, Max Sound has standing to assert the claims for
> infringement of the '339 Patent against the Google Defendants as set forth below.

13  FAC ¶ 15.  These allegations completely ignore the fact that Vedanti is not VSL.  (In fact, if

14  anything, they blur this distinction by referring to Vedanti as "VSL.")  As such, it was not true that

15  "Max Sound and VSL[7] ha[d] agreed . . . ," Complaint ¶ 10, or that "[t]he VSL Agreement [was]

16  entered into between Max Sound and VSL[8] . . . ," FAC ¶ 15.  In addition, they ignore the fact that

17  the June 20 Licensing Agreement only "grants [Max Sound] the Exclusive Right to Sue *pre-*

18  *approved* violators of VSL's intellectual property rights."  Dkt. No. 115-7 at 1 (emphasis added).

19  Pre-approval from Vedanti to sue Defendants was missing here.

20      In addition to its pleadings, Max Sound continued to insist in its representations to this

21  Court and Defendants that there were no standing issues.  In its April 23, 2015 Joint Case

22  Management Statement, Max Sound largely repeated the allegations from its FAC:

> Max Sound and VSL entered into an agreement which provides that Max Sound
> shall have the exclusive right to enforce VSL's patent rights on VSL's behalf. In
> particular, the agreement confers upon Max Sound an indefeasible right to exclude

---

[6] *See* note 1, *supra*.
[7] *See* note 1, *supra*.
[8] *See* note 1, *supra*.

Case No.: 14-cv-04412-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR
ATTORNEYS' FEES

1
2
3
4

Defendants from practicing the patent and expressly provides that VSL has granted Max Sound the exclusive right to sue the Defendants for infringement of the `339 Patent and to settle any claim for infringement of the `339 Patent. VSL, pursuant to the VSL Agreement, also granted to Max Sound a worldwide license to VSL's Optimized Data Transmission System and Method technology, including the technology claimed in the `339 Patent, for all fields of use. Thus, Max Sound has standing to assert the claims for infringement of the `339 Patent against Google in this lawsuit.

5   Dkt. No. 58 at 2.  In its May 27, 2015 letter, Max Sound asserted that "as far as Max Sound is

6   concerned, there is no 'contract issue between VSL and Max Sound' regarding Max Sound's

7   standing that must be resolved before the Google Defendants should be required to respond on the

8   merits to Max Sound's patent infringement allegations."  Mot., Ex. D at 2.  In its August 7, 2015

9   letter, Max Sound insisted that "there is no 'dispute' that Vedanti is obligated by agreement to join

10  Max Sound as a co-plaintiff in any case asserting infringement of the '339 Patent."  Mot., Ex. M at

11  3.  Four days later, Max Sound again insisted in an email that "Vedanti has not asserted in this

12  litigation that Max Sound lacks standing to assert the patent infringement claims against the

13  Google Defendants."  Mot., Ex. E at 1-2.  Given that, on August 3, Max Sound had initiated

14  arbitration proceedings against VSL, Vedanti, Nash, and Newell seeking injunctive relief that they

15  be "required to cooperate with the pending litigation and [their] other contractual obligations,"

16  Dkt. No. 118-41 at 5, Max Sound's representations in at least the final of these two

17  communications were disingenuous.

18          In sum, because Max Sound initiated this suit without adequately investigating whether it

19  had standing (and despite warning signs to the contrary), insisted on maintaining this suit despite

20  mounting evidence that it did not have standing, and at least obfuscated the fact that it had

21  standing problems, the manner in which it litigated this case also makes this case stand out as

22  "exceptional."

23          **iii.    Conclusion**

24          For the foregoing reasons, this case stands out both with respect the substantive strength of

25  Max Sound's litigating position and the manner in which Max Sound litigated it.  Accordingly, the

26  Court finds this is an "exceptional case[]" warranting attorneys' fees.

27

28

Case No.: 14-cv-04412-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR
ATTORNEYS' FEES

United States District Court
Northern District of California

**B.    Sanctions Pursuant to 28 U.S.C. § 1927 and the Court's Inherent Power**

Defendants also move the Court to impose sanctions against both Max Sound and its counsel under 28 U.S.C. § 1927 and its inherent power.  Mot. 8–10.  Defendants argue that sanctions are warranted because Max Sound may be insolvent, and Max Sound's counsel was privy to all of the information discussed above and acted with the same "unreasonable beliefs, lack of diligence and obfuscation."  *Id*.  Defendants also emphasize that they warned Max Sound that it would seek fees, but Max Sound acted anyways.  *Id*.  Max Sound counters that sanctions are not warranted because Defendants have not proven that Max Sound failed to conduct a proper pre-suit investigation or pursued baseless claims, and that, even if they have, there is no showing of subjective or actual bad faith.  Opp. 20–21.

Although close, the Court finds that, on balance, sanctions under either § 1927 or the Court's inherent power are not warranted.  As discussed above, Max Sound's conduct during this litigation was exceptionally unreasonable: despite knowing facts that should have put it on notice that it had standing problems (i.e., that Vedanti owned the '339 patent and that Vedanti was not willing to participate in this lawsuit), Max Sound did not adequately investigate its standing issues before filing this lawsuit, continued to pursue a determination on the merits despite mounting evidence of standing issues, and obfuscated the fact that it had standing issues.  *See* Section III.A.ii, *supra*.  However, the Court is not convinced that this conduct rises to the level of misconduct required under § 1927 or the standards for exercising the Court's inherent power.

First, with respect to § 1927, the Court does not find that Max Sound or its counsel acted with "subjective bad faith."  *Blixseth*, 796 F.3d at 1007 ("Sanctions pursuant to section 1927 must be supported by a finding of subjective bad faith.").  Under Ninth Circuit law, "bad faith is present when an attorney knowingly or recklessly raises a frivolous argument or argues a meritorious claim for the purpose of harassing an opponent."  *Id*.  As discussed above, Max Sound's basis for asserting standing was objectively unreasonable and exceptionally weak: it had no written document tying it to either the '339 patent or Vedanti.  *See* Section III.A.i, *supra*.  However, the Court does not find that this position was entirely without support.  As Max Sound points out, the

Case No.: 14-cv-04412-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR ATTORNEYS' FEES

'339 patent is titled "Optimized Data Transmission System and Method" and thus appears to be similar in subject matter to the "ODT Technology" referenced in the July 20 Licensing Agreement.  In addition, there was at least some weak circumstantial evidence that Vedanti and VSL were related: Nash served as CEO of both VSL and Vedanti, *see* Dkt. No. 118-20; Nash created VSL 11 days before the June 20 Licensing Agreement was signed, Dkt. No. 117-9, Dkt. No. 118 ¶¶ 32, 37; Nash stated in an email that "the name VSL, stands for all assets in Vedanti Systems (UK)," Dkt. No. 118 ¶ 11, Dkt. No. 118-9; Nash on another occasion referred to "VSL Communications Ltd. formerly Vedanti Systems Limited," Dkt. No. 118 ¶ 39, Dkt. No. 118-30; and Nash signing the September 4 confirmatory license between Max Sound and VSL on Vedanti's behalf, Dkt. No. 118-21.  Accordingly, the Court does not find that Max Sound or its counsel "knowingly or recklessly raise[d] a frivolous argument." *Blixseth*, 796 F.3d at 1007.

The Court also does not find that Max Sound or its counsel brought this case or continued to insist that it had standing for the purposes of harassing Defendants.  Instead, the record suggest that Max Sound's purpose in this litigation was monetizing the '339 patent.  *See* Dismissal Order at 2 (discussing how Max Sound entered into dealings with VSL to assist in monetizing the ODT intellectual property).  While its continued insistence that it had standing was disrespectful to the Court's resources and is not the type of behavior that should be encouraged in the legal profession, the Court finds that it is better characterized as extremely zealous advocacy exercised with poor judgement rather than harassment.  Thus, it is also not the case that Max Sound's counsel "argue[d] a meritorious claim for the purpose of harassing an opponent." *Blixseth*, 796 F.3d at 1007.  Accordingly, because the Court cannot conclude that Max Sound's counsel acted with "subjective bad faith," sanctions under § 1927 are not warranted.

Second, with respect to the Court's inherent power, the Court does not find that Max Sound's or its counsel's "conduct constituted or was tantamount to bad faith." *Christian*, 286 F.3d at 1131.  It is true that certain aspects of Max Sound's behavior come close: its characterizations of the June 20 Licensing Agreement in its pleadings and representations to the Court and

United States District Court
Northern District of California

1    Defendants were misleading and its continued insistence on pursuing the merits of this case

2    wasted resources.  However, the Court is not convinced that this crosses the line from extremely

3    zealous advocacy to actual bad faith.  Instead, it seems more likely that Max Sound simply took an

4    aggressive tack toward this case and maintained hopeful aspirations that, somehow, it could

5    eventually push its way through its standing issues.  As such, sanctions pursuant to the Court's

6    inherent power are not warranted.

7         In sum, for the reasons discussed above, the Court finds that this case does not warrant

8    sanctions either under § 1927 or the Court's inherent power.

9         **C.    Amount of Fees**

10        Having determined that Defendants are entitled to attorneys' fees pursuant to 35 U.S.C.

11   § 285 (although not sanctions under § 1927 or the Court's inherent power), the Court must

12   determine the amount.  Reasonable attorneys' fees are generally based on the traditional "lodestar"

13   calculation set forth in *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  *See Fischer v. SJB–P.D.,*

14   *Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000).  A reasonable fee is determined by multiplying (1) "the

15   number of hours reasonably expended on the litigation" by (2) "a reasonable hourly rate."

16   *Hensley*, 461 U.S. at 433.

17        **i.    Reasonableness of Hourly Billing Rate**

18        To determine the appropriate lodestar amount, the Court must first assess the

19   reasonableness of counsel's claimed hourly billing rate.  *Credit Managers Ass'n of S. Cal. v.*

20   *Kennesaw Life & Accident Ins. Co.*, 25 F.3d at 750.  In doing so, courts look to the prevailing

21   market rates in the relevant community for similar work by attorneys of comparable skill,

22   experience, and reputation.  *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008).

23   Generally, the relevant community is the forum where the district court sits, which in this case is

24   the Northern District of California.  *Id.*

25        Based on the billing records submitted in camera, Defendants request a total of

26   $820,321.41 in fees for a total of 1547.1 hours billed between October 2014 and August 2016 by

27

28   Case No.: 14-cv-04412-EJD
     ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR
     ATTORNEYS' FEES

United States District Court
Northern District of California

United States District Court
Northern District of California

1    five attorneys: Stefani Shanberg, Jennifer Schmidt, Robin Brewer, Michael Guo, and Heidi Keefe.

2    Dividing the total fees by the total hours billed, the average hourly rate across all attorneys is

3    $530.23.  Reviewing the billing records individually, the hourly rates for each of the five attorneys

4    range over the roughly two year period as follows: Stefani Shanberg: $650-$950; Jennifer

5    Schmidt: $520-$715; Robin Brewer: $504-$608; Michael Guo: $336-$575; and Heidi Keefe:

6    $905.  Either assessing the overall average hourly rate or the per-attorney ranges, the Court finds

7    these billing rates reasonable.  For example, at the time of the filing of this motion, Ms. Shanberg

8    and Ms. Schmidt were partners at Wilson Sonsini Goodrich & Rosati and Ms. Keefe was a partner

9    at Cooley LLP.  Mot., Ex. A at 2–6; Mot., Ex. B at 5–7.  All are seasoned patent litigators, with

10   roughly 10 years of experience or more.  *See id.*  In addition, Mr. Guo was an associate at Wilson

11   Sonsini Goodrich & Rosati, holding a technical degree and having several years of experience as a

12   patent litigator.  Mot., Ex. A at 7.  These rates are well in line with the billing rates for attorneys

13   with similar qualifications in the Bay Area.  *See Dropbox, Inc. v. Thru Inc.*, No. 15-CV-01741-

14   EMC, 2017 WL 914273, at *4 (N.D. Cal. Mar. 8, 2017) (finding "rates ranging from $275/hr for a

15   paralegal to $900/hr for a senior partner" with "rates of $365/hr and $420/hr" for mid-level

16   associates reasonable for the Bay Area); *In re High-Tech Emple. Antitrust Litig.*, Case No. 11-CV-

17   02509-LHK, 2015 U.S. Dist. LEXIS 118052, at *33-34 (N.D. Cal. Sep. 2, 2015) (approving

18   hourly rates ranging from $490 to $975 for partners, $310 to $800 for associates, and $190 to $430

19   for paralegals); *Banas v. Volcano Corp.*, 47 F. Supp. 3d 957, 965 (N.D. Cal. 2014) (approving

20   hourly rates ranging from $355 to $1,095 per hour for partners and associates and $245 to $290

21   per hour for paralegals).  Thus, counsel's billing rate is reasonable.

22              **ii.    Reasonableness of Hours Billed**

23              To assess whether the number of hours billed is reasonable, Defendants must submit

24   detailed records justifying the hours that have been expended.  *Chalmers v. City of Los Angeles*,

25   796 F.2d 1205, 1210 (9th Cir. 1986).  The Court may reduce the hours through its discretion

26   "where documentation of the hours is inadequate; if the case was overstaffed and hours are

27

28   Case No.: 14-cv-04412-EJD
     ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR
     ATTORNEYS' FEES

1    duplicated; [or] if hours expended are deemed excessive or otherwise unnecessary." *Id.*

2      Defendants' counsel submitted 72 pages of detailed billing records describing the work

3    performed on a daily basis between October 1, 2014 (the date Max Sound filed its Complaint), and

4    the August 21, 2016 (when counsel performed work responsive to the Court's August 19, 2016

5    order requesting time records). In total, counsel seeks to recover $820,321.41 for 1547.1 hours of

6    work performed in this matter. The Court has reviewed all 72 pages submitted by counsel and

7    finds that the number of hours billed was reasonable. In particular, the Court finds that the billing

8    records reasonably correspond to the high-level list of activities that counsel submits it has

9    undertaken in this case, Dkt. No. 154 ¶ 5, and that the amount of time that counsel spent on each

10   of these activities was reasonable. The Court also finds that all of these activities were reasonable

11   undertakings. *See id.* Finally, because, as discussed above, Max Sound's unreasonable litigation

12   conduct began with its filing of this case, the Court finds that Defendants are entitled to fees

13   incurred from the date Max Sound filed its Complaint forward. Thus, the Court finds that the total

14   number of hours billed by Defendants (1547.1) is reasonable.

15      **iii.**  **Summary**

16     In sum, Defendants' counsel's hourly billing rate and number of hours billed are

17   reasonable. No adjustment to the lodestar amount is warranted. Accordingly, the Court awards

18   Defendants $820,321.41 in fees.

19   **IV.**  **CONCLUSION**

20     For the foregoing reasons, the Court GRANTS Defendants' request for attorneys' fees

21   pursuant to 35 U.S.C. § 285 but DENIES Defendants' motion for sanctions pursuant to 28 U.S.C.

22   § 1927 and the Court's inherent power. Max Sound shall pay Defendants $820,321.41 in fees.

23     **IT IS SO ORDERED.**

24   Dated: September 25, 2017

25

26           EDWARD J. DAVILA
        United States District Judge

27

28   Case No.: 14-cv-04412-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR
ATTORNEYS' FEES